HELLER EHRMAN LLP
Michael L. Charlson (MC-2378) (Cal. Bar 122125)
Kevin A. Burke (KB-0580)
7 Times Square
New York, New York 10036
Phone: (212) 832-8300
Fax: (212) 763-7600

*Attorneys for defendants Threshold Pharmaceuticals, Inc.,*
*Harold E. Selick, and Janet I. Swearson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JERRY TWINDE, On Behalf of Himself and All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>THRESHOLD PHARMACEUTICALS, INC., HAROLD "BARRY" E. SELICK and JANET I. SWEARSON,<br><br>                                        Defendants. | Civil Action No.: 07 CV 6227 JSR<br>Consolidated with 07 CV 6490 JSR<br><br>APPENDIX OF UNPUBLISHED CASES CITED IN DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) |
| RAYNOLD L. GILBERT, Individually and On Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>THRESHOLD PHARMACEUTICALS, INC., HAROLD "BARRY" E. SELICK and JANET I. SWEARSON,<br><br>                                        Defendants. |  |

The following is a list of the unpublished cases cited in the Memorandum of

Points and Authorities in Support of Defendants' Motion to Transfer Venue Under 28

U.S.C. § 1404(a). A true and correct copy of each unpublished case is annexed hereto at

the exhibit tab indicated in the list below:

| **Unpublished Cases:** | **Tab No.** |
|---|---|
| *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo,* No. 07-CV-975, 2007 WL 2068107 (S.D.N.Y. July 20, 2007) | 1 |
| *In re AtheroGenics Sec. Litig.,* No. 05-CV-00061, 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) | 2 |
| *In re Connetics Sec. Litig.,* No. 06-CV-11496, 2007 WL 1522614 (S.D.N.Y. May 23, 2007) | 3 |
| *Strougo v. Brantley Capital Corp.,* No. 06-CV-13315, 2007 WL 1683348 (S.D.N.Y. June 3, 2007) | 4 |

Dated:  August 16, 2007

# TAB 1

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

**(Cite as: Slip Copy)**

---

Electrical Workers Pension Fund, Local 103,
I.B.E.W. v. Nuvelo, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
ELECTRICAL WORKERS PENSION FUND,
LOCAL 103, I.B.E.W., On Behalf Of Itself And All
Others Similarly Situated, Plaintiff,
v.
NUVELO, INC., Ted W. Love, Gary S. Titus, and
Shelly D. Guyer, Defendants.
Barry Logan, Individually and On Behalf Of Him-
self and All Others Similarly Situated, Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and
Shelly D. Guyer, Defendants.
Arnold Giles, Individually and On Behalf Of Him-
self and All Others Similarly Situated, Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and
Shelly D. Guyer, Defendants.
Herbert Braker, Individually and On Behalf Of
Himself and All Others Similarly Situated,
Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and
Shelly D. Guyer, Defendants.
**Nos. 07 Civ. 975(HB), 07 Civ. 1229(HB), 07 Civ.
1777(HB), 07 Civ.1953(HB).**

July 19, 2007.

*JOINT OPINION AND ORDER*
Hon. HAROLD BAER, JR., District Judge.
**\*1** Defendants Nuvelo, Inc. ("Nuvelo") and three of
Nuvelo's individual officers and directors, Ted
Love, Gary Titus, and Shelly Guyer (collectively,
"Defendants") move to transfer venue over these
four putative securities class actions to the Northern
District of California.[FN1] Plaintiffs Electrical
Workers Pension Fund, *et. al.* ("Plaintiffs") oppose.

> FN1. Four Nuvelo-related securities class
> actions before this Court are at issue in this

motion-*Electrical Workers v. Nuvelo,*
07-cv-975 (S.D.N.Y.); *Logan v. Nuvelo,*
07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo,*
07-cv-1777 (S.D.N.Y.); and *Braker v.
Nuvelo,* 07-cv-1953 (S.D.N.Y.) The parties
have agreed to delay this Court's consider-
ation of Plaintiffs' motions to consolidate
the four cases and appoint Lead Plaintiffs,
as if the case is transferred, it may be more
appropriate to let the transferee rule on
those issues.

> Citations in this Opinion will be to docu-
> ments filed in connection with *Electrical
> Workers v. Nuvelo,* 07-cv-975, unless oth-
> erwise noted.

For the reasons articulated below, Defendants' mo-
tion to transfer venue is GRANTED.

**I. BACKGROUND**

A. *Underlying Facts of Action*

Nuvelo is a biopharmaceutical company, incorpor-
ated in Delaware and headquartered in San Carlos,
CA, near Silicon Valley. *See* Affidavit of Shelly D.
Guyer in Support of Defendants' Motion to Transfer
Venue, Apr. 18, 2007 ("Guyer Aff."), ¶ 5; Com-
plaint, *Logan v. Nuvelo,* 07-cv-1229, ¶ 11.

On January 5, 2006 (the beginning of the Class
Period), Nuvelo announced a partnership with the
company Bayer Health Care AG regarding
"alfimeprase," Nuvelo's new drug in development
that is designed to dissolve blood clots. Complaint
¶¶ 36-37. Nuvelo announced that Bayer would pay
it $50 million up front, and potentially up to $335
million in additional payments, in exchange for the
right to commercialize alfimeprase outside the
United States. *Id.* at ¶ 36. Defendants allegedly
stated in a conference call that they anticipated the
"alfimeprase" drug would win FDA approval and
thus reach the U.S. consumer market by 2008. *Id.* at
¶ 15. Nuvelo's CEO Ted Love allegedly predicted
that the drug would generate $500 million in annual
sales. *Id.* Nuvelo's stock price rose. *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

**(Cite as: Slip Copy)**

On January 30, 2006, Nuvelo conducted a "follow-on" stock offering that raised over $119 million for the company. Complaint ¶ 16. Nuvelo's underwriters for this offering were JP Morgan, Lehman Brothers, and Deutsche Bank. *Id.* at ¶¶ 16, 26.

Over the next several months, Nuvelo embarked on Phase III clinical trials to test alfimeprase. Complaint ¶ 19. Nuvelo also made several public statements regarding alfimeprase. Some statements were in the form of press releases issued from Nuvelo's California headquarters. *See generally* Complaint ¶¶ 36-56; Guyer Aff. ¶ 6; Affidavit of Gary S. Titus in Support of Defendants' Motion to Transfer Venue, Apr. 18, 2007 ("Titus Aff.") ¶ 6. Some statements were allegedly made at presentations at approximately eight analysts' and investors' conferences in New York. *See* Declaration of David A. Rosenfeld In Support of Plaintiffs' Opposition ..., May 4, 2007 ("Rosenfeld Decl."), ¶ 2, Ex. A.

On December 11, 2006 (the end of the Class Period), Nuvelo announced that two Phase III trials (in technical terms, the "NAPA-2" and "SONOMA-2" trials) did not go as well as they hoped (or in Plaintiff's words, "failed"). *See* Complaint ¶¶ 56, 63. The company disclosed that prior clinical trials did not involve the use of a placebo; that any past effectiveness of the drug was not due to the drug itself, but other factors; and that other Phase III clinical trials (in technical terms, the "NAPA-3" and "SONOMA-3" trials) would be put on hold. See Memorandum of Law in Opposition ..., May 4, 2007 ("Pl.Opp."), at 4; Complaint ¶ 56. Nuvelo's stock dropped nearly 80%, from $19.55 to $4.05. Complaint ¶¶ 57, 64.

### B. *Facts Relating to Defendants' Motion to Transfer Venue*

**\*2** Nuvelo avers that the vast majority of operative facts, witnesses, and documents that relate to this litigation are located in the Northern District of California. Nuvelo does not have operations, offices, or employees in New York. Guyer Aff. ¶ 5; Titus Aff. ¶ 5. Nuvelo states that the three individual defendants, its senior management, its officers,

and the vast majority of its employees are located at, or near, its headquarters in California. Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6. Nuvelo states that the individual employees who helped prepare the press releases at issue are located at its headquarters in California, and that the press releases were issued from its headquarters. Guyer Aff. ¶ 6; Titus Aff. ¶ 6. Nuvelo states that the officers and employees that designed and analyzed the NAPA-2 and SONOMA-2 clinical studies at issue are all located at its headquarters in California. *Id.* Nuvelo states that most of the relevant documents are either located at its headquarters or at a separate warehouse in Union City, CA. Guyer Aff. ¶ 7.

Plaintiffs aver that Nuvelo or (it is not entirely clear) the individual Defendants made presentations at approximately eight analysts' and investors' conferences in New York during the Class Period, during which they made statements about the drug alfimeprase. *See* Rosenfeld Decl. ¶ 2, Ex. A. Plaintiffs do not at this time specifically identify those particular statements in their Complaint.[FN2]

> FN2. Plaintiffs aver that after the Court appoints a Lead Plaintiff, that Plaintiff will file a consolidated amended complaint which will include a more comprehensive list of allegedly materially false and misleading statements. *See* Pl. Mem. Opp. at 7 n. 6.

Plaintiffs also note that Defendants' underwriters for their follow-on stock offering (before which, Plaintiffs allege, Defendants made false statements about the drug in order to raise additional funds) all have offices in New York. Complaint at ¶¶ 16, 26. Nuvelo rebuts that its primary contacts at two of these three underwriters, including JP Morgan, its lead underwriter, worked out of San Francisco, not New York. Guyer Reply Aff. ¶ 3.

Lastly, Plaintiffs note that one of Nuvelo's Phase III clinical trials took place in the Bronx, two other trials took place in New Jersey, and one trial took place in Pennsylvania. *See* Rosenfeld Decl., Ex. D. Nuvelo, however, points out that these particular

trials in New York, New Jersey, and Pennsylvania were in fact the NAPA-3 and SONOMA-3 trials-*not* the failed NAPA-2 and SONOMA-2 trials which engendered this lawsuit. *See* Guyer Aff., Ex. G; Complaint ¶ 56; Rosenfeld Decl., Ex. D.

Plaintiffs do not allege in their papers before me that any of the class plaintiffs reside in New York.

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006); *see generally, e.g., Montgomery v. TAP Enters.,* 2007 U.S. Dist. LEXIS 12702, at *6-8 (S.D.N.Y. Feb. 26, 2007) (Baer, J.).

A motion to transfer pursuant to § 1404(a) rests within the "sound discretion" of the district court. *Schwartz v. R.H. Macy's, Inc.,* 791 F.Supp. 94 (S.D.N.Y.1992). The burden is on the movant to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978); *see also Editorial Musical Latino Americana, S.A. v. Mar Int'l Records,* 829 F.Supp. 62, 66 (S.D.N.Y.1993) (movant must make "clear and convincing showing"). Although the plaintiff's choice of forum is entitled to substantial weight, this presumption is reduced if the cause of action bears "little material connection" to the chosen forum. *See, e.g., St. Regis Mohawk Tribe v. State of New York,* 774 F.Supp. 185, 189 (S.D.N.Y.1991); *see also Arrow Electronics Inc. v. Ducommun, Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1991) (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance"). This presumption is reduced further in class actions, particularly securities class actions. *See In re AtheroGenics Sec. Litig.,* 2006 U.S. Dist. LEXIS 15786, at *9 (S.D.N.Y.2006) (Holwell, J.) (*"AtheroGenics"* ).

## III. DISCUSSION

**\*3** When evaluating a motion to transfer, a court

should consider the following factors: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.[FN3] *See, e.g., Anadigics, Inc. v. Raytheon Co.,* 903 F.Supp. 615, 617 (S.D.N.Y.1995). "The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application." *D'anton Jos, S.L. v. Doll Factory,* 937 F.Supp. 320, 322 (S.D.N.Y.1996); *see also Hubbell Inc. v. Pass & Seymour,* 883 F.Supp. 955, 962 (S.D.N.Y.1995) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.").

