HELLER EHRMAN LLP
Michael L. Charlson (MC-2378) (Cal. Bar 122125)
Kevin A. Burke (KB-0580)
7 Times Square
New York, New York 10036
Phone: (212) 832-8300
Fax: (212) 763-7600

*Attorneys for defendants Threshold Pharmaceuticals, Inc., Harold E. Selick, and Janet I. Swearson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY TWINDE, On Behalf of Himself and All Others Similarly Situated,<br><br>                          Plaintiff,<br>     v.<br><br>THRESHOLD PHARMACEUTICALS, INC., HAROLD "BARRY" E. SELICK and JANET I. SWEARSON,<br><br>                          Defendants. | Civil Action No.: 07 CV 6227 JSR<br>Consolidated with 07 CV 6490 JSR<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) |
| RAYNOLD L. GILBERT, Individually and On Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br>     v.<br><br>THRESHOLD PHARMACEUTICALS, INC., HAROLD "BARRY" E. SELICK and JANET I. SWEARSON,<br><br>                          Defendants. | |

## TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND FACTS .................................................................................... 2

III. ARGUMENT ....................................................................................................... 5

    A. The Legal Standard Applicable To A Motion to Transfer
       Venue Pursuant to 28 U.S.C. § 1404(a) ................................................... 5

    B. This Action "Might Have Been Brought" In The Northern
       District Of California. ............................................................................... 6

    C. The Nine-Factor Analysis Weighs Heavily In Favor Of
       Transferring This Case To The Northern District Of
       California. ................................................................................................. 7

        1. The Convenience Of Witnesses. ................................................... 7

        2. The Convenience Of The Parties. ................................................. 8

        3. Location Of Relevant Documents And The Relative
           Ease Of Access To Sources Of Proof. .......................................... 8

        4. Locus Of Operative Facts. ............................................................ 9

        5. Availability Of Process To Compel The Attendance Of
           Unwilling Witnesses. .................................................................. 10

        6. Relative Means Of The Parties. .................................................. 11

        7. Forum's Familiarity With The Governing Law. ......................... 11

        8. Weight Accorded The Plaintiff's Choice Of Forum. .................. 12

        9. Trial Efficiency And The Interest Of Justice, Based On
           The Totality Of The Circumstances. .......................................... 12

IV. CONCLUSION .................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page No.**

**Cases**

*Albert Fadem Trust v. Duke Energy Corp.,*
   214 F.Supp.2d 341, 343 (S.D.N.Y. 2002) ................................................................................6

*Berman v. Informix Corp.,*
   30 F.Supp.2d 653, 657, 659 (S.D.N.Y. 1998) ...............................................................7, 11, 12

*Cargill Inc. v. Prudential Ins. Co. of Am.,*
   920 F.Supp. 144, 148 (D.Colo. 1996) ....................................................................................11

*D.H. Blair & Co., Inc. v. Gottdiener,*
   462 F.3d 95, 106-107 (2d Cir. 2006) ....................................................................................5, 6

*Eichenholtz v. Brennan,*
   677 F.Supp. 198, 201 (S.D.N.Y. 1998) ..................................................................................12

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo,*
   2007 WL 2068107 (S.D.N.Y. July 20, 2007) *2-5 ..........................................................passim

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,*
   415 F.Supp.2d 370, 373, 376 (S.D.N.Y. 2006) ...................................................................6, 12

*In re AtheroGenics Sec. Litig.,*
   2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) * 3 .....................................................................12

*In re Collins & Aikman Corp. Sec. Litig.,*
   438 F.Supp.2d. 392, 396-398 (S.D.N.Y. 2006) .............................................................8, 9, 11

*In re Connetics Sec. Litig.,*
   2007 WL 1522614 (S.D.N.Y. May 23, 2007) *1, 3-4, 10 ...............................1, 6, 7, 9, 12

*In re Cuyahoga Equip. Corp.,*
   980 F.2d 110, 117 (2d Cir. 1992) .............................................................................................5

*In re Nematron Corp. Sec. Litig.,*
   30 F.Supp.2d 397, 400, 402, 404 (S.D.N.Y. 1998) .........................................................6, 7, 8

*Smart v. Goord,*
   21 F.Supp.2d 309, 316 (S.D.N.Y. 1998) ..................................................................................9

