UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
JERRY TWINDE, On Behalf of Himself and : Civil Action No. 1:07-cv-06227-JSR
All Others Similarly Situated,   : **(Consolidated)**
  :
            Plaintiff, : CLASS ACTION
  :
     vs. : MEMORANDUM OF LAW IN
  : OPPOSITION TO DEFENDANTS'
THRESHOLD PHARMACEUTICALS, INC., : MOTION TO TRANSFER VENUE TO THE
et al., : UNITED STATES DISTRICT COURT FOR
  : THE NORTHERN DISTRICT OF
            Defendants. : CALIFORNIA
———————————————————————— x

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT .................................................................................................1

II. STATEMENT OF FACTS .........................................................................................................3

III. ARGUMENT..............................................................................................................................4

    A. Venue Is Proper in This District Under the Federal Securities Laws .......................4

        1. Standard on a Motion to Transfer ................................................................4

            a. Plaintiffs' Choice of Forum ..............................................................5

            b. Convenience of Parties and Witnesses/Availability of Process ..........................................................................................6

            c. Location of Documents and Ease of Access to Sources of Proof..................................................................................................8

            d. Location of Operative Facts..............................................................9

            e. Relative Means of the Parties .........................................................12

            f. Forum's Familiarity with the Governing Law ...............................12

            g. Trial Efficiency and Interests of Justice.........................................13

    B. Defendants Should Not Be Permitted to Forum-Shop............................................13

IV. CONCLUSION.........................................................................................................................13

## TABLE OF AUTHORITIES

Page

**CASES**

*Albert Fadem Trust v. Duke Energy Corp.*,
 214 F. Supp. 2d 341 (S.D.N.Y. 2002)..................................................................4, 5, 6, 8

*Canale v. Manco Power Sports, LLC*,
 No. 06 Civ. 6131 (PKL),
 2007 U.S. Dist. LEXIS 60992 (S.D.N.Y. Aug. 20, 2007)...........................................6, 7, 8

*Cavalo Growers of Cal. v. Generali Belgium*,
 632 F.2d 963 (2d. Cir. 1980).................................................................................8

*DiRienzo v. Philip Servs. Corp.*,
 294 F.3d 21 (2d Cir. 2002)....................................................................................5

*Electrical Workers Pension Fund Local 103, I.B.E.W. v. Nuvelo, Inc.*,
 07 civ. 975 (HB),
 2007 WL 2068107 (S.D.N.Y. July 20, 2007) ..................................................................12

*Factors Etc., Inc. v. Pro Arts, Inc.*,
 579 F.2d 215 (2d Cir. 1978)..................................................................................6

*Funke v. Life Fin. Corp.*,
 No. 99 Civ. 11877 (CBM),
 2003 U.S. Dist. LEXIS 1226 (S.D.N.Y. Jan. 28, 2003) .................................................5, 8

*Gulf Oil Corp. v. Gilbert*,
 330 U.S. 501 (1947)............................................................................................5

*Hirschhorn v. Blanchette*,
 No. 77 Civ. 2942 (RLC),
 1977 U.S. Dist. LEXIS 12977 (S.D.N.Y. Nov. 11, 1977)..................................................4

*Hubbell Inc. v. Pass & Seymour, Inc.*,
 883 F. Supp. 955 (S.D.N.Y. 1995)............................................................................5

*In re Connetics Sec. Litig.*,
 No. 06 Civ. 11496 (SWK),
 2007 WL 1522614 (S.D.N.Y. May 23, 2007) ............................................................7, 12

*In re Geopharma Inc. Sec. Litig.*,
 04 Civ. 9463 (SAS),
 2005 U.S. Dist. LEXIS 8885, at *5 (S.D.N.Y. May 11, 2005).................................. *passim*

**Page**

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005) ........................................................................................ 8

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ...................................................................................................... 13

*Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*,
    No. 05 Civ. 0894 (SAS),
    2005 U.S. Dist. LEXIS 10014 (S.D.N.Y. May 24, 2005) ................................................... 9, 10

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ............................................................................................ 5

*Student Advantage, Inc. v. Collegeclub.com*,
    No. 99 Civ. 8604 (JSR),
    1999 U.S. Dist. LEXIS 18998 (S.D.N.Y. Dec. 3, 1999) ............................................................ 9

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. §1404(a) ........................................................................................................................ 1, 2

Securities Act of 1933 ................................................................................................................. 2, 3, 4

Securities Exchange Act of 1934 ................................................................................................ 2, 4, 7

Plaintiffs Jerry Twinde and Raynold L. Gilbert ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants'[1] motion to transfer venue to the United States District Court for the Northern District of California (the "Northern District of California") under 28 U.S.C. §1404(a).[2] As explained herein, this case is properly before this Court, Defendants' motion to transfer should be denied and the prosecution of this action should not be further delayed.

I.   **PRELIMINARY STATEMENT**

On July 5, 2007, Plaintiff Jerry Twinde filed a putative class action complaint in the Southern District of New York ("SDNY") on behalf of purchasers of Threshold Pharmaceuticals, Inc. ("Threshold" or the "Company") stock during the period between February 4, 2005 and July 14, 2006, inclusive (the "Class Period"), alleging violations of the federal securities laws. Subsequently, one other complaint, with identical claims, was also filed in the SDNY by Raynold L. Gilbert. Significantly, these are the only two securities class actions pending against Defendants based on these allegations and no other securities class action complaints have been filed in any other court.

At a hearing before the Court on August 10, 2007, Defendants' counsel sought leave of the Court to move to transfer the now-consolidated action to the Northern District of California. On August 16, 2007, with the permission of the Court, Defendants filed their motion to transfer these related actions from the SDNY to the Northern District of California, primarily arguing that the case should be transferred to the Northern District of California because the Company and the Individual Defendants are based there, as are "important" witnesses (who are not identified and whose

---

[1] Defendants in this action include Threshold Pharmaceuticals, Inc., Harold "Barry" E. Selick and Janet I. Swearson.

[2] 28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

anticipated testimony is not described) and that this forum is "obviously inconvenient for Defendants." Def. Mem. at 1.[3] The law, however, does not simply provide for automatic transfer under these circumstances. Rather, the burden on Defendants is substantial.

As the complaints allege, there is a very strong basis for proceeding with this case in this Court. Aside from the fact that Plaintiffs have selected this forum to bring their actions, and that they are specifically authorized to do so by section 22 of the Securities Act of 1933 (the "Securities Act") and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), there are other numerous connections that Threshold has to this District. For example, during the Class Period: (i) the underwriters in Threshold's Initial Public Offering ("IPO") and Follow-on Offering (defined below) were located in and conducted underwriting out of this District; (ii) representatives of the Company made multiple presentations to investors in this District at investor conferences; (iii) the Company advised investors to obtain its IPO prospectus and Follow-on Offering prospectus from addresses in New York; (iv) numerous analysts that covered the Company's stock were located in New York; (v) Threshold's stock traded on the NASDAQ National Market which is based in this District; and (vi) several of the Company's Phase II trials of lonidamine (TH-070) – the drug at the heart of this lawsuit – were conducted at different locations in New York.

Accordingly, the SDNY, which is Plaintiffs' choice of forum and the venue which Defendants repeatedly took advantage of during the Class Period, is clearly an appropriate court in which to pursue this action. Defendants' motion to transfer should thus be denied in its entirety.

---

[3] "Def. Mem. at __" refers to pages of the Memorandum of Points and Authorities in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. §1404(a), dated August 16, 2007.

