
Cited
As of: Mar 07, 2008

LEXSEE

# IN RE DNAP SECURITIES LITIGATION

## No. C 99-00048 WHA

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**2000 U.S. Dist. LEXIS 13482; Fed. Sec. L. Rep. (CCH) P91,215**

**September 13, 2000, Decided**
**September 14, 2000, Filed; September 15, 2000, Entered in Civil Docket**

**DISPOSITION:** [*1] Amended complaint DISMISSED. Leave to amend denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, corporations and individual directors and officers, moved to dismiss the complaint of plaintiff shareholders of defendant company which was acquired in a merger with other defendants, where the complaint alleged that the material misrepresentations and omissions in the proxy/prospectus misled shareholders into approving the merger.

**OVERVIEW:** Plaintiff preferred shareholders of defendant company acquired in a merger challenged the merger, alleging that the proxy/prospectus was materially misleading to the shareholders who were thereby improperly drawn into approving the merger. The court held that plaintiffs failed to show that additional or corrected information would have motivated any reasonable shareholder to oppose the sale of the company. Even if the significance of defendant's commercially exploitable high-nicotine tobacco were understated, the proxy/prospectus properly disclosed the nature and extent of defendant's business and any additional details were thus immaterial. Further, the misrepresentation that defendant complied with the law did not cause any loss to plaintiffs, since disclosure of defendant's illegal tobacco exports provided no basis for opposing the merger or expecting a higher price. Similarly, defendant's subsequent criminal conviction did not establish that an investigation was underway at the time of the merger, and such speculation did not show a failure to disclose a material criminal investigation.

**OUTCOME:** Motions to dismiss were granted; neither the immaterial details of defendant company's high-nicotine tobacco, the negative information of defendant's illegal activity, nor the speculation concerning the existence of a criminal investigation constituted material information which would have motivated reasonable shareholders to oppose the sale of defendant company.

**CORE TERMS:** prospectus, merger, merger, proxy, shareholder, tobacco, disclosure, misleading, omission, partners, oppose, stockholders, voting, plant, seed, speculation, encouraged, expertise, synergy, holders, stock, leave to amend, high-nicotine, subsidiary, nonvoting, failure to state a claim, preferred stock, reasonable basis, entitled to vote, conclusory allegations, engineering

**LexisNexis(R) Headnotes**

2000 U.S. Dist. LEXIS 13482, *1; Fed. Sec. L. Rep. (CCH) P91,215

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*

[HN1] Loss causation is an affirmative defense.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*

[HN2] Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.

**COUNSEL:** For GORDON K. AARON, FAY H. AARON, Plaintiffs: Daniel C. Girard, Anthony K. Lee, Robert K. Crowe, Girard & Greene LLP, San Francisco, CA.

For EMPRESAS LA MODERNA, S.A. DE C.V., DNAP HOLDING CORPORATION, DNA PLANT TECHNOLOGY, CORPORATION, EVELYN BEREZIN, JAMES L. FERGUSON, CARLOS HERRERA, BERNARDO JIMENEZ, GERALD LAUBACH, DOUGLAS LUKE, ROBERT SERENBETZ, defendants: Robert P. Varian, Brobeck Phleger & Harrison LLP, San Francisco, CA.

For EMPRESAS LA MODERNA, S.A. DE C.V., DNAP HOLDING CORPORATION, DNA PLANT TECHNOLOGY, CORPORATION, EVELYN BEREZIN, JAMES L. FERGUSON, CARLOS HERRERA, BERNARDO JIMENEZ, GERALD LAUBACH, DOUGLAS LUKE, ROBERT SERENBETZ, defendants: Timothy R. McCormick, Cheryl E. Diaz, Timothy J. McCormick, Christopher Barnes, Thompson & Knight, Dallas, TX.

For WECHSLER & CO., INC., Movant: Daniel C. Girard, Anthony K. Lee, Robert K. Crowe, Girard & Greene LLP, San Francisco, CA.

**JUDGES:** WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM ALSUP

**OPINION**

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

After previously allowing plaintiff to file an amended complaint, this order now **DISMISSES** this federal securities case for failure to state a claim. Further leave to amend is unwarranted.