> FN3. To succeed on a motion to transfer venue, Defendant must as a threshold matter establish that the action could have been brought in the proposed transferee district. *See, e.g., Montgomery v. TAP Enters.,* 2007 U.S. Dist. LEXIS 12702, at *9 n. 6, *citing Van Dusen v. Barrack,* 376 U.S. 612 (1964). Secondly, Defendant must "demonstrate that the balance of the convenience of the parties and witnesses and the interests of justice are in [his] favor." *See Consol. Metal Prods., Inc. v. Am. Petroleum Inst.,* 569 F.Supp.773, 774 (D.D.C.1983). Because it is undisputed here that these actions could have been brought in the proposed transferee district (i.e. the Northern District of California), the first inquiry does not require examination.

I will address the most relevant factors first.

A. *Plaintiff's Choice of Forum*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 4
Slip Copy, 2007 WL 2068107 (S.D.N.Y.)
**(Cite as: Slip Copy)**

A plaintiff's choice of forum "is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *9, *citing Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y.1998). However, "while it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions." *Id., citing, e.g., Eichenholtz v. Brennan,* 677 F.Supp. 198, 202 (S.D.N.Y.1988) (in a securities class action, there will be "numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited," and thus plaintiff's choice receives less deference); *but see In re Geopharma Sec. Litig.,* 2005 U.S. Dist. LEXIS 8885, at *3-4 (S.D.N.Y.2005) (Scheindlin, J.) (*"Geopharma"* ) ("affording less deference to representative plaintiffs does not mean they are deprived of all deference.").

Here, in this securities class action, plaintiff's choice of forum is entitled to less deference. Indeed, there is no allegation that any of the class plaintiffs reside in New York, such that those plaintiffs might be prejudiced by transfer. Even leaving the question of deference to plaintiff's choice of forum aside, there remains ample support to rule in favor of transfer based on the other factors, as further articulated below.[FN4]

> FN4. *See Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb,* 2006 U.S. Dist. LEXIS 36018, at * 13-14 (S.D.N.Y.2006) (Baer, J.) (*"Bausch & Lomb"* ) ("Defendants argue ... that courts have accorded 'little weight' to plaintiff's choice of forum in securities class actions ... Whether that's so or not here, the other factors are persuasive.").

### B. *Convenience of Parties*

Defendants Nuvelo, and the three individual Defendants, all reside in the Northern District of California. Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6. As noted above, it appears no class plaintiffs reside in

this District. This factor favors transfer.

### C. *Convenience of Witnesses and Availability of Process*

**\*4** Defendants argue the vast majority of witnesses aside from the individual Defendants (i.e. Nuvelo employees and ex-employees) are all located in California, and that process would not be available to compel their testimony in New York, were the actions to proceed to trial here.

Plaintiffs aver that some non-party witnesses are located in New York. For example, Plaintiffs argue that Nuvelo's underwriters are located in New York. Defendants rebut, however, that the primary contacts for two out of three of Nuvelo's underwriters, including its lead underwriter, JP Morgan, are in fact located in San Francisco. *See* Guyer Reply Aff. ¶ 3. Plaintiffs also aver that securities analysts that follow Nuvelo are located in New York. Defendants rebut, however, that three of the analysts who follow Nuvelo are also based in San Francisco. *See* Guyer Reply Aff. ¶ 4. To the extent that Plaintiffs seek to call underwriters and securities analysts at trial, it is doubtful Plaintiffs will experience any prejudice by transfer.

Plaintiffs also aver that some non-party witnesses are located *near* (albeit not *in* ) New York. For example, Plaintiffs aver that Bayer's United States corporate headquarters is located in Pittsburgh, and its pharmaceutical division is located in West Haven, CT. See Pl. Mem. Opp. at 10. Additionally, Plaintiffs aver that FDA employees are located in Washington, DC. *See Geopharma,* 2005 U.S. Dist. LEXIS 8885, at *7 (noting that *inter alia,* FDA employees are located in Washington, DC, and calling this factor "neutral"). Typically, however, district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum. *See, e.g., AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *15, *citing Wechsler v. Macke Int'l Trade, Inc.,* 1999 WL 1261251, at *6 (S.D.N . Y.1999) ("The Court dismisses from consideration the convenience of witnesses who are located outside both the current and

transferee forums.").

More importantly, "it is the nature of the testimony and not the number of prospective witnesses on each side that is important." *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d at 402. Here, notwithstanding that some tangentially related witnesses may reside in or near New York, the far greater number of the most material witnesses-i.e., the individual Defendants and Nuvelo employees-are located in California. *See AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *15 (finding that this factor favored transfer to Georgia because Defendants and employees resided there, despite the fact that securities analysts and defendants' public relations firm resided in New York); *Nematron Corp. Secs. Litig.,* 30 F.Supp.2d at 402 (finding that this factor favored transfer to Defendant's home district because "testimony more critical and extensive is likely to be provided by the parties and witnesses residing" there).

In sum, this factor favors transfer to California.

### D. *Locus of Operative Facts*

**\*5** Nuvelo argues that the locus of the operative facts of this lawsuit-i.e., Nuvelo's allegedly fraudulent statements contained in its press releases-were issued from its company headquarters in California. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *See, e.g., Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb,* 2006 U.S. Dist. LEXIS 36018, at *16 (where "all of the press releases and corporate filings, as well as the alleged misstatements, originated at Bausch & Lomb headquarters in Rochester," this factor favored transfer); *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998); *In re Hanger Orthopedic Group, Inc.,* 418 F.Supp.2d 164, 169 (S.D.N.Y.2006); *AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *13.

The locus of the operative facts of this lawsuit centers on the misrepresentations made by Nuvelo in its press releases-all of which, as a matter of law, "occur" in California. Plaintiffs' attempts to aver

that other allegedly "operative" facts occurred in New York are unavailing. For example, the clinical trials that occurred in or near the Southern District of New York were not the failed trials that engendered the fraud alleged in these actions. And even had Plaintiffs alleged specific misrepresentations that occurred at analysts' conferences in New York, courts have generally not found that statements at analysts' conferences alone warranted transfer where the "locus of all relevant decision-making" emanated from the company's headquarters, as is the case here. *See AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *12, 13 n. 5.

Because the "locus of operative facts" here is in California, this factor favors transfer.[FN5]

> FN5. Although the majority of Courts in this district follow this approach, one Court in this district takes a different view. *See Geopharma,* 2005 U.S. Dist. LEXIS 8885, at *7 (where defendants argued that press releases were drafted at headquarters, and plaintiffs argued that information was disseminated via the NASDAQ exchange in New York, Court held that "operative facts" were spread across many districts).

### E. *Location of Relevant Documents*

Defendants argue that the relevant documents are available either at its headquarters, or at a separate storage facility in Union City, CA. "Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession." *Blass v. Capital Int'l Sec. Group,* 2001 U.S. Dist. LEXIS 3504, at *17-18 (E.D.N.Y.2001).

Although Plaintiffs aver that some documents relating to a) the underwriters, b) Bayer, or c) the clinical trials will be produced from or near New York, as above, these documents (to the extent they actually reside in New York), like the witnesses, are far less relevant than the documents in California. This factor favors transfer.

### F. *Remaining Factors*

Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

**(Cite as: Slip Copy)**

The factors of a) the relative means of the parties, b) the respective forums' familiarity with the governing law, and c) trial efficiency and the interests of justice are all neutral.

### IV. CONCLUSION

Because the majority of factors favor transfer, Defendants' motion to transfer venue for these four actions-*Electrical Workers v. Nuvelo,* 07-cv-975 (S.D.N.Y); *Logan v. Nuvelo,* 07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo,* 07-cv-1777 (S.D.N.Y.); and *Braker v. Nuvelo,* 07-cv-1953 (S.D.N.Y.)-is GRANTED.

**\*6** The Clerk of the Court is instructed to transfer these four actions to the Northern District of California and remove them from my docket.

**SO ORDERED.**

S.D.N.Y.,2007.
Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.
Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Not Reported in F.Supp.2d                                                                                     Page 1
Not Reported in F.Supp.2d, 2006 WL 851708 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

In re AtheroGenics Securities Litigation
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re ATHEROGENICS SECURITIES
LITIGATION
**No. 05 Civ. 00061.**

March 31, 2006.

*MEMORANDUM OPINION AND ORDER*
HOLWELL, J.
**\*1** Defendants AtheroGenics, Inc.
("AtheroGenics"), Michael Henos, Russell
Medford, Mark Colonnese, Robert Scott, and
Martin Wasserman) (the "individual defendants,"
and together with AtheroGenics collectively,
"defendants"), have moved pursuant to 28 U.S.C. §
1404(a) to transfer this federal securities class
action to the United States Court for the Northern
District of Georgia. For the reasons set forth below,
the motion is granted.

BACKGROUND

Six putative class action complaints have been filed
against defendants in this matter: two in the
Southern District of New York,[FN1] which were
consolidated as the above-captioned action by order
of this Court on April 18, 2005, and four in the
Northern District of Georgia,[FN2] which plaintiffs
voluntarily dismissed on July 14, 2005 following
the filing of the instant motion.

> FN1. *Andrada v. Atherogenics, Inc., et al.*
> (No. 05 Civ. 00061), filed on January 5,
> 2005; *Faulkner v. Atherogenics, Inc., et al.*
> (No. 05 Civ. 01938), filed on February 8,
> 2005. The memorandum opinion and order
> consolidating these actions also appointed
> the Billings Group as lead plaintiff and
> designated Milberg Weiss Bershad &
> Schulman LLP, Chitwood & Harley, and
> Dyer & Shuman LLP as co-lead counsel.
> *Andrada v. Atherogenics, Inc.,* 2005 WL

912359 (S.D.N.Y. Apr. 19, 2005).

> FN2. *Bassett v. Atherogenics, Inc. et al.*
> (No. 05 Civ. 00070), filed on January 7,
> 2005; *Corson v. Atherogenics, Inc. et al.*
> (No. 05 Civ. 00082), filed on January 10,
> 2005; *Brahmbhatt v. Atherogenics, Inc., et
> al.* (No. 05 Civ. 00096), filed on January
> 11, 2005; *Christian United Fellowship v.
> Atherogenics, Inc. et al.* (No. 05 Civ.
> 00211), filed on January 25, 2005.

The actions charge that defendants violated federal
securities laws by issuing a series of materially
false and misleading statements between September
28, 2004 and December 31, 2004 regarding the
clinical trial results of a drug developed by
AtheroGenics, a Georgia-based pharmaceutical
research company. The plaintiffs allege that these
false statements regarding the drug's potential to
treat coronary artery disease had the effect of
artificially inflating the market price of
AtheroGenics's securities in violation of Section
10(b) of the Securities Exchange Act of 1934, and
Rule 10b-5 promulgated thereunder; they further
allege that the individual defendants are liable as
controlling persons of AtheroGenics under Section
20(a) of the Exchange Act.

According to the complaint,[FN3] AtheroGenics is a
research-based pharmaceutical company, focused
on the discovery, development and
commercialization of novel drugs for the treatment
of chronic inflammatory diseases, including heart
disease or atherosclerosis. (Compl.¶ 2.)
AtheroGenics's AGI-1067 drug was developed and
designed to treat atherosclerosis of the blood
vessels of the heart, or coronary artery disease, in a
manner that existing therapy could not. (*Id.* at ¶ 3.)
On September 27, 2004, after the markets closed,
defendants issued a press release entitled
"AtheroGenics Announces Positive Interim Results
from CART-2 Study-Data Show Highly
Statistically Significant Plaque Regression with
AGI-1067 in One-Year Study." (Id. at ¶ 24.) The

release reported positive preliminary results regarding the drug's ability to reduce the plaque volume associated with coronary atherosclerosis. (*Id.*) It also announced that these interim results were analyzed by Jean-Claude Tardif, M.D. at the Montreal Heart Institute in Montreal and by Steven Nissen, M.D. at the Cleveland Clinic Foundation in Ohio. (*Id.*)

> FN3. A consolidated amended complaint has not yet been filed in this action. Citations are to the Faulkner complaint unless otherwise noted.