*Strougo v. Brantley Capital Corp.,*
   2007 WL 1683348 (S.D.N.Y. June 3, 2007) * 7 .....................................................................10

*ZPC 2000, Inc. v. The SCA Group, Inc.*,
    86 F.Supp.2d 274, 278-79 (S.D.N.Y. 2000) ................................................................. 6, 9

**Statutes**

15 U.S.C. § 78aa ............................................................................................................... 6

15 U.S.C. §77v ................................................................................................................. 6

28 U.S.C. § 1404(a) ................................................................................................... passim

28 U.S.C. § 84(a) .............................................................................................................. 4

I.      INTRODUCTION

Threshold Pharmaceuticals, Inc. ("Threshold" or the "Company") is a biotechnology company located in Redwood City, California, about 30 miles south of San Francisco.  At all relevant times, it has had only one office, in Northern California, where all of its employees work.  It was from its California offices that the Company prepared and issued the press releases, registration statements, propectuses, and investor conference calls that Plaintiffs now allege were misleading, and it was also from those offices that Threshold oversaw the clinical trials of its development program for Lonidamine (TH-070) the termination of which, plaintiffs allege, caused the Company's stock price to decline dramatically.[1]

Despite these facts, and the absence of any substantial linkage between this dispute and New York, Plaintiffs chose to file these consolidated actions across the country, in a forum that is obviously inconvenient for Defendants.  And while Plaintiffs' motivation for doing so is not clear, what is clear is that such tactical filing does not prevent this case from being litigated in the most fair, logical, and economical venue available.  Indeed, two courts in this District have, within the last few months, reached just that conclusion in cases virtually identical to this one, *i.e.* securities claims against San Francisco Bay Area biotechnology companies relating to drug development and FDA approval.  *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo,* 2007 WL 2068107 (S.D.N.Y. July 20, 2007); *In re Connetics Sec. Litig.,* 2007 WL 1522614 (S.D.N.Y. May 23, 2007).

Courts in the Second Circuit exercise their discretion over requests for Section 1404(a)[2] transfers according to a nine-factor analysis designed to identify the most fair, economical, and logical forum for each case.  Among the key factors considered are the location of important

---

[1] Plaintiffs allege generally that the Company and its management knew, from at least the time of Threshold's initial public offering of common stock in February 2005, that the adverse patient reactions that led to the termination of the TH-070 clinical trials would occur and that they concealed this.  While not at issue in this motion, Defendants deny these allegations.

[2] 28 U.S.C. § 1404(a).

1

witnesses and the parties' ability to bring those witnesses to trial. Here, these factors strongly support a transfer to the Northern District of California because many of the individuals closely involved with the terminated development program, including the Company's then-Chief Medical Officer and the program's Project Leader, are now *former* employees of Threshold who still reside in the San Francisco Bay Area. Indeed, given that the Company reduced its workforce by about 35% following the termination of the TH-070 program, this is a case in which an unusually large number of the most important witnesses are former employees who the Company does not control and who cannot be compelled to attend trial in the Southern District of New York (but are, of course, within the trial subpoena power of the Northern District of California).

As demonstrated below and by the accompanying declarations of the individual defendants, Threshold's Vice President of Finance, and the Company's Associate Director of Human Resources, application of the nine factors in this case shows decisively that the Northern District of California is the most appropriate forum. As a result, Defendants respectfully request that the Court order this case and any related actions against Defendants transferred to the Northern District of California.

**II.    BACKGROUND FACTS**

Threshold is a small biotechnology company based in Redwood City, California. It focuses on the discovery and development of drugs based on Metabolic Targeting, an approach that targets fundamental differences in metabolism between normal and certain diseased cells. Some of the Company's product candidates are designed to utilize Metabolic Targeting through the potential targeting of the increased uptake of glucose in cancer cells relative to most normal cells. The goal of these products is to target tumor cells selectively in order to create drugs that are more efficacious and less toxic to healthy tissues than conventional drugs. The Company's stock has been listed for trading on the NASDAQ market since February 2, 2005.