## II.     STATEMENT OF FACTS

The complaint[4] charges Threshold and certain of its officers and directors with violations of the Securities Act and the Exchange Act. Threshold discovers, develops, and commercializes small molecule therapeutics based on "Metabolic Targeting." During the Class Period, the Company's lead product candidate for the treatment of symptomatic benign prostatic hyperplasia ("BPH") was TH-070, a drug which utilized Threshold's patented Metabolic Targeting process.

The complaint alleges that, in preparation for the Company's February 2005 IPO, Defendants conducted a so-called "Phase II" study of TH-070 on 30 men at Bari University in Italy. Based on the purported success achieved in the Bari Phase II study, the Company completed its $37 million IPO in February 2005, conducted additional clinical trials, filed a new drug application with the United States Food & Drug Administration ("FDA") in late 2005, and completed the $65 million Follow-on Offering in October 2005 (the "Follow-on Offering"). However, on May 11, 2006, Defendants were forced to disclose that the FDA had placed the TH-070 program on partial clinical hold as a result of abnormalities observed in liver enzyme levels in six subjects in ongoing clinical trials and had requested that the Company provide additional information related to the drug's acceptable dose and duration of treatment in BPH patients. According to the complaint, while Defendants had known for years of TH-070's propensity to cause liver toxicity, the IPO and Follow-on Offering prospectuses concealed it.

Then, on July 17, 2006, the Company was forced to concede that TH-070 provided no benefit whatsoever in the alleviation of prostate enlargement and that Threshold planned to discontinue development of TH-070 for BPH altogether. The complaint alleges that as a result of the

---

[4] These facts are drawn from the allegations in first-filed complaint, the action captioned *Jerry Twinde v. Threshold Pharms., Inc.*, 07 Civ. 6227 (JSR) (filed in the SDNY on July 5, 2007).

Defendants' false and misleading statements issued during the Class Period, Threshold stock traded as high as $16.52 per share. After the Company's July 17, 2006 announcement, however, Threshold stock fell to $1.55 per share.

## III.  ARGUMENT

### A.  Venue Is Proper in This District Under the Federal Securities Laws

Under Section 27 of the Exchange Act, "venue is proper in any district wherever an alleged violation of the securities laws occurred, or wherever the defendant resides or transacts business." *In re Geopharma Inc. Sec. Litig.*, 04 Civ. 9463 (SAS), 2005 U.S. Dist. LEXIS 8885, at *5 (S.D.N.Y. May 11, 2005) (Scheindlin, J.). Accordingly, Section 27 of the Exchange Act is intended to grant plaintiffs liberal choice in selecting a forum.

In order for Defendants to successfully transfer this action from the SDNY to the Northern District of California, Defendants must establish that the Northern District of California is "***clearly***" the more convenient forum and that a trial there would better serve the interests of justice. *See Hirschhorn v. Blanchette*, No. 77 Civ. 2942 (RLC), 1977 U.S. Dist. LEXIS 12977, at *5 (S.D.N.Y. Nov. 11, 1977) (Carter, J.) (emphasis added). As explained below, Defendants have failed to meet their burden.

#### 1.  Standard on a Motion to Transfer

Motions for transfer lie within the broad discretion of the district court. *See Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) (Rakoff, J.). In deciding whether a case should be transferred to another district, courts consider several factors that serve as "guideposts to the Court's informed exercise of discretion." *Id*. Those factors are as follows: (1) plaintiff's choice of forum; (2) convenience of parties and witnesses/availability of process to compel the attendance of unwilling witnesses; (3) location of documents and ease of access to sources of proof; (4) locus of operative facts; (5) relative means of the parties; (6) forum's

familiarity with the governing law; and (7) trial efficiency and the interest of justice. *Id*. As detailed below, a review of these factors demonstrates that the Defendants have ***not*** met their burden on this motion and the motion to transfer venue should be denied.