**STATEMENT**

This is the second federal action brought by plaintiffs and their counsel challenging a 1996 merger. The nub of the problem is that plaintiffs, who were preferred shareholders in the acquired company, feel they received an unfair allocation of the merger consideration *vis-a-vis* the common shareholders and/or that all shareholders as a group should have received more. The preferred shareholders were not allowed to vote on the merger. Empresas La Moderna, S.A. de C.V. ("ELM") and its wholly-owned subsidiary, Bionova, S.A. de C.V. ("Bionova"), both organized under the laws of Mexico, were the acquiring entities. DNA Plant Technology Corporation ("DNAP"), a Delaware corporation with its principal place of business in California, was the subject company and the acquired target. After the [*2] merger DNAP was became a wholly-owned subsidiary of DNAP Holding Corporation ("DHC/Bionova"), a Delaware corporation with its principal place of business in California and a majority-owned subsidiary of Bionova. DHC/Bionova is a defendant in this action together with DNAP, ELM, and seven individual directors and officers of the companies (Compl. P 1-3, 9-18).

A related and first-filed lawsuit commenced in January 1997, still pending before the undersigned, challenged the refusal to allow the preferred shareholders to vote and raised other state law issues of corporate governance. The same plaintiffs and counsel filed this follow-on securities action in January 1999, alleging that the proxy/prospectus was materially misleading to the common shareholders, who were thereby drawn into approving the merger to the detriment of common and preferred alike. [1]

1 A single combined booklet served as a proxy solicitation to obtain DNAP shareholder approval and as a prospectus issued by ELM/Bionova to offer their shares in exchange (Compl. P 3).

[*3] By order dated March 7, 2000, the complaint was dismissed with leave to amend (in part). The March 7 order laid out the basic facts pled which will be restated

Page 2

2000 U.S. Dist. LEXIS 13482, *3; Fed. Sec. L. Rep. (CCH) P91,215

Case 4:07-cv-04972-CW   Document 21-5   Filed 03/07/2008   Page 3 of 6

below only as necessary to resolve the pending motions. A few additional facts have been added in the first amended complaint (Compl. PP 55 and 57, and partial revisions PP 58 to 63). Renewed motions to dismiss are now addressed by this order and are granted.

## ANALYSIS

The essence of this order is that the amended complaint, even liberally construed, fails to allege facts from which any jury could reasonably conclude that the alleged omissions in the proxy/prospectus were material in light of the information otherwise disclosed. To be sure, the one affirmative misstatement -- that DNAP had been in full compliance with all laws -- was incorrect in light of a misdemeanor plea by the company after the merger (relating to pre-merger events). It is very hard, however, to see how this additional and/or corrected information would have motivated any reasonable shareholder in DNAP to oppose the sale of the company. If anything, the information could only have encouraged the company's shareholders to support the merger, since [*4] it was negative information about DNAP. It would not have encouraged them to hold out for a better price, or otherwise seek to stop the merger. Each of the alleged misleading omissions or statements is considered in turn.

### 1. High-Nicotine Tobacco.

DNAP was in the business of genetic plant engineering, including improved tomatoes, fruits and vegetables. DNAP also developed expertise in growing commercially exploitable high-nicotine tobacco (Compl. P 62). DNAP had a contract with Brown & Williamson to develop high-nicotine tobacco code-named "Y-1." Brown & Williamson and DNAP illegally exported Y-1 seed to other countries (Brazil and Canada) to test suitable places to grow it (Compl. P 53). Y-1 was actually used in tobacco blends in products sold in the United States (Compl. P 55). DNAP disclosed the tobacco details to ELM and DHC/Bionova, the acquiring side of the merger (Compl. P 58).

The proxy/prospectus, however, was silent on the topic except to say "ELM believes that DNAP's research capabilities have the potential to provide synergies with other businesses of ELM, such as the seed business and the tobacco business . . ." and other generic references to tobacco expertise [*5] (Compl. P 60). Plaintiffs contend that the disclosure was a vast understatement. In truth, they say, Y-1 was a "significant asset" (Compl. P 62),

one that should have been trumpeted. The common shareholders might then, they say, have held out for a better exchange ratio for the entire company. In turn, that would have lifted the value of the preferred along with the common.

The Court has reviewed the entire proxy/prospectus (provided at a hearing) and finds the alleged omission immaterial in context, even after indulging in liberal presumptions in favor of the pleading. See *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (holding that district court's consideration of full text of prospectus, including portions that were not mentioned in complaint, was appropriate in context of motion to dismiss and did not convert motion to dismiss into one of summary judgment). While it seems clear that tobacco research was part of the business of both companies, it is also clear that a dominant commonality between the two companies was genetic plant engineering in high-quality tomatoes, peppers and other fruits and vegetables. This was a focus of both companies.