Following this preliminary report, defendants issued another release on November 22, 2004 entitled "AtheroGenics Reports Positive Final Results from CART-2 Clinical Trial of AGI-1067-AGI-1067 Achieves Statistically Significant Plaque Regression Versus Baseline." (*Id.* at ¶ 25.) The release noted positive final data from the CART-2 study. (*Id.*) That same day,[FN4] defendants issued a second release with regard to another planned study of the drug, the Phase III ARISE trial, entitled "AtheroGenics Reaches Original Enrollment Target of 4,000 Patients in ARISE Phase III Clinical Trial of AGI-1067-Company Reiterates Plan to Extend Enrollment." In the release, defendants indicated the desire to continue enrollment so "as to accelerate the accumulation of patient years of exposure to the drug." (*Id.*) Following these November 22 announcements, AtheroGenics' stock price fell by 15%. (Andrada Compl. at ¶ 30.)

> FN4. The Andrada complaint gives November 23 as the date of this release. (Andrada Compl. ¶ 31.)

**\*2** On January 3, 2005, AtheroGenics announced in another release it had decided to increase the number of patients in the Phase III study, that the study would be longer in duration, and that proposed amendments to the Food and Drug Administration regarding the study would be needed (*Id.* at ¶¶ 9, 28.) This news, according to the complaint, caused AtheroGenics's stock to fall

20%. (*Id.* at ¶ 9.) Two days later, defendants disclosed that the SEC and the NASD had both opened informal inquiries "related to our September 27, 2004 announcement of interim results from the CART-2 trial for AGI-1067." (Declaration of Jeffery A. Berens, Esq. ("Berens Decl."), Ex. N at 22 (excerpts from AtheroGenics's SEC Form 10-K for fiscal year 2004).

According to plaintiffs, defendants were aware on or prior to September 27, 2004 of troubling aspects of the Phase IIb trial that would impact both the final results of the trial and the appropriate execution of the ARISE Phase III trial, yet obscured this knowledge and released false information to the market. (Compl. at ¶ 5.) Plaintiffs assert defendants were made aware of further study-related problems in November 2004 that they concealed, and that the releases of November 22, 2004 were also false and misleading. (*Id.* at ¶¶ 6-8.)

### DISCUSSION

Section 1404(a) of Title 28 of the United States Code provides that: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a) (2000). The purpose of this Section is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 2005 WL 1994017, at *2 (S.D.N.Y. Aug. 17, 2005).

The "preliminary inquiry is whether the action sought to be transferred is one that might have been brought in the transferee court." *Cavu Releasing, LLC. v. Fries,* 419 F.Supp.2d 388, 2005 WL 1944269 at *5-6 (S.D.N.Y. Aug. 12, 2005); *Mattel, Inc. v. Robarb's, Inc.,* 139 F.Supp.2d 487, 490 (S.D.N.Y.2001) (internal citations omitted). The Exchange Act provides for venue in any district "wherein the defendant is found or is an inhabitant or transacts business." 14 U.S.C. § 78aa. Here, the parties do not dispute that the Northern District of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 851708 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Georgia is a district where the action might have originally been brought; indeed, four similar actions were so filed in early 2005. *See* Lead Pls.' Mem. at 8 n. 6.

Once a defendant meets that threshold determination regarding the transferee district, courts will further examine factors such as: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with governing law; and (8) trial efficiency and the interests of justice. *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1996) (citing cases). The burden of demonstrating the desirability of transfer will lie "with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Id.* (quoting *Hubbell Inc. v. Pass & Seymore, Inc.,* 883 F.Supp. 955, 962 (S.D.N.Y.1995)). Ultimately, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (internal citations omitted).

**\*3** While there is "no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered," such transfers are routine "as a practical matter." *In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F.Supp.2d 164, 2006 WL 466485, at \*3 (E.D.N.Y. Feb. 28, 2006 (collecting cases). Although the plaintiffs in the four Georgia actions voluntarily dismissed those cases in the days following the filing of the instant motion in this action, courts have also noted that "[t]ransfer seems especially appropriate where, as here, there are previously filed actions pending in the defendants' home

district." *Langley Partners, L.P. v. Tripath Tech., Inc.,* 2005 WL 2482527 at \*2 (S.D.N.Y. Oct. 6, 2005) (citing *Berman v. Informix Corp.,* 30 F.Supp.2d 653 (S.D.N.Y.1998) and *MBCP Peerlogic, L.L.C. v. Critical Path, Inc.,* 2002 WL 31729626, at \*2 (S.D.N.Y. Dec. 5, 2002).) Here, application of the relevant factors reveals that defendants have met their burden to transfer this action under § 1404(a).

*Lead plaintiffs' choice of forum*

A plaintiff's choice of forum "is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y.1998); *see also Goggins v. Alliance Capital Management, L.P.,* 279 F.Supp.2d 228, 232 (S.D.N.Y.2003) (plaintiff's forum choice "is generally accorded more deference" in circumstances where "there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim").

However, "[w]hile it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions." *Shulof v. Westinghouse Elec. Corp.,* 402 F.Supp. 1262, 1263 (S.D.N.Y.1975); *see also Lewis v.. C.R.I., Inc.,* 2003 WL 1900859, at \*5 (S.D.N.Y. Apr. 17, 2003) (collecting cases, and noting that "cases interpreting section 1404(a) have found that representative plaintiffs ... are entitled to less deference than other plaintiffs."); *Eichenholtz v. Brennan,* 677 F.Supp. 198, 202 (S.D.N.Y.1988) (in a class action under federal securities laws there will be "numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim" and thus less deference to forum choice is appropriate). Thus, in light of the nature of this action, lead plaintiffs' preference for this forum will be accorded only moderate weight, and the below factors will rise in relative significance. *Goggins,* 279 F.Supp.2d at 232.

*Locus of operative facts*

In securities fraud actions, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *In re Nematron Corp. Sec. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998) (quoting *Purcell Graham, Inc. v. National Bank of Detroit,* 1994 WL 584550, at *4 (S .D.N.Y. Oct. 24, 1994). As defendants point out, AtheroGenics headquarters in Alpharetta, Georgia is at the factual center of this case, and the locus of all relevant decisionmaking. At issue here is the conduct of the defendant corporation and the individual defendants with respect to the disclosures made in the fall of 2004 about the prospects of the new atherosclerosis drug; the press releases and public filings relating to those clinical trials at issue were prepared in Alpharetta. (Declaration of Mark P. Colonnese ("Colonnese Decl.") ¶ 12.)

**\*4** While the CART-2 trial itself took place in Canada (Berens Decl., Exs. B, C), and the Phase III ARISE trial was to be conducted at various locations in North America, the United Kingdom, and South Africa (Berens Decl., Ex. E), the results of the trials were reported to executives and scientists employed by AtheroGenics at its corporate headquarters in Georgia. (Colonnese Decl. ¶ 11.) Furthermore, the decision to conduct the interim analysis itself was made in Alpharetta by the Executive Committee of ArtheroGenics. (Supplemental Declaration of Mark. P. Colonnese ("Supp. Colonnese Decl.") ¶ 9.) Aside from the sale and purchase of Atherogenics stock by putative class members, the dissemination of the press releases, and two study-related New York appearances by defendant CEO Medford,[FN5] there are no facts tying this action here that would warrant ignoring Georgia's "intimate connection to the events underpinning this case" and its status as the locus of the alleged fraud. *In re Nematron,* 30 F.Supp. at 404; *see also Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.,* 2005 WL 236440, at *6 (S.D.N.Y. Feb. 1, 2005) ("The trading and holding of stock in New York is not, however, a significant contact with the *operative* facts of this

action.").

FN5. On September 28, 2004, Russell Medford, AtheroGenics' CEO, appeared at CNBC's studios in midtown Manhattan for a taping of "Morning Call" regarding the announcement of the Phase IIb interim findings; the same day, he gave a presentation on the results at Grand Hyatt in New York City for the UBS Global Life Sciences Conference. (Berens Decl., Exs. H, J.) On December 1, 2004, Defendant Medford made an oral presentation on the Phase III ARISE study at the Lazard Life Sciences Conference at the Mandarin Oriental Hotel in New York City. (Compl. ¶ 27; Berens Decl., Ex. L .)

*Convenience of the parties and witnesses*

All of the individual defendants in this matter are located in the Northern District of Georgia (Colonnese Decl. ¶¶ 5-9). Defendants have also identified by name at least five potential non-party witnesses who are located in the Atlanta area, and have pointed to eight other potential witnesses in the Northern District who were employed by or on the board of defendant at the requisite time. (Supp. Colonnese Decl. ¶¶ 4.) "The convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum." *In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 2006 WL 466485, at *3. Few witnesses with knowledge probative of the alleged fraud are located in New York,[FN6] and the three potential witnesses involved in the examination of the drug in Canada and Cleveland (Drs. Tardif, Topol, and Nissan) are a flight's distance from both New York City and Atlanta. *See, e.g., Canadian Kennel Club v. Continental Kennel Club,* 1997 WL 361991, at *3-4, n. 3 (S.D .N.Y. June 30, 1997) (finding that Canadian party witness "will have to travel to any trial of this action whether it is adjudicated in New York or Louisiana," that "either way, travel is required, and the difference in travel time [of flying to transferee district] does not significantly affect

Not Reported in F.Supp.2d, 2006 WL 851708 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the balance"); *see also Wechsler v. Macke Int'l Trade, Inc.,* 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999) ("[T]he Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums."); *Telecom Technical Services, Inc. v. ROLM Co.,* 1995 WL 874441 (E.D.Tex. Feb. 24, 1995) (noting that "it is well known that Atlanta is a major transportation hub of the Southeast" in transferring case to Northern District of Georgia in part because of convenience to counsel, parties, and witnesses).

> FN6. Lead plaintiffs do note the fact that defendant retains a New York City based public relations firm to disseminate its news releases, and that analysts from Wachovia Securities, Needham & Company, Morgan Stanley, and Fortis Bank issued reports on defendant during the class period; these companies on "information and belief ... [each maintain] a primary office in New York." (Berens Decl. at ¶ 2.)

**\*5** While lead plaintiffs, despite their lack of residence in this district, [FN7] have expressed a preference for litigating this matter in New York City, they also moved for appointment as lead plaintiff and lead counsel in the actions filed in Georgia. Although lead plaintiffs are under no burden on a motion to transfer, such efforts counsel against a finding of countervailing inconvenience regarding the resumption of litigation of this matter in that district. Considering the location of both party and non-party witnesses, "on balance, transfer would be significantly more convenient for the defendant and not substantially disadvantageous to plaintiff." *Intria Corp. v. Intira Corp.,* 2000 WL 1745043, *4 (S.D.N.Y. Nov. 27, 2000) (noting disruption and expense likely incurred by California business if trial were to proceed in New York .) This factor, therefore, resolves in favor of transfer.

> FN7. One lead plaintiff resides in Brooklyn, New York (Michele Fortunato);

the others reside in Fairfax, Virginia (Andrew May), and Naples, Florida (Robert and Michele Billings). (Berens Decl. at ¶ 3.)

### Location of Documents and Ease of Access to Sources of Proof

The location of documents in this matter also weighs in favor of transfer. Defendants have noted that correspondence among employees and executives, communications and documents related to the disputed press releases and financial reports, and the "voluminous documentation" surrounding the AGI-1067 clinical trials, among other documentation, are available in defendant's sole office in Alpharetta. "This factor is clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a)." *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 58 (N.D.N.Y.1990).

While "[o]f course the documents at issue here could be copied and shipped to New York ... this would impose an extra cost that is unnecessary." *Nematron Corp.,* 30 F.Supp.2d at 404; *see also Ravenwoods Invest. Co., L.P.,* 2005 WL 236440 at *6; *Stillwater Mining,* 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) ("While it is true that documents can be transported from state to state, for purposes of weighing transfer factors, the fact that the documents are all currently located in [the transferee district] favors transfer."). Accordingly, transfer will facilitate access to the relevant documents and records.