In May 2006, Threshold announced that the U.S. Food And Drug Administration

("FDA") had placed a partial clinical hold on its Lonidamine (TH-070) development program, and in July 2006, the Company announced that it was terminating the program altogether. *Twinde* Compl. ¶¶ 4, 8; *Gilbert* Compl. ¶¶ 4-5.³ Purportedly in response to these two announcements, the market reacted adversely, and the market price of Threshold's stock declined from approximately $13.90 to $1.55. *Twinde* Compl. ¶¶ 7-8; *Gilbert* Compl. ¶¶ 4-5. Individual defendants Harold E. Selick and Janet I. Swearson were the Company's Chief Executive Officer and Chief Financial Officer, respectively, at the time. Selick Dec. ¶ 1; Swearson Dec. ¶ 1.⁴

On behalf of a nationwide class of shareholders, Plaintiffs allege that from February 4, 2005 to July 14, 2006, the Defendants intentionally made misleading statements about the progress of TH-070 and the prospects for its approval by the FDA. The Complaint identifies 11 supposedly misleading public statements:

- Eight press releases, dated May 19, 2005, June 27, 2005, July 28, 2005, August 8, 2005, October 12, 2005, March 1, 2006, May 10, 2006, and May 11, 2006 (*Twinde* Compl. ¶¶ 31-35, 37-42; *Gilbert* Compl. ¶¶ 20-24, 26-27, 29);

- The registration statement and prospectus for the Company's IPO in February 2005 and a follow-on securities offering in October 2005 (*Twinde* Compl. ¶¶ 30, 36; *Gilbert* Compl. ¶¶ 19, 25);

- An investor conference call following the Company's May 11, 2006 announcement that the FDA had placed a partial clinical hold on the TH-070 program (*Twinde* Compl. ¶¶ 43-45; *Gilbert* Compl. ¶ 30).

Plaintiffs generally allege that each of these statements was false when made, that

---

³ "*Twinde* Compl." refers to the complaint filed July 5, 2007 in *Twinde v. Threshold Pharm., et al.* (case no. 07 CV 6227) and "*Gilbert* Compl." refers to the complaint filed July 10, 2007 in *Gilbert v. Threshold Pharm., et al.* (case no. 07 CV 6490). By its order of August 13, 2007, the Court consolidated these two cases.

⁴ "Selick Dec." and "Swearson Dec." refer to the declarations of individual defendants Harold E. Selick and Janet I. Swearson, respectively, both of which were filed concurrently with this motion.

Defendants had scienter with respect to that falsity, and that Plaintiffs were damaged as a result. *Twinde* Compl. ¶¶ 9-10, 14, 19-21, 48-49; *Gilbert* Compl. ¶¶ 6-7, 12, 28, 41-47.

Defendants believe the Complaint is legally insufficient and deny the allegations of any wrongdoing. However, the relevant point for purposes of this motion is that virtually everything about this case revolves around the San Francisco Bay Area.

Today and throughout the alleged class period, Threshold has had only one office, its headquarters near San Francisco, California. Davis Dec. ¶¶ 2-3.[5] This headquarters, which in December 2004 moved from the city of South San Francisco to Redwood City, has at all times been in San Mateo County, which is within the Northern District of California. *Id.;* 28 U.S.C. § 84(a). All of the Company's employees work in Redwood City, and all of Threshold's directors are located in the San Francisco Bay Area, except for one located in Arkansas. *Id.* at ¶¶ 4-5.

The registration statements and prospectuses for the Company's initial public offering in February 2005 and follow-on offering in October 2005 were prepared at the Company's offices in the San Francisco Bay Area by employees located there. Davis Dec. ¶¶ 7-8. In addition, many of the underwriters involved in the offerings were located in the San Francisco Bay Area. *Id.* at ¶¶ 9-10.

The Company's press releases between May 2005 and May 2006, which constitute the majority of the statements alleged to be misleading, were prepared in the Company's Redwood City offices. Davis Dec. ¶¶ 11-12. Threshold's management also prepared for and conducted investor conference calls from the Company's Redwood City offices including the May 11, 2006 investor conference call challenged in the Complaint. *Id.* at ¶¶ 13-14.

In the months following the termination of the TH-070 program, Threshold reduced its staff by approximately 35%. Reyes Dec. ¶ 3.[6] Among the employees who have left Threshold

---

[5] "Davis Dec." refers to the Declaration of Cathleen P. Davis, Threshold's Vice President of Finance, filed concurrently with this motion.