### a.     Plaintiffs' Choice of Forum

The United States Supreme Court has made abundantly clear that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum ***should rarely be disturbed***." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added); *see also Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (Sweet, J.). This rule applies as well to a plaintiff's choice of forum in class actions, such as here. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) ("[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum"); *see also Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *5 ("Although less deference is shown to the choice of venue of a class representative than that of an individual plaintiff, that choice should nonetheless be honored unless defendants make a 'convincing showing' that venue should be changed."); *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003 U.S. Dist. LEXIS 1226, at *10 (S.D.N.Y. Jan. 28, 2003) (Baker Motley, J.) ("as long as the choice was for legitimate reasons, it is to be respected").

In *Albert Fadem Trust*, this Court was similarly presented with a securities class action that was filed in the SDNY, even though the Company's headquarters were located in another state. In acknowledging the importance of a plaintiff's choice of forum, this Court stated:

> Because, however, [the Court's] discretion [in considering the factors under §1404] must be exercised at the very outset of the case, when relatively little is known about how the case will develop, ***courts have typically accorded substantial weight to the first factor, plaintiff's choice of forum***, for that very choice reflects one side's assessment of the balance of relevant factors, and ***since the law permits the suit to be brought where plaintiff has chosen to bring it, that choice should not be lightly overridden***. *See, e.g., Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995).

*Albert Fadem Trust*, 214 F. Supp. 2d at 343 (emphasis added).

Accordingly, Plaintiffs should still be accorded proper deference in their choice of venue when representing a class.

### b.   Convenience of Parties and Witnesses/Availability of Process

The convenience of the parties and witnesses also weighs in favor of continuing this case in the SDNY. While Defendants claim that all of the Individual Defendants and key non-party witnesses will come from California, there are numerous other key non-party witnesses – such as: (i) the underwriters of the IPO and the Follow-on Offering; (ii) analysts;[5] (iii) investor conference organizers and attendees; and (iv) hospital employees where the clinical studies took place – all of who are located in this District or in close proximity to it. *See Geopharma,* 2005 U.S. Dist. LEXIS 8885, at *6-*7 (finding this factor to be neutral on a motion to transfer where plaintiff identified non-party witnesses in district where court was pending and neighboring areas). The presence of many non-party witnesses in this District is especially significant because they are the witnesses who may need to be compelled to appear in this action.

Defendants, who are seeking transfer, bear the burden to "'name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum.'" *Canale v. Manco Power Sports, LLC*, No. 06 Civ. 6131 (PKL), 2007 U.S. Dist. LEXIS 60992 at *10 (S.D.N.Y. Aug. 20, 2007) (Leisure, J.); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the

---

[5] There were numerous analysts based in New York who issued research reports about Threshold during the Class Period and who would be highly relevant witnesses during any trial. Attached hereto as Exhibit A is a chart that sets forth a listing of the New York analysts who covered Threshold stock during the Class Period and the dates of their research reports.

transfer on account of the convenience of witnesses under §1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."). Defendants' bare claim here that non-party witnesses will be inconvenienced "is a far cry from the specific and detailed information the Court needs to assess even the number of witnesses in the [Northern District of California], let alone the materiality and nature of those witnesses. Absent any information about the witnesses [Defendants] argue[] will be inconvenienced by venue in this District," this consideration should not influence the Court's determination. *Canale*, 2007 U.S. Dist. LEXIS 60992, at *11.

Defendants also claim that California is more convenient for non-party former employees of the Company, Def. Mem. at 5, 7, although no mention is made of what role, if any, those non-party employees intend to have in this action or who they are.[6] Moreover, such an argument:

> if taken to its logical conclusion, would create a presumption that securities class actions should be brought in the home district of the defendant. This position is at odds with the actual text of section 27, which provides that such suits may be brought either "in the district wherein any act or transaction constituting the violation occurred" or "in the district wherein the defendant is found or is an inhabitant or transacts business." Thus, while convenience of witnesses is an important factor that must be weighed in determining proper venue, ***convenience of defendants' party witnesses cannot operate to eliminate section 27's explicit provision for jurisdiction wherever any violation occurred***.