[*6] That having been said, the proxy/prospectus was nonetheless fair in disclosing that tobacco research and sales was about half of ELM's business (Proxy/Prospectus at 56). As noted above, the proxy/prospectus further disclosed that "ELM believes that DNAP's research capabilities have the potential to *provide synergies* with other businesses of ELM, such as *the seed business and the tobacco business*, including a reduction in the research and development cycle in the seed business *and the potential to develop new technology and differentiated, genetically engineered products*" (Policy/Prospectus at 30) (emphasis added). This was accurate as far as it went.

More detail can always be added to any proxy/prospectus. In this instance, however, further detail about Y-1 would not have materially aided the shareholders any more than would have any number of other details that, by necessity, must be omitted to prevent swelling already lengthy booklets into turgid tomes. It was reasonably clear from the document that DNAP had developed expertise in genetically-improved plants -- including tobacco. It was expressly clear that tobacco was an anticipated "synergy" between the two companies [*7] (Compl. P 60). It was a matter of judgment how much detail to supply before making the overall document so long and so trivia-packed as to be

2000 U.S. Dist. LEXIS 13482, *7; Fed. Sec. L. Rep. (CCH) P91,215

unreadable. *See TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 448, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976)* ("If the standard of materiality is unnecessarily low . . . management's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information . . ."). The complaint fails to allege specific facts from which one could reasonably conclude that extra detail about Y-1 would have been "viewed by a reasonable investor as having *significantly* altered the total mix of information available." *Id. at 449* (emphasis added). The disclosures made were reasonable and not misleading.

Those facts alleged, moreover, indicate that plaintiffs' characterization of Y-1 as an "asset" is problematic. In fact, the tobacco research carried with it "significant potential civil and criminal liabilities" and led to approximately thirty lawsuits against the company (Compl. PP 57, 62). The information omitted from the proxy/prospectus was actually *negative* information [*8] about DNAP. Negative information about DNAP would hardly have induced DNAP shareholders to hold out for more consideration for the sale of DNAP or to seek to enjoin the transaction.

## 2. Legal Compliance.

On a related point, the proxy/prospectus represented that DNAP to the best of its knowledge had "sufficiently functioned within the scope of applicable law and regulations, including rules administered by the FDA, USDA and EPA" (Proxy/Prospectus at 74, *quoted in* Compl. P 64). This was inaccurate, given the earlier Y-1 exports. Again, however, this information was *negative* information about DNAP. Had the illegal exports been disclosed, such disclosure could not have encouraged DNAP stockholders to hold out for a better price. To the contrary, if anything, it would have had the opposite effect. There is no reasonable basis to conclude that disclosure of this information would have led DNAP shareholders to oppose the merger and it surely could not have gained them a better exchange ratio. Loss causation simply cannot be shown. Although [HN1]loss causation is an affirmative defense, *see In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1422 (9th Cir. 1994)*, in [*9] this case it is evident on the face of the complaint and thus may be raised on a motion to dismiss, *see Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)*.

That factor distinguishes this case from *7547 Corporation v. Parker & Parsley Development Partners,* *38 F.3d 211 (5th Cir. 1994)*, cited by plaintiffs. [2] The alleged misrepresentations there could well have been material because accurate information would not only have armed the non-voting plaintiffs to oppose the transaction at issue but also influenced the voting limited partners against it. [3] In contrast, here, plaintiffs' generalized statements that the alleged omissions in this case were "material information about DNAP that the Preferred Stockholders were entitled to know when faced with the prospect of exchanging their interest in the company, and the rights and preferences of the Preferred Stock, for DHC/Bionova common stock" are far too conclusory. The complaint simply assumes the materiality of the information rather than demonstrates it (Compl. PP 63, 67). Plaintiffs have failed to allege any specific way in which reasonable holders of common or preferred stock would have [*10] considered the extra information important in motivating them to vote against or to oppose the merger. *Cf. Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 474 n. 14, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977)*.

2 This order assumes (without endorsing) the correctness of the holding in *7547 Corporation v. Parker & Parsley Development Partners, 38 F.3d 211, 224 (5th Cir. 1994)*, that Section 11 claims could be asserted by non-voting holders of securities in an acquired company. Given the holding above, it is unnecessary to reach the issue. The same is true as to the forced-seller concept for the Section 10 claim. *See Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1498 (9th Cir. 1995)*.