### Additional factors

It is obvious that the federal courts in both this district and the Northern District of Georgia are familiar with the legal principles necessary to resolve this case. This factor, therefore, does not favor either party. The parties also concede, more or less, that the relative means of the parties does not strongly favor either lead plaintiffs or defendants. (*See* Lead Pls.' Mem. at 20-21.) In terms of relative docket congestion, the Court notes that, as of September 30, 2005, the number of

Not Reported in F.Supp.2d, 2006 WL 851708 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

pending cases (civil and criminal) per active judge in the Southern District of New York was 689; in the Northern District of Georgia, it was 354. See Administrative Office of the United States Courts, Federal Court Management Statistics ("FCMS"), *available at* http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited Mar. 29, 2006); *see In re Hanger Orthopedic Group,* 2006 WL 466485, at *5 (transferring case to District of Maryland and citing the FCMS database for comparative caseloads while noting that "although docket congestion is insufficient on its own to support a transfer motion [it is] a proper factor for the Court to consider and is accorded some weight") (internal quotations omitted).

*Conclusion*

**\*6** Based on the foregoing analysis, the Court concludes that the balance of factors clearly favors transfer. Defendants' motion to transfer this action [21] to the Northern District of Georgia is granted, and the Clerk of the Court is directed to effectuate the transfer.

SO ORDERED

S.D.N.Y.,2006.
In re AtheroGenics Securities Litigation
Not Reported in F.Supp.2d, 2006 WL 851708 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Slip Copy                                                                            Page 1
Slip Copy, 2007 WL 1522614 (S.D.N.Y.)
**(Cite as: Slip Copy)**

In re Connetics
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.In
re CONNETICS SECURITIES LITIGATION
**No. 06 Civ. 11496(SWK).**

May 23, 2007.

*OPINION AND ORDER*

KRAM, J.
**\*1** On February 14, 2007, lead plaintiff Oklahoma
Teachers' Retirement System ("Oklahoma
Teachers") filed its consolidated amended
complaint (the "Complaint"), which charges that
Connetics Corporation ("Connetics"), several of its
former and current officers and directors
(collectively, the "Connetics Defendants"), Ernst &
Young LLP ("E & Y"), Alexander Yaroshinsky
("Yaroshinsky"), Victor Zak ("Zak"), and four
underwriters (the "Underwriter Defendants")
engaged in securities fraud. The Connetics
Defendants now move the Court to transfer venue
under 28 U .S.C. § 1404(a). For the reasons that
follow, the Court grants that motion and transfers
this case to the United States District Court for the
Northern District of California.

## I. BACKGROUND

On October 31 and November 2, 2006, two class
action complaints were filed in this District,
alleging that Connetics and several of its officers
and directors committed securities fraud. In an
Opinion and Order dated December 14, 2006, the
Court consolidated those two actions under the
above caption, appointed Oklahoma Teachers lead
plaintiff, and named Bernstein Litowitz Berger &
Grossmann LLP lead counsel. Oklahoma Teachers
is a government-sponsored retirement plan that
resides in Oklahoma and manages assets for
employees of Oklahoma educational institutions.
On February 14, 2007, Oklahoma Teachers filed
the Complaint on behalf of a putative nationwide
class of individuals who purchased Connetics
securities between January 27, 2004, and July 9,

2006 (the "Class Period").

The Complaint identifies various institutional and
individual defendants. Connetics is a specialty
pharmaceuticals company incorporated in
Delaware, which focuses on the development of
products for the dermatology market. At all
relevant times, Connetics maintained its corporate
headquarters in the Northern District of California,
where nearly all of the Connetics Defendants also
worked and continue to reside.[FN1] E & Y served as
Connetics' outside auditor from its offices in
Northern California. Yaroshinsky is the former
Vice President of Biostatistics and Clinical
Operations at Connetics and currently resides in
California. Zak is a resident of Newton,
Massachusetts who was employed in Connecticut
during the Class Period. The Underwriter
Defendants are: CIBC WorldMarkets Corp.
("CIBC"), which maintains its principal place of
business in New York City; Wachovia Securities
International Limited, whose principal place of
business is in Richmond, Virginia; KBC Financial
Products USA, which holds its principal place of
business in New York City; and DGAB London,
whose principal place of business is in London,
England.

> FN1. Of the thirteen former or current
> officers and directors named as defendants
> in the Complaint, just two reside outside
> California. Specifically, Carl B. Feldbaum,
> a former Connetics director, resides in
> Idaho, while John C. Kane, who is also a
> former Connetics director, resides in
> Georgia.

The Complaint avers three basic securities fraud
schemes. First, it alleges that the defendants
misrepresented the safety and likelihood of Food
and Drug Administration ("FDA") approval of a
developmental-stage acne product called Velac Gel
("Velac"), which the defendants knew had caused a
high incidence of cancer in the mice on which it
was tested. Second, the Complaint charges that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants caused Connetics to issue materially false and misleading financial statements, predicated in part on revenue numbers that had been inflated through "channel-stuffing."[FN2] Third, the Complaint accuses Yaroshinsky and Zak of using insider knowledge about the pending non-approval of Velac to profit through insider sales of Connetics securities.[FN3]

> FN2. Channel-stuffing is a deceptive business practice designed to inflate a company's sales and earnings figures. The company accomplishes this inflation by deliberately sending retailers along its distribution channel more products than they are able to sell. These retailers eventually send the excess products, in lieu of cash, back to the company, which must readjust its accounts receivable and ultimately its bottom line.

> FN3. These insider-trading allegations are also the subject of a Securities and Exchange Commission ("SEC") enforcement action currently pending in this District. *See Sec. & Exch. Comm. v. Yaroshinsky,* 06 Civ. 2401(RCC).

*2 Before answering these allegations on the merits, the Connetics Defendants filed the instant motion to transfer venue to the Northern District of California. The motion is supported by Yaroshinsky and E & Y.

## II. DISCUSSION

A district court may transfer a civil action to any other district where the action might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice ." 28 U.S.C. § 1404(a). In determining the propriety of a motion to transfer venue, a district court must conduct a two-part inquiry. First, the district court must decide whether the action "might have been brought" in the transferee district. *Id.; Fuji Photo Film Co. v. Lexar Media, Inc.,* 415 F.Supp.2d 370, 373 (S.D .N.Y.2006) (citation and internal quotation marks omitted). Second, the district court must analyze

the extent to which the interest of justice and the convenience of the litigation warrant a transfer of venue. *Fuji Photo Film Co.,* 415 F.Supp.2d at 373; *In re Nematron Corp. Sec. Litig.,* 30 F.Supp.2d 397, 400 (S.D.N.Y.1998) (citation omitted).

This second, case-specific analysis generally embraces the consideration of several factors, including: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *Fuji Photo Film Co.,* 415 F.Supp.2d at 373 (citation omitted); *In re Nematron,* 30 F.Supp.2d at 400 (citations omitted). A district court should grant a motion for a transfer of venue only if the moving party has made a "clear and convincing" showing that transfer is appropriate in light of these and any other relevant factors. *In re Nematron,* 30 F.Supp.2d at 400 (citations and internal quotation marks omitted).

Here, the parties do not dispute-nor could they-that the Connetics Defendants have satisfied the first prong of the venue inquiry. The Securities Exchange Act of 1934 (the "Exchange Act") provides that venue is proper in any district "wherein the defendant is found or is an inhabitant or transacts business...." 15 U.S.C. § 78aa. The Northern District of California meets these criteria because many of the defendants reside and transacted business therein.

Therefore, the Connetics Defendants' motion to transfer venue turns on the nine factors mentioned above. As the following analysis demonstrates, the Connetics Defendants have shown that these factors weigh convincingly in favor of transfer.

### 1. The Convenience of Witnesses

The "[c]onvenience of both the party and non-party

witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 657 (S.D.N.Y.1998) (citation and internal quotation marks omitted). In evaluating this factor, the Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 577 (S.D.N.Y.2001) (citation omitted). Here, the Connetics Defendants have made a convincing showing, by way of supplemental affidavits submitted to the Court, that the convenience of potential witnesses favors transfer. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203, 208 (S.D.N.Y.1998) (stating that moving party "must support the transfer application with an affidavit containing detailed factual statements ..., including the potential principal witnesses expected to be called and a general statement of the substance of their testimony") (citation and internal quotation marks omitted).

**\*3** In cases where, as here, the plaintiff alleges securities fraud, the key witnesses are frequently "officers and employees of [the issuer] who participated in drafting or distributing allegedly false and misleading statements." *In re Stillwater Co. Mining Sec. Litig.,* No. 02 Civ. 2806(DC), 2003 WL 21087953, at \*4 (S.D.N.Y. May 12, 2003); *accord In re Nematron,* 30 F.Supp.2d at 402 ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct."). The Connetics Defendants have identified dozens of such potential witnesses who were involved in the preparation and dissemination of Connetics' financial statements. (Wiggans Decl. ¶ 8-9, Mar. 16, 2007; Higgins ¶¶ 5-7, Mar. 16, 2007.) Furthermore, the Connetics Defendants have specified eight E & Y employees who possess information about Connetics' quarterly and annual audits, as well as its financial statements. (Morrison Decl. ¶¶ 4-7, Mar. 5, 2007.) The Connetics Defendants have also singled out persons with information regarding its sales practices and alleged channel-stuffing (Wiggans Decl. ¶ 13) and others with information concerning its application to the

FDA for permission to market Velac (Wiggans Decl. ¶ 15; Krochmal Decl. ¶ 5, Mar. 16, 2007). Nearly all of these potential witnesses worked in Northern California on matters related to this litigation and continue to reside there.

Lead plaintiff Oklahoma Teachers has attempted to rebut the Connetics Defendants' substantial showing of witness convenience by pointing to other potential witnesses who do not reside in Northern California. Specifically, Oklahoma Teachers points to: (1) FDA employees who work and reside in or around the Washington, D.C. area; (2) toxicologists located around the country who were involved in Velac testing; (3) Connetics' primary customers, which are located in Pennsylvania, Ohio, and Florida; (4) securities analysts who covered Connetics, the majority of whom are not located in California; and (5) Zak, who is a Massachusetts resident. Though some of these individuals-in particular, the FDA employees in and around D.C. and the toxicology experts located throughout the nation-may possess information concerning what the defendants knew and when they knew it, most of them have no ties to this District. Thus, most of the potential witnesses cited by Oklahoma Teachers will be inconvenienced regardless of whether this litigation proceeds here or in the Northern District of California, a consideration which weighs in the Connetics Defendants' favor. *See In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F.Supp.2d 164, 168-69 (E.D.N.Y.2006) (holding that convenience of witnesses tipped in defendants' favor where "plaintiffs' non-party witnesses will be inconvenienced whether the case proceeds in New York or Maryland").

The only potential witnesses with alleged ties to this District are analysts working with CIBC, The Buckingham Research Group, and C .E. Unterberg, Towbin ("C.E.Unterberg"). Oklahoma Teachers has submitted several reports prepared by these analysts, whose names are accompanied by phone numbers beginning with a "212" area code. Although this may be evidence that the analysts in question work at offices in New York, it is not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proof that they reside in this District. In addition, both CIBC and C.E. Unterberg maintain offices in California, from which these companies' analysts may have covered Connetics. In fact, Oklahoma Teachers' own submissions demonstrate that Connetics was covered by many analysts throughout the nation. (Pls.' Opp'n 8 n. 5, Mar. 30, 2007.) Given the relative import of the evidence that might be presented by potential analyst-witnesses, and in light of these witnesses' unclear connections to this District, the analyst-witnesses do not significantly tip the venue inquiry in Oklahoma Teachers' favor. *See Berman,* 30 F.Supp.2d at 657 (discounting plaintiff's reliance on analyst-witnesses where plaintiff only assumed that analysts resided in New York because important brokerages had offices there, but many of brokerages in fact also had offices elsewhere and a number of analysts reported on company from locations outside New York).

**\*4** In sum, the convenience of witnesses favors the transfer of this litigation to the Northern District of California. Most of the potentially significant witnesses identified by the parties worked and continue to reside therein. Although some witnesses will be inconvenienced wherever this case moves forward, scarcely any will be worse off if the case proceeds in the Northern District of California, and many will be better off.

### 2. The Convenience of the Parties

In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence...." *U .S. Fidelity and Guar. Co. v. Republic Drug Co., Inc.,* 800 F.Supp. 1076, 1080 (E.D.N.Y.1992). Here, the vast majority of the defendants-including nearly all of the former and current Connetics officers and directors named in the suit, Yaroshinsky, and E & Y-reside in California and have asserted that they would be inconvenienced by the prosecution of this suit in the Southern District of New York. Zak, who resides in Massachusetts, has not expressed any preference regarding the disposition of the instant motion for a transfer of venue, nor have the

Underwriter Defendants, three of which are headquartered in New York.

On the other hand, lead plaintiff Oklahoma Teachers is a resident of Oklahoma and thus cannot claim that this District is the more convenient forum for it. *In re Hanger,* 418 F.Supp.2d at 169. Furthermore, Oklahoma Teachers purports to bring this action on behalf of a nationwide class of purchasers of Connetics securities, many of whom will not be New York residents. Since many class members will be inconvenienced regardless of whether the instant suit proceeds in this District or the Northern District of California, the plaintiffs' residence provides no support for keeping this suit in New York. *See In re Collins & Aikman Corp. Sec. Litig.,* 438 F.Supp.2d 392, 396 (S.D.N.Y.2006); *In re Hanger,* 418 F.Supp.2d at 169; *In re Nematron,* 30 F.Supp.2d at 403.

Given the defendants' strong ties to Northern California and the plaintiffs' weak connections to this District, the convenience of parties tips decidedly in favor of the Connetics Defendants' motion to transfer venue. *In re Collins & Aikman,* 438 F.Supp.2d at 396; *In re Hanger,* 418 F.Supp.2d at 169.

### 3. The Location of Relevant Documents and Relevant Ease of Access to Sources of Proof

Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, *see In re Hanger,* 418 F.Supp.2d at 170, it nonetheless retains at least some relevance to the venue inquiry. *In re Collins & Aikman,* 438 F.Supp.2d at 396-97; *Ravenwoods Inv. Co. v. Bishop Capital Corp.,* No. 04 Civ. 9266(KMK), 2005 WL 236440, at \*6 (S.D.N.Y. Feb. 1, 2005); *In re Stillwater,* 2003 WL 21087953, at \*4. Most of the documents related to Connetics' allegedly misleading financial statements, including its financial records, press releases, and internal company reports and communications, were prepared in the Northern District of California and are maintained therein. (Wiggans Decl. ¶ 8; Higgins Decl. ¶ 7.) Likewise, most of the regulatory, pre-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1522614 (S.D.N.Y.)

**(Cite as: Slip Copy)**

clinical, and product-development documents pertaining to Velac are located in the Northern District of California. (Wiggans Decl. ¶ 14; Krochmal Decl. ¶ 6.) Furthermore, additional evidence stemming from outside audits of Connetics is located at E & Y's offices in the Northern District of California. (Morrison Decl. ¶ 10.)

**\*5** Nevertheless, lead plaintiff Oklahoma Teachers argues that substantial portions of the documents located outside New York will be present in this District in connection with the SEC's enforcement action against Yaroshinsky and Zak. *See Sec. & Exch. Comm. v. Yaroshinsky,* 06 Civ. 2401(RCC). Although some documents relevant to this litigation may be available in this District, Oklahoma Teachers' argument misses the mark. The SEC enforcement action involves only insider-trading allegations. Those allegations overlap with the insider-trading allegations made in the Complaint, but they do not embrace the other claims at issue here, including those that pertain to alleged misrepresentations in Connetics' financial statements and reports on Velac. In fact, given the differences in the subject matter of the SEC enforcement action and the instant action, Judge Casey previously declined to accept these actions as related. *See Yaroshinsky,* 06 Civ. 2401(RCC), Dkt. # 38. Therefore, while the presence in this District of documents relating to the Complaint's insider-trading allegations may partially reduce the inconvenience of proceeding here, it by no means eliminates the advantage of proceeding in the Northern District of California, where documents relating to all of the Complaint's claims will be found.

In summary, because the majority of the documents pertaining to the allegations of the Complaint are located in the Northern District of California, that forum is at least a marginally better forum in which to proceed. *See In re Collins & Aikman,* 438 F.Supp.2d at 396-97 (district where "financial statements, presses releases, earnings statements, and SEC filings" were prepared and located was "at least marginally more convenient"); *In re*

*Nematron,* 30 F.Supp.2d at 404 ("Of course the documents at issue here could be copied and shipped to New York. Yet this would impose an extra cost that is unnecessary ...."); *accord In re Stillwater,* 2003 WL 21087953, at \*5 ("While it is true that documents can be transported from state to state, for purposes of weighing transfer factors, the fact that the documents are all currently located in Montana favors transfer.").

### 4. The Locus of Operative Facts

Courts in this District have held that misrepresentations or omissions occur "where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *In re Collins & Aikman,* 438 F.Supp.2d at 397 (quoting *Adair v. Microfield Graphics, Inc.,* 00 Civ. 0629(MBM), 2000 WL 1716340, at \*2 (S.D.N.Y. Nov. 16, 2000)). The allegedly misleading financial statements, press releases, and SEC filings enumerated in the Complaint were prepared and issued from Connetics' headquarters in the Northern District of California (Wiggans Decl. ¶¶ 8-10; Higgins Decl. ¶ 7), and are therefore deemed to have occurred therein. Since these alleged misrepresentations form the core of this litigation, significant portions of the operative facts occurred in the Northern District of California. *See In re Hanger,* 418 F.Supp.2d at 169 ("As in any securities-fraud action, plaintiffs' claims are based on defendants' alleged misrepresentations and omissions....").

**\*6** Certain facts set forth in the Complaint undoubtedly occurred outside of California. In particular, the pre-clinical safety test that found a high incidence of cancerous tumors in mice exposed to Velac was conducted in the Washington, D.C. area. Experts involved in the testing of Velac were located throughout the country. Moreover, FDA employees located in or near Rockville, Maryland contacted some of the Connetics Defendants on April 13, 2005, in order to discuss Velac's negative test results. However, these incidental occurrences do not pull the "center of gravity" of this litigation away from California,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

where the facts constituting the defendants' alleged fraud took place. *See In re Collins & Aikman,* 438 F.Supp.2d at 397; *In re Stillwater,* 2003 WL 21087953, at *4. Furthermore, since these incidental occurrences did not take place in New York, they scarcely connect the instant case to this District. *See In re Collins & Aikman,* 438 F.Supp.2d at 397 (discounting plaintiff's reliance on facts that occurred outside Southern District of New York in submission opposing transfer from that district).

Lead plaintiff Oklahoma Teachers lays special emphasis on Connetics' March 2005 issuance of bonds pursuant to an indenture governed by New York law (the "Indenture"). Oklahoma Teachers claims that the Indenture: (1) allowed the bonds to be surrendered at a Connetics office in Manhattan; (2) required that Connetics maintain a trustee with offices in Manhattan; (3) stipulated that bondholders' meetings would be held in Manhattan; and (4) obligated Connetics to retain offices in Manhattan. (Pls.' Opp'n 6-7.) According to Oklahoma Teachers, Connetics purposely availed itself of the opportunity to do business in New York and thus should not be surprised that it has been hauled into court in this District. (Pls.' Opp'n 17.) Oklahoma Teachers' argument, however, strays wide of the target.

Uncontradicted affidavits presented by the Connetics Defendants demonstrate that transactional documents relating to the bonds were prepared in the Northern District of California, wherein the due diligence conducted in connection with the bonds' issuance also occurred. (Higgins Decl. ¶ 8.) Moreover, Connetics never maintained an office in Manhattan, but rather employed J.P. Morgan as its agent in this District. (Higgins Decl. ¶ 8.) Connetics' ties to this District through the activities of J.P. Morgan are tenuous, especially in light of the more robust connections between the operative facts and California. *See Lewis v. C.R.I., Inc.,* No. 03 Civ. 651(MBM), 2003 WL 1900859, at *3 (S.D.N.Y. Apr. 17, 2003) (transferring venue in part because defendant had only a "tenuous" connection to New York through its solicitation

agent). More importantly, Oklahoma Teachers' claims concerning the bond offering arise out of the bond registration statement's incorporation of the same alleged misrepresentations on which the remainder of the Complaint relies. The Court has already determined that these misrepresentations occurred where they were issued, i.e., in the Northern District of California. That the bonds were issued under New York law is irrelevant, since this is not a dispute over the interpretation of the bond contract, but rather, a controversy that turns on whether the defendants misrepresented material information and possessed the requisite scienter in doing so. For purposes of the instant motion, the "New York" bond offering is comparable to the ordinary sale of stock on New York stock exchanges. Since a non-movant's sale of stock in New York cannot alone prevent a transfer of venue, nor can the bond offering. *See In re Nematron,* 30 F.Supp.2d at 404 ("[T]hat the shares were directed to New York does not make it a forum which has a significant contact with the operative facts.").

**\*7** In summary, the operative facts are centered around the Northern District of California, wherein the defendants allegedly issued the misrepresentations that constitute the basis of this litigation. Thus, the location of the operative facts weighs heavily in favor of a transfer of venue. *See ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 279 (S.D.N.Y.2000) ("[T]he location of operative events is a 'primary factor' in determining a motion to transfer venue.") (quoting *Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y.1998).

5. The Availability of Process to Compel Attendance of Unwilling Witnesses

Under Federal Rule of Civil Procedure 45(b)(2), a district court may compel the appearance only of those witnesses who reside in the district in which the court sits, or within 100 miles of the place of trial. Here, the Connetics Defendants have identified many potential witnesses who reside in the Northern District of California, outside the

reach of this Court's subpoena powers. *See supra* Part II.A. Nevertheless, many of these potential witnesses are parties to the instant litigation, whose attendance may be compelled by the district court wherever this suit is heard. *See In re Geopharma, Inc. Sec. Litig.,* No. 04 Civ. 9463(SAS), 2005 WL 1123883, at *3 (S.D.N.Y. May 11, 2005) (citing 15 U.S .C. § 78aa). Other potential witnesses identified by the Connetics Defendants are Connetics employees, whose testimony may be compelled by Connetics without the need for a subpoena. *Fuji Photo Film Co.,* 415 F.Supp.2d at 375 (citing *Aerotel, Ltd. v. Sprint Corp .,* 100 F.Supp.2d 189, 197 (S.D.N.Y.2000)).

The Connetics Defendants point to several potential non-party witnesses who are no longer employed by Connetics, but continue to reside in the Northern District of California, beyond the subpoena power of this Court. (Wiggans Supp. Decl. ¶¶ 3-4, Apr. 13, 2007; Wiggans Decl. ¶ 15.) These potential witnesses include six particular former members of Connetics' management, as well as dozens of unidentified former employees in relevant Connetics' departments. (Defs.' Reply 3-4.) Although these individuals may indeed escape this Court's compulsory process, the Connetics Defendants have failed to demonstrate, or even allege, that any of them would be unwilling to testify should this matter proceed to trial. As such, the Connetics Defendants have made only a weak preliminary showing of potential subpoena difficulties. *See In re Collins & Aikman,* 438 F.Supp.2d at 397-98.

On the other hand, lead plaintiff Oklahoma Teachers has not identified any particular non-party witnesses who would be subject to process in this District, but are not subject to process in the Northern District of California. In fact, the majority of Oklahoma Teachers' non-party witnesses who reside outside the state of California are located in Washington, D.C., Maryland, Pennsylvania, Ohio, and Florida, well outside the reach of this Court's subpoena power.

**\*8** Given the Connetics Defendants' weak

preliminary showing of potential subpoena difficulties, in conjunction with the absence of any contrary showing by Oklahoma Teachers, this factor weighs slightly in favor of transfer. *See id.*

### 6. The Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman,* 30 F.Supp.2d at 659 (citations omitted). Here, there is no relevant disparity between the resources available to Connetics and lead plaintiff Oklahoma Teachers. Nonetheless, Oklahoma Teachers argues that the burden on Zak associated with litigating this action in the Northern District of California, while also litigating the SEC enforcement action in this District, would be substantial. Although Zak may indeed suffer some inconvenience from this arrangement, there are fourteen other individual defendants named in this action, twelve of whom reside in California, and all of whom have indicated that it would be more convenient to litigate therein. In the absence of any showing that Zak has fewer financial means than these fourteen individuals, or any contrary showing that the fourteen other individual defendants would be meaningfully impeded by the prosecution of this suit in New York, the Court finds that this factor is neutral.

### 7. The Forum's Familiarity with the Governing Law

Federal courts throughout the nation are equally capable of applying federal securities laws. *In re Collins & Aikman,* 438 F.Supp.2d at 398. Accordingly, this factor is also neutral.

### 8. The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight...." *Berman,* 30 F.Supp.2d at 659 (citations omitted). That weight is reduced, however, where "the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum." *Eichenholtz v. Brennan,* 677 F.Supp. 198, 201 (S.D.N.Y.1988) (citations

omitted). A plaintiff's choice of forum also "carries far less weight" in a stockholder class action, where members of the class are dispersed throughout the nation. *Berman,* 30 F.Supp.2d at 659 (citing *Shulof v. Westinghouse Elec. Corp.,* 402 F.Supp. 1262, 1263 (S.D .N.Y.1975)); *see also In re Warrick,* 70 F.3d 736, 741 n. 7 (2d Cir.1995) ("[T]he plaintiff's choice of forum is a less significant consideration in a ... class action than in an individual action.").

Here, Oklahoma Teachers is not a resident of this forum. Moreover, the Court has already determined that the operative facts of the instant litigation bear very little relation to this District. *See supra* Part II.D. In addition, Oklahoma Teachers purports to bring this securities class action on behalf of a widely dispersed, nationwide class of individuals. Under these circumstances, Oklahoma Teachers' choice of forum is entitled to substantially less deference. *See, e.g., In re Collins & Aikman,* 438 F.Supp.2d at 398; *In re Hanger,* 418 F.Supp.2d at 170.

### 9. Trial Efficiency and the Interest of Justice

**\*9** "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, [duplicative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Savin v. CSX Corp.,* 657 F.Supp. 1210, 1214 (S.D.N.Y.1988) (quoting *Wyndham Associates v. Bintliff, A.G.,* 398 F.2d 614, 619 (2d Cir.1968)). Here, lead plaintiff Oklahoma Teachers relies on this "strong policy" to argue that the instant litigation should not be transferred away from this District, wherein the "substantially similar" SEC enforcement action against Yaroshinsky and Zak is proceeding. Since there is some overlap between this litigation and the SEC enforcement action, it is conceivable that the parties and witnesses could better coordinate their trial preparation as to the overlapping subject matter if both cases proceeded in the same district. Nevertheless, Judge Casey has already determined that the SEC enforcement action is not related to

this litigation. *See Yaroshinsky,* 06 Civ. 2401(RCC), Dkt. # 38. Thus, these two cases will in any event proceed before different judges, which dampens whatever minimal efficiencies could have been garnered from the prosecution of concededly unrelated matters before a single tribunal. Moreover, this Court has already noted the wide divergence between the insider-trading allegations of the enforcement action and the much broader securities-fraud allegations of the Complaint. *See supra* Part II.C. Therefore, the "strong policy" regarding related cases has minimal implications for the instant venue inquiry.

In considering trial efficiency, a district court may also pay some mind to relative levels of docket congestion in the prospective transferor and transferee districts. *See In re Hanger,* 418 F.Supp.2d at 171; *see also In re Nematron,* 30 F.Supp.2d at 407 (noting that though docket conditions in the transferor and transferee courts "are relevant," they are "insufficient on [their] own to support a transfer motion") (citations and internal quotation marks omitted). Here, the Connetics Defendants have demonstrated that this District is slightly more congested than the Northern District of California. In particular, as of September 30, 2006, the average judge in this District presided over 716 cases, while the average judge in the Northern District presided over 583. *See* Administrative Office of the United States Courts, *Federal Court Management Statistics* ("FCMS"), *available at* http:// www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited May 21, 2007). Nevertheless, since this slight difference in caseload translated only into a one-month difference in median disposition time for a civil case (8.3 months in this District, as opposed to 7.4 months in the Northern District of California), it weighs only marginally, if at all, in the Connetics Defendants' favor. *See In re Hanger,* 418 F.Supp.2d at 171 (finding 2.7 month difference in relative median disposition times to weigh marginally in favor of transfer). Thus, the pendency of the SEC enforcement action and the relative docket congestion in this District and the Northern District of California figure only minimally in the

Slip Copy

Slip Copy, 2007 WL 1522614 (S.D.N.Y.)

**(Cite as: Slip Copy)**

Court's analysis of trial efficiency and the interest of justice.

**\*10** Given the relative irrelevance of these last considerations, and since the people, papers, and events involved in this matter are centered around the Northern District of California, the Court finds that it would be more efficient and just for this litigation to proceed there, rather than in Oklahoma Teachers' chosen forum. *See Berman,* 30 F.Supp.2d at 659 (finding that "plaintiff's choice of forum [was] far outweighed by the factors discussed above which point overwhelmingly in favor of transfer to California") (citing *Giuliani, S.p.A. v. Vickers, Inc.,* 997 F.Supp. 501, 503 (S.D.N.Y.1998)); *accord In re Nematron,* 30 F.Supp.2d at 407 ("A denial of transfer will not be premised solely on choice of forum.").

In summary, the majority of the venue factors point decidedly in the direction of transfer, while the rest are either neutral, or in the case of Oklahoma Teachers' choice of forum, weigh only slightly against transfer. Under these circumstances, the Court concludes that the Connetics Defendants have shown by clear and convincing evidence that transfer is in the "best interests of the litigation." *See Berman,* 30 F.Supp.2d at 656 (quoting *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1995)).

### III. CONCLUSION

Although there is no per se rule favoring the transfer of a securities-fraud action to the district of the issuer's headquarters, many courts have nonetheless routinely reached that result. *In re Hanger,* 418 F.Supp.2d at 168 (listing cases). Likewise, this Court's analysis of the venue factors as they relate to the instant action demonstrates that the Northern District of California-the location of Connetics' headquarters-is a far superior forum for this litigation.

Therefore, the Connetics Defendants' motion to transfer venue is hereby granted and the Clerk is directed to transfer this case, including all actions consolidated thereunder, to the Northern District of California.

SO ORDERED.

S.D.N.Y.,2007.
In re Connetics
Slip Copy, 2007 WL 1522614 (S.D.N.Y.)

END OF DOCUMENT

# TAB 4

--- F.R.D. ----                                                    Page 1
--- F.R.D. ----, 2007 WL 1683348 (S.D.N.Y.)
**(Cite as: --- F.R.D. ----)**

Strougo v. Brantley Capital Corp.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Barbara STROUGO, individually and on behalf of
all others similarly situated, and Class Member
Karpus Management, Inc., Plaintiffs,
v.
BRANTLEY CAPITAL CORPORATION, Robert
P. Pinkas, Michael J. Finn, and Tab A. Keplinger,
Defendants.
**No. 06 Civ. 13315(SCR).**

June 3, 2007.

**Background:** Shareholders brought class action
against publicly-traded business development com-
pany and its officers and directors under Rule
10b-5, alleging that company's overvaluation of its
investment in another company caused share price
to fall. Two groups of shareholders filed separate
motions for appointment as lead plaintiff, and de-
fendants moved to transfer venue.

**Holdings:** The District Court, Robinson, J., held
that:

(1) investment advisory firm that owned shares in
corporation was class member with largest financial
interest;

(2) firm satisfied typicality and adequacy require-
ments for appointment as lead plaintiff;

(3) proposed lead counsel possessed requisite ex-
perience to represent the interests of the class mem-
bers; and

(4) transfer of venue to Northern District of Ohio
was warranted.

Ordered accordingly.

**[1] Federal Civil Procedure 170A ☞187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represen-
ted
                170Ak187 k. Stockholders, Investors,
and Depositors. Most Cited Cases
Registered investment advisory firm that owned
shares in corporation, and not group of individual
shareholders, was class member with the largest
financial interest in the outcome of action alleging
corporation violated federal securities laws by mak-
ing false and misleading misrepresentations about
its valuation and financial statements, as would
support firm's appointment as lead plaintiff under
PSLRA, notwithstanding that shares under firm's
control were actually held for an undisclosed num-
ber of smaller individual investors; firm purchased
209,952 shares of corporation during the class peri-
od that it did not sell, as opposed to 3,475 shares
purchased by group of individual shareholders, and
firm calculated its loss as $1,085,661 during the
class period. Private Securities Litigation Reform
Act of 1995, § 101(b), 15 U.S.C.A. §
78u-4(a)(3)(B)(iii)(I).

**[2] Federal Civil Procedure 170A ☞187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represen-
ted
                170Ak187 k. Stockholders, Investors,
and Depositors. Most Cited Cases
Although rule governing class actions provides that
a party must satisfy four requirements to serve as a
class representative, only the requirements of typic-
ality and adequacy must be addressed in the context
of deciding a motion to appoint a lead plaintiff un-
der PSLRA. Private Securities Litigation Reform
Act of 1995, § 101(b), 15 U.S.C.A. §
78u-4(a)(3)(B)(i); Fed.Rules Civ.Proc.Rule 23, 28
U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-04972-CW   Document 1-15   Filed 09/26/2007   Page 29 of 38

**[3] Federal Civil Procedure 170A ⟲187**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Typicality exists, for purposes of appointing lead plaintiff under PSLRA, where the claims arise from the same conduct from which the other class members' claims and injuries arise. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(a)(3)(B)(i); Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⟲164**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
      170AII(D)1 In General
        170Ak164 k. Representation of Class; Typicality. Most Cited Cases
To meet the class action rule's requirement that the representative party "fairly and adequately protect the interests of the class," a court must examine: (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟲187**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Registered investment advisory firm that owned shares in corporation satisfied typicality require-ment for appointment as lead plaintiff under PLSRA in action alleging corporation violated fed-eral securities laws by making false and misleading misrepresentations about its valuation and financial statements; firm purchased or acquired shares dur-ing the class period, and its claims arose from the same allegedly misleading statements made by cor-poration, and shared the same legal basis, as those asserted by group of individual shareholders. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I); Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⟲187**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Registered investment advisory firm that owned shares in corporation satisfied adequacy require-ment for appointment as lead plaintiff under PLSRA in action alleging corporation violated fed-eral securities laws by making false and misleading misrepresentations about its valuation and financial statements; although firm had prior relationship with corporation's current chairman, firm's interests were not antagonistic to those of other class mem-bers, firm's proposed class counsel was qualified and capable of carrying out litigation on behalf of the class, and firm displayed a willingness to pur-sue its claims vigorously. Private Securities Litiga-tion Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I); Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⟲187**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak187 k. Stockholders, Investors,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2007 WL 1683348 (S.D.N.Y.)

**(Cite as: --- F.R.D. ----)**

and Depositors. Most Cited Cases

Lead plaintiff's selection to serve as lead counsel in action alleging corporation violated federal securities laws by making false and misleading misrepresentations about its valuation and financial statements possessed requisite experience to represent the interests of the class members, as required for appointment as lead counsel under PSLRA; counsel opened his own firm after working for approximately nine years as an associate at three different law firms, served as lead counsel in two securities class actions, and had experience with the law governing class action settlements. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(a)(3)(B)(v).

**[8] Federal Courts 170B ⟲103**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)1 In General; Venue Laid in Proper Forum
        170Bk103 k. Discretion of Court. Most Cited Cases

Court has broad discretion to determine whether a transfer of venue is warranted. 28 U.S.C.A. § 1404(a).

**[9] Federal Courts 170B ⟲144**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)4 Proceedings and Effect of Change
        170Bk144 k. Presumptions and Burden of Proof. Most Cited Cases

The party moving for a change of venue bears the burden of establishing that transfer is appropriate. 28 U.S.C.A. § 1404(a).

**[10] Federal Courts 170B ⟲101**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)1 In General; Venue Laid in

Proper Forum
        170Bk101 k. In General; Convenience and Interest of Justice. Most Cited Cases

**Federal Courts 170B ⟲104**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)1 In General; Venue Laid in Proper Forum
        170Bk104 k. Matters Considered. Most Cited Cases

**Federal Courts 170B ⟲105**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)1 In General; Venue Laid in Proper Forum
        170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases

When determining whether to transfer venue, courts consider: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. 28 U.S.C.A. § 1404(a).

**[11] Federal Courts 170B ⟲101**

170B Federal Courts
  170BII Venue
    170BII(B) Change of Venue
      170BII(B)1 In General; Venue Laid in Proper Forum
        170Bk101 k. In General; Convenience and Interest of Justice. Most Cited Cases

**Federal Courts 170B ⟲103**

170B Federal Courts
    170BII Venue
       170BII(B) Change of Venue
          170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk103 k. Discretion of Court. Most Cited Cases

No single factor courts consider when determining whether to transfer venue is determinative; the factors must be weighed at the court's discretion. 28 U.S.C.A. § 1404(a).

**[12] Federal Courts 170B ⟜112**

170B Federal Courts
    170BII Venue
       170BII(B) Change of Venue
          170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk106 Determination in Particular Transferable Actions
               170Bk112 k. Securities Regulation and Internal Corporate Affairs. Most Cited Cases

Convenience of witnesses supported transfer of action alleging that corporation violated federal securities laws by making false and misleading misrepresentations about its valuation and financial statements to Northern District of Ohio, notwithstanding that individual plaintiffs were New York residents and corporate plaintiff was headquartered in New York; corporation's principal place of business was located in Ohio, and individual defendants and current and former employees of other companies central to action were located in Ohio. 28 U.S.C.A. § 1404(a).

**[13] Federal Courts 170B ⟜112**

170B Federal Courts
    170BII Venue
       170BII(B) Change of Venue
          170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk106 Determination in Particular Transferable Actions
               170Bk112 k. Securities Regulation and Internal Corporate Affairs. Most Cited Cases

Locus of operative facts weighed heavily in favor of transferring action alleging that corporation violated federal securities laws by making false and misleading misrepresentations about its valuation and financial statements to Northern District of Ohio; principal allegation in the complaint was that corporation overvalued its investment in Ohio based company, and for all but three weeks of the class period corporation was based in Ohio. 28 U.S.C.A. § 1404(a).

**[14] Federal Courts 170B ⟜112**

170B Federal Courts
    170BII Venue
       170BII(B) Change of Venue
          170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk106 Determination in Particular Transferable Actions
               170Bk112 k. Securities Regulation and Internal Corporate Affairs. Most Cited Cases

Availability of process to compel attendance of unwilling witnesses supported transferring action alleging that corporation violated federal securities laws by making false and misleading misrepresentations about its valuation and financial statements to Northern District of Ohio; several important categories of non-party witnesses resided in Ohio, and corporation's current chairman was a potential unwilling witness, who, if called as witness, would not be protected by rule governing scope of the subpoena power of federal courts. 28 U.S.C.A. § 1404(a); Fed.Rules Civ.Proc.Rule 45(c)(3)(A)(ii), 28 U.S.C.A.

**[15] Federal Courts 170B ⟜112**

170B Federal Courts
    170BII Venue
       170BII(B) Change of Venue
          170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk106 Determination in Particular Transferable Actions
               170Bk112 k. Securities Regulation and Internal Corporate Affairs. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Trial efficiency and interests of justice supported transfer of action alleging that corporation violated federal securities laws by making false and misleading misrepresentations about its valuation and financial statements to Northern District of Ohio; action was pending in the Northern District of Ohio involving many of the same parties, and concerning facts related to the key operative facts, as instant action. 28 U.S.C.A. § 1404(a).

Robert I. Harwood, Wechsler Harwood LLP, New York, NY, for Plaintiffs.

### DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

#### A. Procedural History

**\*1** Barbara Strougo ("Strougo") filed suit on November 17, 2006 FN1 under the Securities Exchange Act of 1934 and SEC Rule 10b-5 on behalf of herself and all others who purchased or otherwise acquired shares of Brantley Capital Corporation ("Brantley") between August 14, 2003 and October 24, 2005 (the "Class Period"). The class action Complaint names as defendants Brantley, Robert Pinkas ("Pinkas"), Michael Finn ("Finn"), and Tab Keplinger ("Keplinger"); all three individual defendants were officers and/or directors of Brantley during nearly all of the Class Period.

On January 16, 2007, Strougo, D. Jeffrey Farrone, and Randal Mears (the "Strougo Group") filed a motion, pursuant to the requirements set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), seeking: (1) appointment of the Strougo Group as lead plaintiff for this class action; (2) approval of the Strougo Group's selection of Harwood Feffer LLP ("Harwood Feffer") as lead counsel for the class; and (3) appointment of Harwood Feffer as lead counsel. On January 20, 2007, the Law Office of William C. Rand submitted a motion on behalf of class member Karpus Management, Inc. ("Karpus") seeking appointment of Karpus as lead plaintiff, approval of Karpus's selection of William C. Rand ("Rand") as lead counsel

for the class, and appointment of Rand as lead counsel. The respective plaintiff groups appeared for oral argument on their motions on February 26, 2007.

While the aforementioned motions were pending, this Court granted permission to Defendants Pinkas, Finn, and Keplinger (collectively the "moving Defendants") to file a motion, pursuant to 28 U.S.C. § 1404(a), to transfer venue for this action to the United States District Court for the Northern District of Ohio. Both Karpus and the Strougo Group opposed this motion. FN2 Defendant Brantley has taken no position with respect to the motion to transfer venue.

For the reasons set forth below, Karpus's motion for appointment as lead plaintiff and for approval of its selection of Rand as the lead counsel is GRANTED, while the similar motions filed on behalf of the Strougo Group are DENIED. In addition, Defendants' motion to transfer venue to the United States District Court for the Northern District of Ohio is GRANTED.

#### B. Facts

Both Strougo and Karpus (collectively "Plaintiffs") allege that Defendants violated federal securities laws by making false and misleading misrepresentations about Brantley's valuation and financial statements. Specifically, and among other things, Plaintiffs claim that Brantley, a publicly-traded business development company, overvalued its investment in Flight Options International, Inc. ("Flight Options"), a company headquartered in Cleveland, Ohio. Brantley stated the value of its Flight Options holdings at a peak of $32.5 million on April 1, 2002; on October 24, 2005, Brantley issued a press release indicating its investment in Flight Options appeared to have no value. According to the Complaint, as a result of this overvaluation, Brantley's stock fell from a high of $12.01 during the class period to a per share price of $4.90.

**\*2** The Strougo Group purchased a total of 3,475 shares during the Class Period for a collective sum of $34,372.25, though the largest of the three in-

vestors who comprise the group also sold 2,000 of those shares during the period at a net profit. While these plaintiffs do not specifically state their total economic loss during the class period, it is clear that their loss could not have been more than $34,372.25, and could be calculated to fall below $10,000. Karpus, a registered investment advisory firm, purchased 209,952 shares of Brantley during the class period that it did not sell, and calculated its loss as $1,085,661 during the class period.

From August 1, 1996 until October 5, 2005, Brantley, a Maryland corporation, maintained its principal place of business in either Cleveland or Beachwood, Ohio, both of which are municipalities within the Northern District of Ohio. On October 5, 2005, after Brantley director Phillip Goldstein ("Goldstein") took control of Brantley and assumed the title of Chief Executive Officer and Chairman of the Board, Brantley relocated its headquarters to Purchase, New York, a municipality within the Southern District of New York. All three individual defendants were residents of Ohio during the Class Period and remain so to this day.

## II. Analysis

### A. Appointment of lead plaintiff

The PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff: (aa) will not fairly and adequately protect the interests of the class; or (bb) is

subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

There is no dispute that both potential lead plaintiffs here complied with the necessary procedural requirements of the PSLRA concerning adequate notice and timely motions for appointment as lead plaintiff. Consequently, this Court will focus on the other aspects of the statutory framework in making the lead plaintiff determination.

### i. Largest financial interest

Courts have developed a four-factor test to determine which party has the largest financial interest in the litigation, focusing on: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (i.e. the number of shares retained during the period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *See Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y.2004). A number of courts have found that the loss suffered during the class period is the most important factor in determining who should be the lead plaintiff. *See, e.g., Weiss v. Friedman, Billings, Ramsey Group, Inc.,* No. 05 Civ. 4617(RJH), 2006 WL 197036, *1, 2006 U.S. Dist. LEXIS 3028, *3 (S.D.N.Y. Jan. 25, 2006).

**\*3** [1] By any of the financial metrics outlined above, Karpus is, without question, the party with the largest financial interest in this litigation. As an institution, Karpus's total share purchases and net share purchases during the Class Period were many times greater than those of the Strougo Group, and Karpus as a whole suffered a far greater financial loss on those shares. Counsel for the Strougo Group has argued that Karpus's interest should not be viewed in the aggregate, as the shares under its control were actually held for an undisclosed number of smaller individual investors, none of whom specifically chose to participate in this suit. This Court finds that position wholly unpersuasive; if anything, Karpus's role as an institutional investor with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fiduciary responsibilities makes it particularly well suited to represent the interests of its client investors. *See Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 404 (S.D.N.Y.2004) (rejecting argument that institutional investor that held shares beneficially for its clients could not serve as lead plaintiff, and emphasizing "preference expressed by Congress for having institutional investors as lead plaintiffs"). Accordingly, this Court finds that Karpus is the class member with the largest financial interest in the outcome of this litigation.

### ii. Rule 23 typicality and adequacy requirements

[2][3][4] Although Rule 23 provides that a party must satisfy four requirements to serve as a class representative, only two-typicality and adequacy-must be addressed in the context of deciding a motion to appoint a lead plaintiff. *See, e.g., Fishbury, Ltd. v. Connetics Corp.,* No. 06 Civ. 11496(SWK), 2006 WL 3711566, *3, 2006 U.S. Dist. LEXIS 90696, *7 (S.D.N.Y. Dec. 14, 2006). Typicality exists "where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.,* 214 F.R.D. 117, 121 (S.D.N.Y.2002); *see* Fed.R.Civ.P. 23(a)(3). To meet the Rule 23 requirement that the representative party "fairly and adequately protect the interests of the class," a court must examine: "(1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Sczesny Trust,* 223 F.R.D. at 324; *see* Fed. R Cir. P. 23(a)(4).

[5] Karpus purchased or acquired Brantley securities during the Class Period, and its claims arise from allegedly misleading statements made by Brantley; these claims share the same legal basis as those asserted by the Strougo Group. Thus, Karpus satisfies the typicality requirement of Rule 23(a)(2).

[6] In addition, Karpus meets the adequacy require-

ments of Rule 23(a)(4). The proposed class counsel, Rand, is qualified and capable of carrying out this litigation on behalf of the class-he opened his own firm in 2001 after working for approximately nine years as an associate at three different law firms, has served as lead counsel in two securities class actions, and has experience with the law governing class action settlements. Further, Karpus has displayed a willingness to pursue its claims vigorously, and certainly possesses sufficient interest to do so.

**\*4** Though the Strougo Group argues that Karpus's interests are potentially antagonistic to those of other class members, this Court is not persuaded that the business relationships cited as the basis for this belief would in any way impair Karpus from adequately representing the class. According to the Strougo Group, Karpus has a relationship Goldstein, Brantley's current Chairman-specifically, Karpus and investment funds controlled by Goldstein have acted in concert in proxy solicitations concerning other companies. The Strougo Group asks this Court to infer, based solely on these prior dealings, that Karpus was somehow recruited by Goldstein to ensure that this case is not pursued thoroughly. Karpus acknowledges the prior contacts with Goldstein, but maintains that this relationship has no impact on its ability to represent the interests of the class here. Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration, and the Strougo Group offers nothing more than that here. There is no evidence currently before this Court to suggest that Goldstein had any connection whatsoever to the alleged misrepresentations at the crux of this lawsuit. Goldstein is not named as a defendant, and, Brantley, under Goldstein's direction, filed suit in Ohio state court in February against the former management of Brantley (including all three of the individual defendants here) alleging at least some claims similar to the claims in this class action.[FN3] There is no reason to believe that Karpus is interested in this litigation solely as a means to protect Goldstein-indeed, there is no reason to believe that Goldstein is in need of any such protection. The existence of the past business relationship between Karpus and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-04972-CW    Document 1-15    Filed 09/26/2007    Page 35 of 38

Goldstein outlined here is hardly enough to disqualify Karpus from participation. In sum, this Court concludes that Karpus does not have interests antagonistic to those of other class members, and therefore that Karpus meets the adequacy requirements of Rule 23. Consequently, Karpus has established all of the criteria necessary for the statutory presumption that it is the most adequate plaintiff to represent the class in this matter.

Based upon this analysis, it is clear that the Strougo Group has not set forth information sufficient to show that Karpus will not fairly and adequately protect the interests of the class, nor has it shown that Karpus is subject to any unique defenses. Accordingly, the Strougo Group has failed to rebut the statutory presumption in favor of Karpus acting as lead plaintiff; the motion to appoint Karpus as lead plaintiff is therefore GRANTED, and the motion to appoint the Strougo Group as lead plaintiff is DENIED.

### B. Approval and appointment of lead counsel

[7] The lead plaintiff is empowered under the PSLRA to select and retain counsel to represent the class members, subject to the approval of the court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This Court finds that Rand, Karpus's selection to serve as lead counsel, possesses the requisite experience to represent the interests of the class members. Accordingly, this Court approves the selection of Rand as lead counsel and hereby appoints Rand to serve as lead class counsel in this action.

### C. Venue transfer

*5 [8] This Court has broad discretion to determine whether a transfer of venue is warranted pursuant to 28 U.S.C. § 1404(a). *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir.2006). According to that statute, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As a threshold matter, none of the parties argue that this lawsuit could not have been brought in the Northern District of

Ohio; thus, this Court has the statutory discretion to transfer the case to that district if it believes such transfer is warranted, as the Northern District of Ohio is a proper venue for this action.

[9][10][11] The party moving for a change of venue bears the burden of establishing that transfer is appropriate. *See Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 56 (S.D.N.Y.2001). Courts in this Circuit consider nine factors when determining whether to transfer venue, including: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *See, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. LaFarge N. Am., Inc.,* 474 F.Supp.2d 474 (S.D.N.Y.2007). No single factor is determinative-the factors must be weighed at the Court's discretion. *See, e.g., Citigroup, Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

### i. Convenience of witnesses

[12] Convenience of party and non-party witnesses is an important factor in the venue transfer analysis; indeed, certain courts in this district have called it "probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 657 (S.D.N.Y.1998). Here, it appears that more of the potential witnesses in this action are located in Ohio than are located in New York.

All three moving Defendants are Ohio residents, and current and former employees of other companies central to this action-including Flight Options and Brantley Capital Management LLC, Brantley's Cleveland-based investment adviser-are based in Ohio as well.[FN4] Meanwhile, Strougo is a New York resident and Karpus is headquartered in Pitts-

ford, New York, which makes the Southern District of New York far more convenient for both Plaintiffs. While Goldstein resides in New York, Plaintiffs do not point to any relevant non-party witnesses in the New York area. Indeed, the only potential New York-area witnesses mentioned by Plaintiffs are either parties or individuals under the direct control of parties, whereas the moving Defendants point to a wide variety of potentially significant non-party witnesses in Ohio, even though they do not identify these individuals with specificity. On balance, this factor tends to support the transfer of this case to the Northern District of Ohio.

### ii. Location of relevant documents, ease of access to sources of proof

*6 Given that Brantley is now headquartered within the Southern District of New York, it is likely that relevant documents of the corporation that will constitute a substantial portion of the discovery material in this matter will in fact be found here. It is also undisputed, however, that Brantley will be required to produce many of those same documents in Ohio as part of its own lawsuit that is now pending in federal court there. Indeed, Brantley has taken no position with respect to whether the hypothetical burden of transporting documents to Ohio would be significant, and Plaintiffs do not suggest that they themselves would face any hardship with respect to any relevant documents they might have in their possession. Consequently, while this factor nominally favors venue in New York, Brantley's Ohio lawsuit, combined with its silence as to any potential inconvenience it might face leads this Court to view this factor as neutral.

### iii. Convenience of the parties

As noted above, all three individual defendants are Ohio residents, while Strougo is a New York resident and Karpus is based in New York State. Brantley was headquartered in Ohio for all but three weeks of the Class Period, but is currently located within the Southern District of New York. By choosing to file suit in state court in Ohio based on

similar facts in February, however, Brantley signaled to this Court that it does not necessarily view Ohio as an inconvenient forum. This Court also takes note of the fact that Brantley's state court action has been removed to federal court, and as a result, Brantley is itself now a plaintiff in the Northern District of Ohio. It is clear that New York would be a more convenient forum for Plaintiffs and Ohio generally would be more convenient for defendants, particularly because this Court is not convinced that the Northern District of Ohio is inconvenient for Brantley. This factor does not tilt the balance in favor of either venue.

### iv. Locus of the operative facts

[13] Various courts in this district have held that the location of operative events is a primary factor in determining a motion to transfer venue, *see, e.g., ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 279 (S.D.N.Y.2000). One of the principal allegations in the complaint filed by the Strougo Group is that Brantley overvalued its investment in Flight Options. That valuation decision and the statements at issue here were made while Brantley was based on Ohio and were made by, or with the knowledge of, officers of Brantley who resided in Ohio both then and now. Further, Flight Options itself was based in Cleveland, which means that every component of this central aspect of the factual scenario in the case involved parties and non-parties operating primarily in Ohio. It is also important to note that for all but three weeks the Class Period defined by Plaintiffs here, Brantley was based in Ohio, meaning that any allegations concerning decisions or statements made by Brantley or the individual defendants during that period will almost certainly be connected to events that took place in Ohio. Without question, the locus of operative facts here weighs heavily in favor of transferring this case to the Northern District of Ohio.

### v. Availability of process to compel attendance of unwilling witnesses

*7 [14] Both parties acknowledge that Federal Rule of Civil Procedure 45 governs the scope of the sub-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

poena power of federal courts to compel the appearance of unwilling witnesses who would be required to travel more than 100 miles from their homes. As described above, however, the moving Defendants have suggested several important categories of non-party witnesses residing in Ohio whose testimony might have to be compelled by subpoena. Such witnesses are far more likely to fall within the subpoena power of the Northern District of Ohio than of the Southern District of New York. Plaintiffs again point to Goldstein as a potential unwilling witness who could not be called in Ohio, but as an officer of Brantley, Goldstein clearly is not protected by the limitations of Fed.R.Civ.P. 45(c)(3)(A)(ii).[FN5] Accordingly, for these reasons and the reasons described as part of the first factor above, this factor militates in favor of transferring the case to the Northern District of Ohio.

### vi. Relative means of the parties

None of the parties argue that either venue would make it impossible for any party to continue this action, making this factor neutral in determining the appropriate venue.

### vii. A forum's familiarity with the governing law

This lawsuit arises under federal securities law; the Southern District of New York and the Northern District of Ohio are equally capable of applying the relevant federal laws in this action. Thus, this factor is neutral in the venue analysis.

### viii. Weight accorded a plaintiff's choice of forum

In general, the Second Circuit has held that "courts should give deference to a plaintiff's choice of forum," *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 70 (2d Cir.2001), but the importance of a plaintiff's choice of forum is diminished when "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F.Supp.2d 370, 376 (S.D.N.Y.2006).

As discussed above, the locus of operative facts of

this action is, without question, the Northern District of Ohio-while venue is certainly appropriate in this District, it is clear that the facts of this case have little material connection to New York. Thus, while this factor obviously favors venue in the Southern District of New York, it alone is not enough to overcome the myriad reasons described here in support of transfer to Ohio.

### ix. Trial efficiency/interests of justice/totality of the circumstances

[15] Finally, as the moving Defendants repeatedly emphasize in their papers and as has been described above, there is an action pending in the Northern District of Ohio involving many of these same parties and concerning facts related to the key operative facts of this suit. From a standpoint of judicial economy and efficiency, it makes sense for these actions to proceed before the same court. *See Fuji Photo Film Co.*, 415 F.Supp.2d at 376 ("it is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer"). While economy and efficiency alone might not be a sufficient basis to transfer this matter to the Northern District of Ohio, there are, as described herein, many reasons why transferring venue to the Northern District of Ohio is warranted.

*\*8* In view of these factors and the arguments made by the parties, this case is hereby transferred to the Northern District of Ohio for all further proceedings for the convenience of parties and witnesses and in the interest of justice. Defendants' motion to transfer venue is GRANTED.

### III. Conclusion

For the reasons discussed above, it is hereby ordered that:

1. Plaintiff Brantley Shareholder Group's motion (docket number 6) for appointment of the Strougo Group as lead plaintiff, for approval of the Strougo Group's selection of Harwood Feffer LLP as lead counsel, and for appointment of Harwood Feffer as lead counsel is DENIED.

2. Plaintiff Karpus Management, Inc.'s motion (docket number 13) for appointment of Karpus as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----    Page 11
--- F.R.D. ----, 2007 WL 1683348 (S.D.N.Y.)
**(Cite as: --- F.R.D. ----)**

lead plaintiff, for approval of Karpus's selection of William C. Rand as lead counsel, and for appointment of Rand as lead counsel is GRANTED.

3. Defendants' motion (docket number 33) to transfer venue to the United States District Court for the Northern District of Ohio is GRANTED.

4. This case is TRANSFERRED to the United States District Court for the Northern District of Ohio for all further proceedings.

The Clerk of the Court of the Southern District of New York is directed to close this case.

IT IS SO ORDERED.

> FN1. This matter was reassigned to this Court from Judge Laura Taylor Swain on January 4, 2007. Strougo previously filed a shareholder derivative suit in the Southern District of New York based upon a similar set of operative facts, and that matter had been assigned to this Court. Strougo voluntarily dismissed the derivative action on August 10, 2006. *See Strougo v. Pinkas, et al.,* 05 Civ. 10732 (SDNY) (Robinson, J.).

> FN2. Karpus argues, for various reasons, that the motion to transfer venue was premature, largely because the parties stipulated previously that the lead plaintiff, once designated, would have 30 days from the date of designation to file an amended complaint or opt to continue with the current pleading as the operative complaint in this matter. That stipulation, however, does not even impliedly address a potential motion to transfer venue, nor could it possibly be construed so as to limit this Court's authority to decide such a motion. Here, this Court determined that the best course of action was to decide all outstanding motions with this single Decision and Order.

> FN3. Defendants in that case removed the matter to federal court, and the action is now pending in the United States District Court for the Northern District of Ohio. *See Brantley Capital Corp. v. Robert P.*

> *Pinkas, et al.,* 07-CV-00645-JG (N.D.Ohio) (Gwin, J.).

> FN4. Neither Plaintiffs nor moving Defendants provide specific information about individual non-party witnesses who would provide relevant testimony; defendants have at least proffered several categories of witnesses from various entities who might have important information to provide, and it is noteworthy that all are closely affiliated with Ohio.

> FN5. Plaintiffs vaguely assert that other Brantley employees may be potential witnesses in this matter, but they do not describe who those witnesses might be or what information they might provide. Further, because they would be under the control of a party, their attendance would be easier to compel without a subpoena.

S.D.N.Y.,2007.
Strougo v. Brantley Capital Corp.
--- F.R.D. ----, 2007 WL 1683348 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.