[6] "Reyes Dec." refers to the Declaration of Jeannine Reyes, Threshold's Associate Director of Human Resources, filed concurrently with this motion.

4

since termination of the TH-070 program are the Company's former Chief Financial Officer, the Chief Operating Officer and General Counsel, the Chief Medical Officer, the Project Manager for the TH-070 program, the Co-Team Leader for the TH-070 program, the Vice President of Clinical Affairs, the Clinical Program Manager, the Director of Pharmacovigilance/Safety, the Senior Director Clinical, Urology, and the Senior Scientist, Process Development. *Id.* at ¶ 4. All but one of these individuals still resides in the San Francisco Bay Area and none live in or near the Southern District of New York. *Id.*

Individual defendants Harold E. Selick, the Company's current Chief Executive Officer, and Janet I. Swearson, the former Chief Financial Officer, live and work in the San Francisco Bay Area. Selick Dec. ¶ 2; Swearson Dec. ¶ 2. All Defendants assert that it would burdensome for them to defend this action in the Southern District of New York. Davis Dec. ¶ 17; Selick Dec. ¶ 4; Swearson Dec. ¶ 4.

### III.    ARGUMENT

#### A.    The Legal Standard Applicable To A Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

A district court is empowered to transfer a civil action "to any other district or division where it might have been brought" "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2005). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006) citing *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992). In exercising their discretion, district courts routinely weigh nine factors: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the

5

circumstances. *See, e.g., Albert Fadem Trust v. Duke Energy Corp.,* 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002); *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,* 415 F.Supp.2d 370, 373 (S.D.N.Y. 2006).[7]  A party moving for a Section 1404(a) transfer must make a clear and convincing showing that transfer is warranted. *In re Nematron Corp. Sec. Litig.,* 30 F.Supp.2d 397, 400 (S.D.N.Y. 1998).

Judges in the Southern District of New York have recently had occasion to decide Section 1404(a) motions in two securities cases against biotechnology companies headquartered in the San Francisco Bay Area involving allegations about the defendants' development of drug products and their statements to investors about those drug products. *In re Connetics,* 2007 WL 1522614 (S.D.N.Y. May 23, 2007); *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.,* 2007 WL 2068107 (S.D.N.Y. July 20, 2007).  Both courts weighed the nine factors and concluded that the cases belong in the Northern District of California, principally because that was the location of the relevant conduct and of the important witnesses.  The same is true here, and as the analysis below demonstrates, each of the nine factors weighs in favor of transfer or is neutral.

### B. This Action "Might Have Been Brought" In The Northern District Of California.

The first question a court must answer in deciding a motion under 28 U.S.C. § 1404(a) is whether the action "might have been brought," (that is, whether venue is proper), in the proposed transferee court. *Fuji Photo Film Co., Ltd.,* 415 F.Supp.2d at 373.  Under the Securities Act and the Exchange Act, venue lies, among other places, "in the district wherein the defendant is found or is an inhabitant or transacts business…." 15 U.S.C. §§ 77v, 78aa.  As noted above, Threshold, Mr. Selick, and Ms. Swearson all reside in the San Francisco Bay Area, and Threshold transacts

---

[7] Note that some cases only list seven of these nine factors. *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d at 106-07; *ZPC 2000, Inc. v. The SCA Group, Inc.,* 86 F.Supp.2d 274, 278-79 (S.D.N.Y. 2000).  However, the enumerated factors are not exclusive and serve simply as "guideposts" for a court's analysis. *Albert Fadem Trust,* 214 F.Supp.2d at 343.

business in that district. Davis Dec. ¶¶ 2-4; Selick Dec. ¶ 2; Swearson Dec. ¶ 2. Consequently, venue is proper in the Northern District of California, and the action "might have been brought" in that district as required by 28 U.S.C. § 1404(a).

### C. The Nine-Factor Analysis Weighs Heavily In Favor Of Transferring This Case To The Northern District Of California.

#### 1. The Convenience Of Witnesses.

The convenience of party and non-party witnesses is one of the most important factors in determining whether a transfer of venue is warranted. *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998) (citations omitted). In considering this factor, "it is the nature of the testimony and not the number of prospective witnesses on each side that is important." *In re Nematron,* 30 F.Supp.2d at 402. And where the action is premised on allegedly false statements to the investing public regarding FDA approval of a new drug, the most important witnesses are the individuals involved in creating the statements and communicating with the FDA and the individual defendants. *In re Connetics,* 2007 WL 1522614 at *1, 3; *Nuvelo,* 2007 WL 2068107 at *4. As a result, if these witnesses are located in the Northern District of California, this factor weighs heavily in favor of a transfer to that district, even if some tangential witnesses reside in the district where the action was filed. *Nuvelo,* 2007 WL 2068107 at * 2, 4.

Here, as in *In re Connetics* and *Nuvelo,* the individuals involved in creating the challenged press releases, registration statements and prospectuses and preparing the Company's investor conference calls are all located in the Northern District of California. Davis Dec. ¶¶ 7-8, 11-14. The same is true of the individuals who oversaw the Company's clinical trials of TH-070. *Id.* at ¶¶ 15-16. As noted, these witnesses include persons central to the defense of these actions. For the most part, the persons most closely involved with the TH-070 program are now former Threshold employees who currently reside in the San Francisco Bay Area but who Threshold does not control and who are likely not subject to subpoena in this district. Reyes Dec. ¶ 4; *see also infra* part III(C)(5). As a result, this factor weighs heavily in favor of transfer to the Northern District of California.

## 2.     The Convenience Of The Parties.

Because all three Defendants are residents of the San Francisco Bay Area, it would be far more convenient for them to defend this case in the Northern District of California. Davis Dec. ¶ 17; Selick Dec. ¶ 4; Swearson Dec. ¶ 4. A trial of this matter in New York City would impose a significant burden on all three Defendants and would disrupt Threshold's business. *Id.* Not only would the individual Defendants and the Company's representatives have to relocate for several weeks, but to the extent any of the relevant witnesses agreed to testify, they, too, would need to travel across the country. (As these people are, for the most part, no longer employed by Threshold, these witnesses might be unwilling or unable to do so. As discussed below, many of these witnesses are likely outside this Court's subpoena power.)

By contrast, it is unclear that Plaintiffs would suffer any inconvenience were this action is transferred because Plaintiffs' complaints do not disclose their residences. *See Twinde* Compl. ¶ 14 (alleging only that Mr. Twinde purchased Threshold stock and that he was damaged thereby); *Gilbert* Compl. ¶ 12 (same allegation regarding Mr. Gilbert). Moreover, regardless of their own residences, Plaintiffs would be burdened with the same inconvenience as Defendants with respect to transporting relevant witnesses across the country. As a result, the convenience of the parties weighs in favor of transferring this action to the Northern District of California.

## 3.     Location Of Relevant Documents And The Relative Ease Of Access To Sources Of Proof.

Given the modern document-handling techniques employed in most securities class actions, the physical location of relevant documents is probably less significant to the convenience analysis than it once was. Nevertheless, the fact that the bulk of relevant documents reside in the proposed transferee district does weigh in favor of transfer. *In re Collins & Aikman Corp. Sec. Litig.,* 438 F.Supp.2d. 392, 396 (S.D.N.Y. 2006) ; *In re Nematron,* 30 F.Supp.2d at 404 (noting that while documents could be shipped to New York, doing so created an unnecessary cost). Here, because Threshold and the most significant witnesses are located in the San Francisco Bay Area, most of the relevant documents are also located there. Consequently,

8

this factor, like the convenience of witnesses and parties, weighs in favor of a transfer.

### 4. Locus Of Operative Facts.

A number of courts in the Southern District have noted that one of the most significant factors in deciding a Section 1404(a) motion is the so-called "locus of operative facts." *See e.g., ZPC 2000, Inc.,* 86 F.Supp.2d at 279 ("[t]he location of operative events is a 'primary factor' in determining a motion to transfer venue.") (quoting *Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y. 1998)). In a securities class action premised on false statements to the market, the locus of operative facts is generally the corporate headquarters where those statements were created and disseminated, and where the decisions underlying those statements were made. *In re Collins & Aikman,* 438 F.Supp.2d at 397 (holding that misrepresentations and omissions occur "where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received").

In *Connetics,* the plaintiffs alleged that the defendant pharmaceuticals company committed securities fraud by (1) misrepresenting the safety and likelihood of FDA approval of a development drug which they knew to have caused a high incidence of cancer in laboratory mice and (2) issuing misleading financial statements on the back of a channel-stuffing scheme. *In re Connetics,* 2007 WL 1522614 at * 1. The court determined that the locus of operative facts was the company's headquarters in the Northern District of California because the challenged financial statements, press releases, and SEC filings had been prepared there. *Id.* at * 5; *see also Nuvelo,* 2007 WL 2068107 at * 5 (noting that press releases "occur" in the location from which they are prepared and disseminated).

Much like in *In re Connetics,* Plaintiffs in this case allege that the Defendants made misleading statements regarding the safety and efficacy of TH-070 in registration statements and prospectuses, press releases, and investor conference calls. *Twinde* Compl. ¶¶ 30-48 ; *Gilbert* Compl. ¶¶ 19-33. These statements were prepared in and made from Threshold's San Francisco Bay Area offices. Davis Dec. ¶¶ 7-8, 11-14. Moreover, the Company oversaw the TH-070

program from those offices. *Id.* at 15-16. As a result, the Northern District of California is the locus of operative facts.

Threshold conducted clinical trials for TH-070 in 17 U.S. states and six foreign countries (Davis Dec. ¶ 15), and the *Twinde* Complaint alleges that certain of those trials occurred in New York. *Twinde* Compl. ¶ 13. That fact, however, does not make New York the locus of operative facts. First, Plaintiffs do not (and cannot) allege any particular connection between the New York clinical trial and its claims, and in fact, the only substantive allegations in the Complaint relating to clinical trials pertain to a clinical trial in Bari, Italy. *Twinde* Compl. ¶¶ 3, 23-28. Second, wherever the TH-070 clinical trials were conducted, the monitoring of those trials was overseen from the Company's headquarters in the San Francisco Bay Area. *Id.* at ¶ 16. Consequently, the fact that some clinical trials were conducted outside of the Northern District of California, does not pull the litigation's "center of gravity" out of that district. *Nuvelo,* 2007 WL 2068107 at *3, 5.

### 5. Availability Of Process To Compel The Attendance Of Unwilling Witnesses.

Because the parties' ability to compel witnesses' attendance at trial pursuant to Federal Rule of Civil Procedure 45 is limited, the existence of significant non-party witnesses in the proposed transferee district weighs in favor of transfer. *Strougo v. Brantley Capital Corp.,* 2007 WL 1683348 (S.D.N.Y. June 3, 2007) * 7. As noted, most of the people closely involved with the TH-070 program that is the focus of this case are now former employees of Threshold – people who have left the Company but continue to reside in the San Francisco Bay Area. Reyes Dec. ¶ 4. This includes the Company's Chief Operating Officer and General Counsel, its Chief Medical Officer, the Project Manager for the TH-070 program, the Co-Team Leader for the TH-070 program, the Vice President of Clinical Affairs, the Clinical Program Manager, the Director of Pharmacovigilance/Safety, the Senior Director Clinical, Urology, and the Senior Scientist, Process Development. *Id.* Given that Threshold reduced its workforce by 35% in the months following termination of the TH-070 program, there is a high likelihood that many of the

important witnesses will be former employees who cannot be compelled to attend a trial outside the Northern District of California. *Id.* at ¶ 3.

The *Twinde* Complaint alleges that the underwriters of Threshold's IPO and follow-on offering are "located" in the Southern District of New York (*Twinde* Compl. ¶ 13), and Mr. Twinde's counsel will likely argue, as it did in *Nuvelo,* that there are likely to be third-party underwriter witnesses in New York who could not be compelled to attend trial in the Northern District of California. However, any underwriter witnesses – if they are even relevant – would clearly be less important to this action than the management and clinical employees of Threshold. And even if that were not the case, as in *Nuvelo,* many of the underwriter representatives are located in offices in the San Francisco Bay Area. Davis Dec. ¶¶ 9-10. Given that fact, "it is doubtful [p]laintiffs will experience any prejudice" from a transfer to the Northern District of California. *Nuvelo,* 2007 WL 2068107 at * 4.

### 6. Relative Means Of The Parties.

Where there is a substantial disparity between the means of the parties, this factor may be considered. *Berman,* 30 F.Supp.2d at 659. However, in this case, there is no indication that the parties' means weigh in favor of either the Southern District of New York or the Northern District of California. Mr. Twinde's counsel, for example, has several offices in California, including one in San Francisco, and Mr. Gilbert's counsel claims to specialize in litigating class action cases "throughout the United States." *See* www.lerachlaw.com/lcsr-cgi-bin/mil?templ=firm/firm-info.html (Mr. Twinde's counsel's website); www.sbclasslaw.com/about_us.cfm (Mr. Gilbert's counsel's website).

### 7. Forum's Familiarity With The Governing Law.

Because the claims in this action arise solely under federal law, with which all United States District Courts are presumed equally familiar, this factor does not weigh in favor of or against any particular district. *In re Collins & Aikman,* 438 F.Supp.2d at 398; *see also Cargill Inc. v. Prudential Ins. Co. of Am.,* 920 F.Supp. 144, 148 (D.Colo. 1996) (rejecting contention that

11

proposed transferee court possessed greater familiarity with ERISA preemption).

### 8. Weight Accorded The Plaintiff's Choice Of Forum.

Although in the usual case, the plaintiff's choice of forum is given some weight in the court's exercise of discretion to transfer under Section 1404(a), it is not a significant factor if (1) the facts upon which the action is premised bear little relationship to the chosen forum, (2) the plaintiff purports to represent a nationwide class, or (3) the plaintiff is not a resident of the chosen forum. *Fuji Photo Film Co, Ltd.,* 415 F.Supp.2d at 376 (no connection with the chosen forum); *Berman,* 30 F.Supp.2d at 659 (class action); *Eichenholtz v. Brennan,* 677 F.Supp. 198, 201 (S.D.N.Y. 1998) (non-resident). "[W]hile it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions." *In re AtheroGenics Sec. Litig.,* 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) * 3 (transferring failed-drug case against Georgia-based pharmaceutical company to the Northern District of Georgia).

All three of these considerations are present here, and as a result, Plaintiffs' choice of forum is not entitled to deference. First, the facts upon which this action is based occurred in the San Francisco Bay Area, not in New York. Second, Plaintiffs purport to represent a nationwide class of Threshold shareholders. *Twinde* Compl. ¶ 1; *Gilbert* Complaint ¶ 1. Finally, Plaintiffs do not allege that they are residents of New York. *See Twinde* Compl. ¶ 14 (alleging only that Mr. Twinde purchased Threshold stock and that he was damaged thereby); *Gilbert* Compl. ¶ 12 (same allegation regarding Mr. Gilbert).

### 9. Trial Efficiency And The Interest Of Justice, Based On The Totality Of The Circumstances.

Judge Kram noted in *In re Connetics* that while there is no per se rule favoring the transfer of securities class actions to the district of the issuer's headquarters, many courts have in fact reached that conclusion. *In re Connetics,* 2007 WL 1522614 at *10. This is no coincidence; it reflects the reality that most securities class actions focus on the conduct of the corporate defendant's top management, and that conduct generally takes place at the corporation's headquarters. And this is certainly true of the instant case. As the site of the relevant events and

virtually all of the documents and most significant witnesses, the Northern District of California is the logical forum for this case, and a transfer to that district would serve the goals of convenience, economy of resources, and, most importantly justice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court order this case transferred from the Southern District of New York to the Northern District of California pursuant to 28 U.S.C. §1404(a).

DATED: August 16, 2007                Respectfully submitted,

HELLER EHRMAN LLP

By  /s/ Kevin A. Burke

Michael L. Charlson (MC-2378) (Cal. Bar 122125)
Kevin A. Burke (KB-0580)
Times Square Tower
7 Times Square
New York, New York 10036
Phone: (212) 832-8300
Fax: (212) 763-7600

*Attorneys for defendants Threshold Pharmaceuticals, Inc., Harold E. Selick, and Janet I. Swearson*

Of Counsel:

Laurence A. Weiss (Cal. Bar 164638)
Alexander M.R. Lyon (Cal. Bar 211274)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
Phone: (650) 324-7000
Fax: (650) 324-0638