*See Geopharma*, 2005 U.S. Dist. LEXIS 8885 at *6 (emphasis added).

---

[6] Defendants list the job descriptions of a number of employees who have left the Company since termination of the TH-070 program, Def. Mem. at 4-5, 10, but do not provide the names of these individuals, do not state that these individuals are expected to serve as witnesses, do not submit any declarations by any of these individuals and do not aver that any of these individuals will refuse to appear before this Court if there is a trial and their attendance is required. *Compare In re Connetics Sec. Litig.*, No. 06 Civ. 11496 (SWK), 2007 WL 1522614 (S.D.N.Y. May 23, 2007) (finding this factor weighed in favor of transfer on a motion to transfer where, among other things, defendants specifically identified dozens of potential witnesses and what they would be testifying about and also submitted declarations by several potential non-party witnesses).

- 7 -

Defendants have also not identified any witness who would be unwilling to attend the trial of this action absent the compulsion of a subpoena. *See Albert Fadem Trust*, 214 F. Supp. 2d at 344 ("While defendants contend that there 'may be' witnesses whose attendance in a New York litigation this Court would be unable to compel, they offer this as a mere hypothetical with no evidence in support."). Thus, this factor should be neutral.

### c. Location of Documents and Ease of Access to Sources of Proof

While a significant number of the Company's corporate documents will likely be in California at the Company's headquarters, there will be numerous relevant documents located in New York as well. The hospitals in New York that conducted clinical trials will have the documents related to those trials. Additionally, the underwriters of the IPO and the Follow-on Offering will certainly have documents related to those offerings in their New York City offices. *See* Exhibits B and C (advising investors that copies of the prospectuses for the IPO and Follow-on Offering can be obtained from the listed underwriters' New York City offices). In any event, the "bald assertion" made here by Defendants of the burden they will face with respect to the location of documents should be entitled to little weight. *See Canale*, 2007 U.S. Dist. LEXIS 60992, at *11; *see also Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402, n2 (S.D.N.Y. 2005) (Leisure, J.) ("the location of documents is entitled to little weight unless defendants make a 'detailed showing of the burden it would incur absent transfer'").

Moreover, in this day and age, in which documents are routinely produced electronically in any event, the fact that other relevant documents may be located in California should not weigh in Defendants' favor on this motion to transfer. *See Funke*, 2003 U.S. Dist. LEXIS 1226, at *9, quoting *Cavalo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d. Cir. 1980) (Newman, J., concurring) ("It will often be quicker and less expensive to transfer a witness or a document than

to transfer a lawsuit. Jet travel and satellite communications have significantly altered the meanings of 'non conveniens'").

Defendants' failure to adequately explain their burden in making the documents in California available should weigh this factor against transfer. At the very least, this factor should be considered neutral.

### d. Location of Operative Facts

The location of operative facts in this action includes statements made in the SDNY and actions taken by Defendants in the SDNY. While Defendants argue that the fact that certain clinical trials took place in New York "does not make New York the locus of operative facts," Def. Mem. at 10, such an argument downplays Defendants' conduct in this District during the Class Period. As this Court has previously found, where defendants took advantage of a jurisdiction to commit its alleged wrongdoing, any claim that another jurisdiction is more convenient does not carry defendants' burden to support transfer. *See Student Advantage, Inc. v. Collegeclub.com*, No. 99 Civ. 8604 (JSR), 1999 U.S. Dist. LEXIS 18998, at *11 (S.D.N.Y. Dec. 3, 1999) (Rakoff, J.); *see also Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*, No. 05 Civ. 0894 (SAS), 2005 U.S. Dist. LEXIS 10014, at *14 (S.D.N.Y. May 24, 2005) (Scheindlin, J.) (finding this factor to be neutral on a motion to transfer where plaintiffs alleged that defendants had significant ties to a jurisdiction other than where it was headquartered).

During the Class Period, Defendants sold shares of its stock to the public through an IPO and a Follow-on Offering. The underwriters of those offerings – which included, among others, Banc of America Securities, CIBC World Markets Corp. and Morgan Stanley – were all located in New York. While Defendants contend that "many" of the underwriter firms who worked on the IPO and Follow-On Offering "were located in offices in the San Francisco Bay Area," Def. Mem. at 4, there were obviously other employees of the underwriter firms who were located in New York who played

a substantial role in these offerings since the Company's press releases announcing the IPO and Follow-On Offering both stated that copies of the final prospectuses were available from the underwriters' offices in New York.  The Company's February 4, 2005 press release announcing the Company's IPO (attached hereto as Exhibit B) listed two underwriters' offices in New York City as the source from where investors could obtain a copy of the final prospectus:

> Copies of the final prospectus relating to this offering may be obtained from either Banc of America Securities at 9 West 57th Street, New York, New York 10019, Attention: Legal Department or CIBC World Markets Corp., by email at useprospectus@us.cibc.com or by fax at 212-667-6136.

Similarly, the October 12, 2005 press release issued by the Company concerning the Company's Follow-on Offering (attached hereto as Exhibit C) listed the New York City Office of Morgan Stanley as the source from where to obtain a copy of the final prospectus:

> Copies of the final prospectus relating to the offering may be obtained from Morgan Stanley by email at prospectus@morganstanley.com, by fax at 212-761-0211 and from the Prospectus Department at Morgan Stanley (1585 Broadway, New York, New York 10036, 212-761-6775).

Thus, the IPO and Follow-on Offering, including the allegedly false and misleading statements made by Defendants in the respective prospectuses, are strongly connected to this District.

Defendants also visited New York several times during the Class Period to make presentations to investors.  On April 5, 2005, Threshold's President, George Tidmarsh, M.D. Ph.D. made a presentation at The Millennium Broadway Hotel in New York at the "CIBC World Markets Annual Biotechnology and Specialty Pharmaceuticals Conference." *See* Exhibit D.  Two days later, on April 7, 2005, Defendant Barry Selick, Threshold's Chief Executive Officer, also made a presentation at The Millennium Broadway Hotel at "BioCentury Future Leaders in the Biotech Industry Conference." *See Id*.  The statements made at these conferences likely influenced investors

to purchase, and analysts to recommend the purchase of, Threshold stock. Thus, it cannot be disputed that, during the Class Period, Defendants had substantial ties to New York.

In addition to making presentations to investors in this District during the Class Period, Defendants also conducted clinical trials to study TH-070 in this District. *See* Exhibit E (listing Threshold's BPH Clinical Trial: TH-CR-203 Trial Site Locations 2005). The trials (TH-CR-203) – which concern the drug at the center of the complaints – were conducted in this District at:

> New York University School of Medicine
> 150 East 32nd Street, 2nd Floor
> **New York, NY** 10016; and
>
> Weill Medical College of Cornell University
> 525 East 68th Street, Box 261, F9 West
> **New York, NY** 10021.

A third trial was conducted in the adjacent Eastern District of New York at:

> Accumed Research Associates
> 1305 Franklin Avenue, Suite 100
> **Garden City, NY** 11530

Thus, despite what Defendants claim in their motion, there will be key non-party witnesses and documents located in this District or in very close proximity to it. Moreover, since clinical trials were conducted in at least 17 states, the Court should view this factor as neutral. *See Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *8-*9 (holding that where the operative facts "are spread across many districts," this factor should be considered as neutral on a motion to transfer).[7]

---

[7] While Defendants have submitted the Declaration of Cathleen P. Davis in support of its motion in which she claims that, since she joined the Company, its press releases were "all drafted at the Company's Redwood City offices," and she is "informed and believe[s] that the same was true from May 2005 [until July 2005]," (¶11), at least one of the Company's Class Period press releases before her employment began includes the New York phone number of Access Communications, a public relations firm, as a contact for inquiries. *See* Press Release dated June 27, 2005 (attached hereto as Exhibit F) ("media, Kim Paone of Access Communications, +1-917-522-3528, or kpaone@accesspr.com, for Threshold Pharmaceuticals, Inc."). It is therefore reasonable to assume

In sum, since many of the operative facts took place in this District, this factor should either be neutral or weigh against transfer.[8]

### e.     Relative Means of the Parties

Both parties will undoubtedly incur some inconvenience and cost whether the trial is held in this District or in California. Thus, this factor is neutral.

### f.     Forum's Familiarity with the Governing Law

The fact that both the SDNY and the Northern District of California are equally capable of applying federal securities law supports the Plaintiffs' assertion that venue should be maintained

---

that Ms. Davis's knowledge about the origins of press releases prior to her employment began is unreliable and the Company's early Class Period press releases may in fact have been prepared by this public relations firm in New York.

[8] The two primary cases relied on by Defendants in which courts granted a motion to transfer are inapposite.  In *Electrical Workers Pension Fund Local 103, I.B.E.W. v. Nuvelo, Inc.*, 07 civ. 975 (HB), 2007 WL 2068107 (S.D.N.Y. July 20, 2007), plaintiffs alleged that Nuvelo had strong ties to New York because, among other reasons, Nuvelo had conducted clinical trials in New York and because Nuvelo's underwriters were based in New York.  *Id*. at *2.  Defendants rebutted these arguments by pointing out the clinical trials that took place in New York "were not the failed trials that engendered the fraud alleged in these actions," *Id*. at *5, and by presenting evidence that its underwriters were actually based in California.  *Id*. at *2.  Here, by contrast, Defendants do not dispute that certain clinical trials that are relevant to the claims here took place in the SDNY, Def. Mem. at 10, and the very press releases issued by the Company evidence that the New York offices of the underwriters were very much involved in the IPO and the Follow-on Offering.  *See* Exhibits B and C.

Similarly, in *Connetics*, 2007 WL 1522614, defendants "made a convincing showing, by way of supplemental affidavits submitted to the Court, that the convenience of potential witnesses favors transfer." *Id*. at *2. Defendants there also specifically identified dozens of potential witnesses and what they would be testifying about and even submitted declarations by several potential non-party witnesses. *Id*. By contrast, Defendants here have submitted bare-bones affidavits of the Individual Defendants simply stating that it would be "difficult" for them to defend this case in the SDNY. Moreover, and unlike here, the alleged connections that the action in *Connetics* had to New York were "tenuous" and were limited to an indenture that had been issued by Connetics that was governed by New York law and that was found to be irrelevant to the litigation.

here since this factor does not weigh in Defendants' favor. Moreover, the SDNY, and this Court in particular, are no strangers to class actions alleging violations of the federal securities laws.

### g. Trial Efficiency and Interests of Justice

Defendants have not shown a "clear-cut" reason for transfer of venue. At best, Defendants have shown that either venue is equally proper. Given Defendants' burden on this motion, and the deference to which Plaintiffs' choice of forum is entitled, the Court should deny this motion and defer to the Plaintiffs' choice of venue.

### B. Defendants Should Not Be Permitted to Forum-Shop

"Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001). Forum-shopping by Defendants should not form the basis for denying Plaintiffs' statutory right to pursue this case in this District.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion to transfer venue to the Northern District of California should be denied.

DATED: August 30, 2007     LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.


             */s/ David A. Rosenfeld*
             DAVID A. ROSENFELD

        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)

*Counsel for Plaintiff Jerry Twinde*

SCHIFFRIN BARROWAY TOPAZ
  & KESSLER, LLP
STUART BERMAN
280 King of Prussia Road
Radnor, PA 19087
Telephone:  610/667-7706
610/667-7056 (fax)

*Counsel for Plaintiff Raynold L. Gilbert*

- 14 -