3 In *7547*, the plaintiffs were nonvoting unitholders who had received the same misleading proxy/prospectus as the voting limited partners. The limited partners, relying on the misleading proxy/prospectus, voted to approve a transaction which allegedly led to losses *for both the limited partners and for the nonvoting plaintiff unitholders*. In other words, the interests of the nonvoting plaintiffs were aligned rather than at odds with the interests of the voting limited partners. In the instant case, plaintiffs' interests in preventing the merger and receiving their liquidation preference was directly at odds with the voting common stockholders' interests in approving the merger and preventing liquidation.

[*11] Plaintiffs suggest that certain state-law

Page 4

remedies would have been available to them (Compl. P 80). [4] Again, however, in light of all the information that was actually disclosed and plaintiffs' failure to seek those remedies at the time, no objective reason is set forth in the complaint for concluding that disclosure of any additional detail discussed herein would have reasonably motivated common or preferred shareholders to pursue such remedies or to oppose the merger. There is a complete disconnect between plaintiffs' claims of loss and the alleged omissions. As the Ninth Circuit has noted, "[HN2]conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

4 Plaintiffs mention several avenues of state-law relief they would allegedly have pursued. *See* 8 Del. Code 141(k) (authorizing removal of directors or entire board by majority of shares then entitled to vote); 8 Del. Code 226 (authorizing appointment of a custodian or receiver if stockholders or directors are too divided to manage corporation or corporation has abandoned its business without steps to dissolve, liquidate, or distribute its assets); and 8 Del. Code 262 (authorizing appraisal or monetary damages only for holders of stock not traded on a national exchange and only to shareholders who did not receive shares of stock of corporation surviving the merger). They also cite a code section relating to mergers, including treatment of shares entitled to vote in a merger, *see* 8 Del. Code 251.

[*12] **3. Government Investigation.**

A related disclosure issue concerns a plea of guilty by DNAP to information alleging illegal exportation of Y-1. This occurred in January 1998 -- one-and-a-half years after the merger (Compl. P 56). From this, the complaint surmises that a federal investigation must have been underway at the time of the proxy/prospectus (Compl. P 66). No disclosure was made in the proxy/prospectus of any investigation or of any potential civil or criminal liabilities.

The problem is that it is speculation to assume that an investigation was underway at the time of the proxy/prospectus merely because a guilty plea occurred one to one-and-a-half years later. Indeed, defendants state that discovery (in the related first-filed suit) has revealed that there was no federal investigation of DNAP at the time the merger of the proxy/prospectus (Reply Br. 2). Even though this cannot strictly be credited on a motion to dismiss herein, there is nothing but speculation in the complaint to the contrary. Plaintiffs do not present any reasonable basis for this speculation. *See, e.g., McGlinchy*, 845 F.2d at 810; *Transphase Systems, Inc. v. Southern California Edison Company*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) [*13] ("the Court does not 'need to accept as true conclusory allegations . . . or unreasonable inferences'" (citing Schwarzer, Tashima, and Wagstaffe, *Federal Civil Procedure Before Trial* at § 9:221). A further problem -- as with the information concerning DNAP's legal compliance -- is that this *negative* information about DNAP simply can not be shown to be material, for the same reasons stated above.

**4. Indemnity.**

The March 7 order (at 8) has already held that the conflict of interest by the DNAP directors was adequately disclosed.

**5. Controlling Persons Liability.**

A "controlling person" can only be liable for another's primary violation of a securities law. Because plaintiffs have failed to state a claim as to the underlying violations of securities law, they also have not adequately pled the controlling persons claims.

**6. Section 10 and Scienter.**

The foregoing is dispositive. It is unnecessary to reach all of the other issues tendered. Nonetheless, as for the Section 10 claim directed against the DNAP defendants, the Court holds that the new pleading falls far short of stating "with particularity facts giving rise to a strong inference" of scienter under [*14] the Private Securities Litigation Reform Act of 1995, 15 U.S.C. 78u-4(b)(2). The complaint's lack of any facts at all that could create even a reasonable inference of deliberate recklessness, much less a strong inference, prevents plaintiffs from stating a Section 10 claim under the Securities Exchange Act 1934. *See In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970, 975 (9th Cir. 1999).

**CONCLUSION**

The amended complaint is **DISMISSED**. Given the prior attempts to replead, leave to amend is denied. The

Page 5

2000 U.S. Dist. LEXIS 13482, *14; Fed. Sec. L. Rep. (CCH) P91,215

Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: September 13, 2000.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE