LEXSEE



Cited
As of: Mar 07, 2008

**SALIM SHIRY, et al., Plaintiffs, vs. THOMAS E. MOORE, et al., Defendants. In re SCICLONE PHARMACEUTICALS SECURITIES LITIGATION**

**No. C 94-1485 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1995 U.S. Dist. LEXIS 22054**

**March 9, 1995, Decided**
**March 10, 1995, Filed; March 17, 1995, Entered in Civil Docket**

**DISPOSITION:** [*1] SciClone's Motion to Dismiss and Plaintiffs' cross-motion to strike GRANTED, defendants' request for taking judicial notice DENIED and plaintiffs' Rule 56(f) request DENIED as moot. Amended complaint DISMISSED WITH PREJUDICE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff purchasers of common stock brought a securities fraud action against defendant corporation, its officers and directors under 15 U.S.C.S. §§ 77k, 771, 77o; 15 U.S.C.S. §§ 78j(b), 78t-1; and 17 C.F.R. § 240.10b-5. Defendants filed motions to dismiss the purchasers' amended complaint, to stay discovery, and for the court to take judicial notice of documents. The purchasers filed motions to strike evidence and to compel discovery.

**OVERVIEW:** The purchasers bought the corporation's stock when two of three tests of the drug were completed. The corporation informed the purchasers that the results of the two tests were positive and that it believed that the results of the third test would also be positive and provided information as to the sales of a comparable drug. The third test results were not positive, and the purchasers filed suit. The court granted defendants' motion to dismiss and the purchasers' motion to strike and denied defendants' motion for judicial notice, finding that (1) defendants' documents did not involve a matter beyond reasonable controversy and thus judicial notice was improper, (2) the purchasers' original complaint was not to be considered for a motion to dismiss as it had been superseded by the amended complaint, (3) the purchasers alleged insufficient facts in connection with the fraudulent misrepresentation and omission allegations to sustain a claim under securities laws where the prospectus contained cautionary language which was directly related to the purchasers' claims so that defendants were protected by the bespeaks caution doctrine, and (4) granting leave to amend would be futile.

**OUTCOME:** The court granted defendants' motion to dismiss and the purchasers' motion to strike and denied defendants' request for taking judicial notice.

**CORE TERMS:** prospectus, thymosin, phase, interferon, alpha, patient, remission, efficacy, omission, judicial notice, hepatitis, statistically, securities fraud, leave to amend, clinical trial, misrepresentation, misleading, caution, cautionary, placebo, bespeaks, disease, securities laws, spontaneous, disclosure, cross-motion, assurance, disclose, stock, superseded

**LexisNexis(R) Headnotes**

***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims***
***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***
[HN1]Fed. R. Civ. P. 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. Rule 9(b) applies to actions brought under the federal securities laws. In addition to setting forth the time, place and content of the alleged fraudulent representation or omission and the identity of the person engaged in the fraud, the complaint must set forth the "circumstances indicating falseness" or the manner in which the representations or omissions at issue were false and misleading. Conclusory allegations punctuated by a handful of neutral facts are insufficient to satisfy Rule 9(b). Thus, in the complaint, the plaintiff must provide an explanation as to how an alleged statement or omission was false when made. Furthermore, the fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false. In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > General Overview***
[HN2]For purposes of motions to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), a complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. A motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.When considering a motion to dismiss, a district court cannot look beyond the pleadings. Fed. R. Civ. P. 12(b)(6). Doing so converts the motion into one for summary judgment. In its analysis of the pleadings, however, the court may appropriately consider documents attached to the complaint, as well as those incorporated in the complaint by reference. Moreover, the court may consider documents that are integral to a complaint when the plaintiff relied upon those documents to bring suit.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss***
***Civil Procedure > Dismissals > General Overview***
***Evidence > Judicial Notice > General Overview***
[HN3]On a motion to dismiss, the court need not accept as true those allegations that contradict facts which may be judicially noticed by the court.

***Evidence > Judicial Notice > Adjudicative Facts > Verifiable Facts***
[HN4]Fed. R. Evid. 201(b) provides that a judicially-noticed adjudicative fact must not be subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The rule is not designed to expand the use of judicial notice, but rather continues the tradition of caution in requiring that the matter be beyond reasonable controversy. Indeed, the advisory committee's notes recognize that taking evidence, subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties.

***Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation***
***Civil Procedure > Dismissals > General Overview***
***Evidence > Judicial Notice > Adjudicative Facts > Verifiable Facts***
[HN5]Unlike earlier pleadings that have not been amended, superseded pleadings no longer perform any function in a case. As a result, admissions made in superseded pleadings lose their binding force. Thus, the only value admissions in superseded pleadings have is as evidentiary admissions, which means that a party must introduce the pleading into evidence. Given that the allegations in superseded pleadings are not binding admissions and must be introduced into evidence for the

purpose of putting forth evidentiary admissions, the allegations in a superseded pleading do not involve matters beyond reasonable controversy. Taking judicial notice of a superseded pleading in the context of a motion to dismiss is therefore inappropriate.

***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***

[HN6]In evaluating a securities fraud complaint, the proper inquiry is a statement-by-statement analysis to determine if any particular utterance or omission can be considered false or misleading. With regard to omissions, if the material containing the alleged omissions actually discloses the facts that the plaintiff claims are absent, there is obviously no omission. When disclosure is so obvious that reasonable minds cannot differ, the disclosure issue is appropriately resolved as a matter of law.

***Securities Law > Liability > Disclosures > Bespeaks Caution Doctrine***

***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***

[HN7]The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law that a defendant's forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud. The Ninth Circuit adopted a narrow or "measured" application of the doctrine, as a broad application would encourage management to conceal deliberate misrepresentations beneath broad cautionary language. Hence, for the bespeaks caution doctrine to protect securities defendants from liability, the cautionary language must directly relate to the matter that the plaintiffs claim was misleading.

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Prospectuses > General Overview***

***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***

[HN8]If the material containing the alleged omissions actually discloses the facts that the plaintiffs claim are absent, there is obviously no omission.

***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***

[HN9]True statements about the number of people afflicted with a disease and average sales of a competing drug do not constitute implied predictions of revenues or profitability.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***

[HN10]Projections and general expressions of optimism can be actionable under Securities and Exchange Commission's Rule 10b-5, 17 C.F.R. §240.10b-5. The projection or expression is actionable to the extent that one of the following three implied factual assertions is inaccurate: (1) that the statement is genuinely believed; (2) that there is a reasonable basis for that belief; and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement. Soft or "puffing" statements, however, are insufficient to give rise to liability.

***Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview***

[HN11]What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment the plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false. Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). When such an event has occurred, it is clearly insufficient for the plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview***

***Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court***

***Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Eligibility, Circumstances & Factors***

[HN12]The Federal Rules of Civil Procedure provide that leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a). The decision to grant or deny a request for leave to amend is a matter of the district court's discretion. In exercising its discretion, however, the Ninth Circuit requires that district courts grant leave to amend with "extreme liberality." The party opposing a motion for leave to amend bears the burden to convincingly demonstrate that a substantial reason exists to deny leave to amend. Thus, in assessing whether to grant leave to amend, the court should consider factors such as the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment.

**COUNSEL:** For ALBERT GENTIL, FRANK CHARLES, Plaintiffs: James A. Caputo, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA.

For ALBERT GENTIL, FRANK CHARLES, Plaintiffs: Roger W. Kirby, Kaufman Malchman Kirby & Squire, LLP, New York, NY.

For ALBERT GENTIL, FRANK CHARLES, Plaintiffs: Ariana J. Tadler, Kaplan Kilsheimer & Fox, New York, NY.

For ALBERT GENTIL, FRANK CHARLES, Plaintiffs: Barbara A. Podell, Savett Frutkin Podell & Ryan PC, Philadelphia, PA.

For THOMAS E. MOORE, SCICLONE PHARMACEUTICALS, INC., MARC L. STEUER, MARK A. CULHANE, defendants: Philip R. Rotner, Dale E. Barnes, Margaret Bielak, McCutchen Doyle Brown & Enersen LLP, San Francisco, CA.

For JERE E. GOYAN, defendant: Philip R. Rotner, Margaret Bielak, Dale E. Barnes, Jr., McCutchen Doyle Brown & Enersen LLP, San Francisco, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINION BY:** SAUNDRA BROWN ARMSTRONG

**OPINION**

**ORDER GRANTING SCICLONE'S MOTION TO DISMISS AND DISMISSING** [*2] **AMENDED COMPLAINT WITH PREJUDICE**

This is a securities fraud action brought by the purchasers of SciClone Pharmaceuticals, Inc. common stock ("Plaintiffs"). SciClone Pharmaceuticals, Inc. ("SciClone") is engaged in the acquisition and development of pharmaceuticals. SciClone's lead product is Zadaxin, a brand of thymosin alpha 1 ("thymosin"), which SciClone licensed from Alpha 1 Biomedicals, Inc. ("Alpha 1"). At the time of the underlying events of this action, thymosin was being clinically tested for its safety and efficacy in treating hepatitis B. After the trading price of SciClone stock dropped because of disappointing test results in the Phase III clinical trial of thymosin, Plaintiffs brought suit against SciClone and certain of SciClone's senior officers, directors and outside directors (collectively "Defendants"). As to the officer and director defendants, Plaintiffs brought suit against SciClone's Chief Executive Officer and Chairman of the Board of Directors, Thomas E. Moore ("Moore"); SciClone's President and Chief Operating Officer, Philip H. Vander Werf ("Werf"); SciClone's Vice President of Licensing and Acquisition and Chief Financial Officer, Marc L. Steuer ("Steuer"); [*3] SciClone's Director of Finance and Secretary of Board of Directors, Mark A. Culhane ("Culhane"); and one of SciClone's outside directors, Jere E. Goyan ("Goyan"). At the time of the underlying events of this action, the individual officer and director defendants were officers or members of SciClone's Board of Directors. Plaintiffs assert claims against Defendants under sections 11, 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, 77o; sections 10(b) and 20A of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t-1; and the Securities Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5.

Presently before the Court are Defendants' motions to dismiss Plaintiffs' amended complaint, their motion to stay discovery, and their request that the Court take judicial notice of certain documents. Also before the Court are Plaintiffs' cross-motions to strike certain evidence relied upon by Defendants and to compel discovery, as well as Plaintiffs' request under Rule 56(f) of the Federal Rules of Civil Procedure.

With regard to the motions to dismiss, defendants Sciclone, Moore and Werf bring a motion to dismiss ("SciClone's Motion to Dismiss") on the ground that [*4] Plaintiffs' claims do not allege any misrepresentation or omission of material fact. In addition to joining in

SciClone's Motion to Dismiss, individual defendants Steuer and Culhane bring a motion to dismiss on the grounds that Plaintiffs' section 10(b) and sections 15 and 20A claims fail to plead facts that would establish liability against these officer defendants. Individual defendant Goyan also brings a motion to dismiss. In his motion, Goyan also joins in SciClone's Motion to Dismiss and seeks dismissal on the further grounds that Plaintiffs' section 10b and sections 15 and 20A claims do not plead facts that would establish liability against this outside director. In connection with their motions to dismiss, Defendants request that the Court take judicial notice of certain documents that were not referred to in the amended complaint. Finally, Defendants request that the Court stay all discovery until Plaintiffs have filed a legally sufficient complaint.

In addition to opposing Defendants' motions, Plaintiffs cross-move to strike all evidence that is outside the pleadings. In particular, Plaintiffs challenge Defendants' reliance on the original complaint and their reliance on [*5] certain articles and reports contained in newsletters, newspapers, magazines and journals. As to their cross-motion to compel discovery, Plaintiffs argue that, because their amended complaint is legally sufficient, Defendants should be required to respond to their discovery requests. Lastly, Plaintiffs have requested that, if the Court considers matters outside the pleadings to adjudicate the motions to dismiss, thereby converting the motions to summary judgment motions, the Court defer its ruling on the motions until Plaintiffs have been afforded a full and fair opportunity to engage in discovery.

Having read and considered all matters submitted in connection with these motions, and being fully informed, 1 for the reasons stated below, the Court hereby GRANTS SciClone's Motion to Dismiss, GRANTS Plaintiffs' cross-motion to strike, DENIES Defendants' request for judicial notice, and DENIES as moot Plaintiffs' Rule 56(f) request. Moreover, the Court finds that the amended complaint should be dismissed without leave to amend, and therefore DISMISSES the amended complaint WITH PREJUDICE. Because the dismissal with prejudice renders the parties' remaining motions moot, the Court does [*6] not reach the issues raised in connection with those motions.

1 Pursuant to Local Rule 220-1, the Court finds the instant motions to be appropriate for adjudication without oral argument.

***BACKGROUND***

In December 1993, SciClone filed a Registration Statement and Prospectus, effective January 12, 1994, (the "Prospectus") for the sale of two million shares of stock. As thymosin was SciClone's lead product, the Prospectus contained certain information about the testing of thymosin's safety and efficacy. The Prospectus explained that thymosin was being tested in clinical trials. As stated in the Prospectus, clinical trials in the United States involve a three-phase process:

> In the United States, clinical trial programs generally involve a three-phase process. Typically, phase I pharmacology trials are conducted in a small number of healthy volunteers to determine the toxicity, pharmacological effects, metabolism and dose range requirements of the drug. Phase II trials are conducted with groups of [*7] patients afflicted with the target disease to make a preliminary determination of efficacy and optimal dosages and to provide additional evidence of safety. In phase III, large-scale, multi-center comparative trials are conducted in patients afflicted with the target disease to provide sufficient data for the statistical proof of efficacy and safety required by the FDA and other regulatory agencies.

(Prospectus at 24.) At the time of the SciClone stock offering, thymosin had been through a Phase II clinical trial and was involved in a Phase III clinical trial.

Thymosin was subject to a Phase II clinical trial conducted between 1986 and 1990. The Phase II trial was conducted by independent researchers and funded in part by the orphan drug branch of the U.S. Food and Drug Administration. (Prospectus at 19.) The Phase II trial was not sponsored by SciClone. The Prospectus described the facts relating to the Phase II trial, which was double-blinded and placebo-controlled. (Prospectus at 19.) The Prospectus stated that Alpha 1 was sponsoring a Phase III double-blinded, placebo-controlled trial, and, after an explanation of that trial, referred readers to the section of the Prospectus [*8] entitled "Risk

Factors--Dependence on Zadaxin." (*Id.*)

In this Risk Factor section, the Prospectus provided, in pertinent part, as follows:

> *Dependence on Zadaxin*. The Company's principal development efforts are currently focused on Zadaxin. While limited clinical trials of thymosin alpha 1 sponsored by other parties with rights to the drug have to date produced favorable results, significant additional trials sponsored by the Company and such other parties are currently in progress, and no assurance can be given that the drug will ultimately be demonstrated to be safe or efficacious. In addition, while Zadaxin has recently been approved for commercial sale for treatment of chronic hepatitis B in Singapore, no assurance can be given that approvals will be obtained in other countries in a timely fashion or at all. The Company has never commercially introduced a product, and no assurance can be given that commercialization of Zadaxin in Singapore or in any other countries where Zadaxin may be approved will prove successful. As a result of the Company's dependence on Zadaxin, the failure to demonstrate the drug's safety and efficacy in ongoing clinicals trials, to obtain [*9] additional approvals for the drug or to successfully commercialize the drug would have a material adverse effect on the Company.

(Prospectus at 5.)

Although the Prospectus refused to give any assurances with regard to thymosin's safety and efficacy, in September 1992, SciClone had received a confidential report that favorable results from the Phase III trial were likely. Specifically, Gary L. Davis, M.D. ("Davis") prepared a Preliminary Interim Evaluation (the "report" or "Davis Report") regarding the Phase III trial. In this report, Davis stated:

> The study remains blinded and treatment results are therefore not available. *However, several lines of evidence suggest a beneficial treatment effect*. The pattern of biochemical change in responding patients, i.e. an early ALT flare and fall in HBV-DNA, suggests that these patients are responding to an immune stimulus similar to that which would be expected from thymosin. Assuming a placebo response rate of 7.7%, the projected response in the thymosin group is 62% for ALT normalization and 42% for HBV-DNA loss. Although HBeAg loss cannot be reliably predicted with the short mean duration of follow-up, 6/12 patients who [*10] have lost HBV-DNA have also lost HBeAg and the predicted response is 36%. Based on the current rate of HBV-DNA loss in the entire group, *a statistically significant treatment effect is likely* after enrollment of the 99 patients if the placebo response is, as predicted, less than 14%.

(Davis Report at 23 (emphasis added).) When discussing the purpose of the report, Davis cautioned that: "Assessment of response is necessarily conjectural since this is a double-blinded, placebo-controlled study which is still blind." (*Id.* at 8.) Nevertheless, Davis stated: "Despite these limitations, a reasonable prediction of response to treatment can be made based on expected spontaneous response and the response in the study group as a whole." (*Id.*)

On April 28, 1994, Alpha 1 announced that the preliminary data from the Phase III trial had not shown a statistically significant treatment effect for thymosin against hepatitis B. SciClone's stock dropped promptly after the announcement. The next day, on April 29, 1994, Plaintiffs filed this securities fraud action.

In their original complaint, Plaintiffs relied on the Prospectus, Davis Report and certain assessments by Milton Mutchnick, [*11] M.D. ("Mutchnick"), as provided in a September 23, 1993 report prepared by Hanifen, Imhoff Inc. On November 14, 1994, Plaintiffs filed an amended complaint. In the amended complaint, Plaintiffs continue to rely on the Prospectus, (Amended Complaint PP 31-41), and on the Davis Report, (Letter from Plaintiffs' Attorney, Robert N. Kaplan of Kaplan, Kilsheimer, to Defendants' Attorney, Philip Rotner of McCutchen, Doyle, at 1 (dated Nov. 14, 1994)

("[Plaintiffs] have utilized in drafting the Amended Complaint information from the [Davis Report]")). Plaintiffs, however, have not relied on the Mutchnick assessments in the amended complaint.

In the amended complaint, Plaintiffs' claims divide into four general subject areas. Plaintiffs claim that: (1) the Prospectus misrepresented the treatment efficacy of thymosin, (Amended Complaint PP 2, 32); (2) SciClone should have expected and publicly predicted that the Phase III trial would not demonstrate a statistically significant treatment effect for thymosin against hepatitis B, (Amended Complaint PP 3, 33-36); (3) SciClone implied that thymosin would be hugely profitable, (Amended Complaint PP 4, 37); and (4) SciClone implied that thymosin [*12] would be effective as a treatment for diseases other than hepatitis B. (Amended Complaint PP 38, 39.)

***STANDARD OF REVIEW***

Each of the federal securities laws invoked by Plaintiffs requires them to allege that Defendants "were responsible for a misrepresentation in, or material omission from, a stock prospectus, registration statement or other document." *In re Verifone Sec. Lit.*, 11 F.3d 865, 868 (9th Cir. 1993) (involving an action under the same federal securities laws asserted in the instant case). Defendants claim that Plaintiffs have failed to allege any misrepresentations or omissions of material fact. Thus, they bring their motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity.

[HN1]Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Ninth Circuit has held that Rule 9(b) applies to actions brought under the federal securities laws. *In re GlenFed*, [*13] *Inc. Sec. Lit.*, 42 F.3d 1541, 1544 (9th Cir. 1994). In addition to setting forth the time, place and content of the alleged fraudulent representation or omission and the identity of the person engaged in the fraud, the complaint must set forth the "circumstances indicating falseness" or "the manner in which [the] representations [or omissions at issue] were false and misleading." *Id.* at 1547-48; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439-40 (9th Cir. 1987). Conclusory allegations "punctuated by a handful of neutral facts" are insufficient to satisfy Rule 9(b). *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, in the complaint, the plaintiff must provide an explanation as to how an alleged statement or omission was false when made. *GlenFed*, 42 F.3d 1541 at 1548. Furthermore, the fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false. *Id.* at 1549 "In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference [*14] between two permissible judgments, but rather the result of a falsehood." *Id.*

[HN2]For purposes of motions to dismiss under Rule 12(b)(6) and Rule 9(b), a complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969) (Rule 12(b)(6)); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (Rule 9(b)). A motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (Rule 12(b)(6)); *Wool*, 818 F.2d at 1439 (Rule 9(b)).

When considering a motion to dismiss, a district court cannot look beyond the pleadings. Fed. R. Civ. P. 12(b)(6). Doing so converts the motion into one for summary judgment. *Id.* In its analysis of the pleadings, however, the court may appropriately consider documents attached to the complaint, *Durning v. First Boston Corporation*, 815 F.2d 1265, 1267 (9th Cir. 1987), as well as those incorporated in [*15] the complaint by reference, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *see also Townsend v. Columbia Operations*, 667 F.2d 844, 848 (9th Cir. 1982). Moreover, the court may consider documents that are integral to a complaint when the plaintiff relied upon those documents to bring suit. *Venture Associates Corp. v. Zenith Data Systems, Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991).

In the instant action, Plaintiffs' amended complaint refers to the Prospectus. Moreover, Plaintiffs concede that they relied on the Davis Report when drafting the

amended complaint. Consequently, in addition to considering the amended complaint, no dispute exists that the Court may consider the Prospectus and the Davis Report without converting the motions to dismiss into motions for summary judgment. [2] With regard to other materials submitted by Defendants, however, Plaintiffs do dispute the Court's ability to consider these materials through motions to dismiss. The Court discusses this dispute first, then considers the merits of the motions to dismiss under the above-discussed standard of review.

2 The Court notes that Plaintiffs specifically agree that the Court may consider the Davis Report in connection with the motions to dismiss. Furthermore, in neither their opposition nor cross-motions do Plaintiffs argue that the Prospectus cannot be considered.

[*16] ***DISCUSSION***

**A. *PLAINTIFFS' CROSS-MOTION TO STRIKE***

In their cross-motion to strike, Plaintiffs request that the Court strike Exhibits C through R and T through V of the Declaration of Margaret Bielak in Support of Defendants' Motions to Dismiss ("Bielak's Declaration"). Exhibit V is a copy of Plaintiffs' original complaint filed on April 29, 1994. Exhibits C through R, T and U are copies of articles and reports contained in newsletters, newspapers, magazines and journals. Plaintiffs request that these exhibits be stricken because they involve matters outside the pleadings, and therefore cannot be considered in connection with a motion to dismiss.

Defendants argue that these exhibits should not be stricken because the Court may take judicial notice of the exhibits, which would authorize consideration of these exhibits in connection with the motions to dismiss. While it is true that, [HN3]on a motion to dismiss, the court need not accept as true those allegations that contradict facts which may be judicially noticed by the court, *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), the Court finds that taking judicial notice of Exhibits C through [*17] R and T through V is not appropriate.

**1. *Articles and Reports***

[HN4]Rule 201(b) of the Federal Rules of Evidence provides that a judicially-noticed adjudicative fact must not be subject to reasonable dispute in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The rule is not designed to expand the use of judicial notice, but rather continues "the tradition . . . of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(b) advisory committee's notes. Indeed, the advisory committee's notes recognize that "taking evidence, subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties." *Id.*

With regard to the articles and reports in Exhibits C through R, T and U, Defendants seek to introduce these articles and reports to show that the market knew that the extent of thymosin's efficacy had not been fully determined at the time the Prospectus was released, and therefore Plaintiffs cannot assert securities fraud claims against them. The Court [*18] finds that resolution of the market's knowledge does not involve a matter that is beyond reasonable controversy. Hence, the Court will not take judicial notice of the articles and reports. *See Fasolino Foods v. Banca Nazionale Del Lavoro*, 761 F. Supp. 1010, 1019 (S.D.N.Y. 1991) (refusing to take judicial notice of newspaper articles because the taking of evidence was the best way to resolve the issue to which the articles were directed). Thus, the Court will limit any assessment with regard to the market's knowledge, should it determine that one is necessary, to the amended complaint, the Prospectus and the Davis Report.

**2. *Original Complaint***

In arguing that the Court should take judicial notice of Plaintiffs' original complaint, Defendants rely on authority for the proposition that courts may take judicial notice of earlier pleadings. *Spectravest, Inc. v. Mervyn's Inc.*, 673 F. Supp. 1486, 1491 (N.D. Cal. 1987) ("this Court may take judicial notice of the existence of an earlier pleading"). In relying on this authority, however, Defendants completely ignore the fact that Plaintiffs' original complaint is a superseded pleading. [HN5]Unlike earlier pleadings that have [*19] not been amended, superseded pleadings no longer perform any function in a case. C. Wright, A. Miller and M.K. Kane, 6 Federal Practice and Procedure: Civil 2d § 1476 at 557 [hereinafter "Wright & Miller § 1476"]. As a result, admissions made in superseded pleadings lose their binding force. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983). Thus, the only value

admissions in superseded pleadings have is as evidentiary admissions, which means that a party must introduce the pleading into evidence. *Id.*; Wright & Miller § 1476 at 558. Given that the allegations in superseded pleadings are not binding admissions and must be introduced into evidence for the purpose of putting forth evidentiary admissions, the allegations in a superseded pleading do not involve matters beyond reasonable controversy. Taking judicial notice of a superseded pleading in the context of a motion to dismiss is therefore inappropriate. The Court will not consider Plaintiffs' original complaint in connection with these motions.

Based on the above, the Court DENIES Defendants' request to take judicial notice of Exhibits C through R and T through V of Bielak's Declaration and GRANTS [*20] Plaintiffs' cross-motion to strike these exhibits. As the Court does not consider matters that convert Defendants' motions to summary judgment motions, Plaintiffs' Rule 56(f) request is moot, and therefore the Court DENIES the request as moot. In summary, then, the Court only considers Plaintiffs' amended complaint, the Prospectus and the Davis Report in connection with Defendants' motions to dismiss.

**B. *SCICLONE'S MOTION TO DISMISS***

[HN6]In evaluating a securities fraud complaint, the proper inquiry in the Ninth Circuit is a statement-by-statement analysis to determine if any particular utterance or omission can be considered false or misleading. *In re Apple Sec. Lit.*, 886 F.2d 1109, 1116 (9th Cir. 1989). With regard to omissions, if the material containing the alleged omissions actually discloses the facts that the plaintiff claims are absent, there is obviously no omission. *In re Seagate II Sec. Lit.*, [1989 Tr. Binder]Fed. Sec. L. Rep. (CCH) P 94,502 at 93,201 (N.D. Cal. 1989). When disclosure is so obvious that reasonable minds cannot differ, the disclosure issue is appropriately resolved as a matter of law. *Durning v. First Boston Corporation*, 815 F.2d [*21] 1265, 1268 (9th Cir. 1987).

As discussed below, Plaintiffs allege insufficient facts in connection with their fraudulent misrepresentation and omission allegations to sustain a claim under the securities laws. The Court now discusses the manner in which each of these allegations is insufficient.

**1. *Thymosin More Effective Than Alpha Interferon: Sustained Remission Rate***

In their amended complaint, Plaintiffs allege that the Prospectus contained false and misleading statements because it made it appear that thymosin was more effective than alpha interferon, the primary existing therapy for hepatitis B. (Amended Complaint PP 2, 32.) In support of this claim, Plaintiffs point to certain statements in the Prospectus about alpha interferon and compare them to certain statements in the Prospectus about thymosin. (Amended Complaint PP 31, 32.) Moreover, Plaintiffs assert that the alpha interferon clinical trials were statistically significant, but the Phase II thymosin results were not statistically significant. (Amended Complaint PP 2, 32.) The Court first examines the Prospectus statements on which Plaintiffs rely to determine whether they support Plaintiffs' claim. The Court [*22] then examines Plaintiffs' assertions with regard to the statistical significance of the Phase II trial.

**a. *Prospectus statements***

As to the statements about alpha interferon, Plaintiffs rely on the following statements from the Prospectus:

> The primary existing therapy for hepatitis B is alpha interferon. . . . In pivotal trials of alpha interferon, 39% of chronic hepatitis B patients following one therapeutic regimen and 48% of patients following another therapeutic regimen responded favorably to treatment compared to 7% of an untreated control group.

(Prospectus at 19; *see* Amended Complaint PP 31, 32.) As to the statements about thymosin, Plaintiffs rely on the following statements from the Prospectus:

> In the double-blind, placebo-controlled trial, use of thymosin alpha 1 resulted in a favorable response in 75% of patients with chronic active hepatitis B with no reported side effects, compared to a favorable response rate of 25% for those who received placebo. . . .
>
> * * *
>
> Thus, of the twelve patients treated with thymosin alpha 1 and/or thymosin fraction 5, nine (75%) achieved disease

> remission compared to a 25% rate for those who received [*23] placebo. Seven of the nine responders (58% of all treated patients) have had a sustained remission.

(Prospectus at 19; *see* Amended Complaint PP 31, 32.) Plaintiffs claim these statements were misleading because they compare thymosin's 75% favorable response rate and 58% sustained remission rate without any side effects to alpha interferon's 39% to 48% favorable response rate with side effects. (Amended Complaint P 32.) Plaintiffs claim the comparison is false because in the Phase II trial of thymosin, "only 40% of the patients who received only thymosin had a sustained remission rate," and therefore thymosin was less effective than alpha interferon.

The Court finds that the Prospectus does not support Plaintiffs' assertions that these statements were misleading. As an initial matter, the Court notes that the Prospectus never makes the direct comparison that Plaintiffs' amended complaint makes. More importantly, however, Plaintiffs do not contend the statistics actually disclosed were inaccurate or false. Instead, they seem to be asserting that Defendants should have revealed that 40% of those patients receiving only thymosin had a sustained remission rate and that the [*24] failure to report this made thymosin seem more effective than alpha interferon. While the portions of the Prospectus on which Plaintiffs focus do not disclose the *sustained* remission rate of those patients receiving only thymosin, they also do not disclose the *sustained* remission rate of the alpha interferon patients. Plaintiffs do not allege that the disclosure of the alpha interferon sustained remission rate is necessary to prevent the Prospectus from being misleading. Thus, because the Prospectus does not and need not disclose the alpha interferon sustained remission rate, disclosure of the thymosin sustained remission rate would not make the Prospectus less misleading with regard to any alleged comparison between thymosin and alpha interferon.

Finally, even if the Plaintiffs had alleged that disclosure of the alpha interferon sustained remission rate was necessary, the Court would nevertheless find that the Prospectus is not misleading with regard to thymosin's efficacy in comparison to alpha interferon's efficacy because of the Prospectus' detailed cautionary language, quoted above, in its Risk Factor section. In pertinent part, this cautionary language stated that "significant [*25] additional trials sponsored by the Company [and others] are currently in progress, and no assurance can be given that the drug will ultimately be demonstrated to be safe or efficacious." (Prospectus at 5.) The cautionary language continued: "As a result of the Company's dependence on Zadaxin, the failure to demonstrate the drug's safety and efficacy in ongoing clinicals trials, to obtain additional approvals for the drug or to successfully commercialize the drug would have a material adverse effect on the Company." (*Id.* at 5.) The Court finds that this cautionary language protects Defendants from liability under the "bespeaks caution doctrine." *See* *Worlds of Wonder Sec. Lit.*, 35 F.3d 1407, 1413-16 (9th Cir. 1994).

In *Worlds of Wonder*, the Ninth Circuit adopted [HN7]the bespeaks caution doctrine, which "'provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud.'" *Worlds of Wonder*, 35 F.3d 1407 at 1413 (quoting Donald C. Langevoort, Disclosures that "Bespeak Caution," 49 Bus. Law. 481, 482-83 (1994)). [*26] The Ninth Circuit adopted a narrow or "measured" application of the doctrine, as a broad application would encourage management to conceal deliberate misrepresentations beneath broad cautionary language. *Id.* at 1414. Hence, for the bespeaks caution doctrine to protect securities defendants from liability, the cautionary language must directly relate to the matter that plaintiffs claim was misleading. *Id.*; *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 489 (3rd Cir. 1994). In the instant action, the above-quoted cautionary language relates directly to Plaintiffs' claims that Defendants misled them with regard to thymosin's efficacy. The above-quoted cautionary language specifically states that, because testing on thymosin was ongoing, no assurances about the drug's efficacy could be made. It further states that SciClone would be adversely affected if thymosin was not shown to be efficacious. Given that this language is directly related to Plaintiffs' claim, defendants are protected from liability on this claim under the bespeaks caution doctrine.

**b. *Statistical significance of Phase II***

Plaintiffs complain that the Prospectus did not characterize the Phase II trial [*27] as "not statistically significant" because the Davis Report concluded that Phase II's "'small patient numbers and design of the study precluded a statistically confident conclusion.'"

(Plaintiffs' Opp. to SciClone's Mtn. to Dis. at 12, 12 n.18.) While it is true that the Prospectus did not state that the Phase II trial was not statistically significant, the Prospectus did state the actual number of patients in the Phase II trial (20). (Prospectus at 19.) Furthermore, the Prospectus stated that the Phase II trial, like all previous trials was "limited," and explained that in the three-phase trial process, Phase II trials are designed only "to make a preliminary determination of efficacy and optimal dosages and to provide additional evidence of safety." (Prospectus at 5, 24.) The Prospectus additionally disclosed that it is the Phase III trials that are designed to provide "the statistical proof of efficacy and safety required by the FDA and other regulatory agencies," as well as cautioned that there could be no assurances that thymosin's safety or efficacy would be demonstrated. (*Id.*) Given these disclosures, Plaintiffs had sufficient facts to form their present conclusion regarding [*28] the statistical significance of the Phase II trial when they read the Prospectus. *Freeman v. Decio*, 584 F.2d 186, 199-200 (7th Cir. 1988) (defendants not liable for failing to educate the public about potential impact on company of publicly known facts). Moreover, as discussed in detail above, because the Prospectus specifically warned readers about the uncertainty of thymosin's efficacy, Defendants are protected under the bespeaks caution doctrine.

**2. *Spontaneous Remission Rate***

Plaintiffs claim that SciClone should have predicted that it was likely that the spontaneous remission rate in the placebo group of the Phase III trial would be high enough that the trial would not show a statistically significant treatment effect. (Amended Complaint P 33.) This does not state a claim for securities fraud because Defendants had no duty to predict the outcome of the blinded trial. *In re Convergent Technologies Sec. Lit.*, 948 F.2d 507, 516 (9th Cir. 1991) (en banc) ("True, Convergent had at its disposal more detailed internal . . . projections. But Convergent was not obligated to disclose these internal projections."); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th [*29] Cir. 1980) ("It is just good general business practice to make such projections for internal corporate use. There is no evidence, however, that the estimates were made with such reasonable certainty even to allow them to be disclosed to the public."). Furthermore, Plaintiffs allege no facts indicating that, at the time of the Prospectus, the Phase III trial was likely to have results that were not statistically significant. The only information Plaintiffs claim was available to SciClone regarding the Phase III trial results was the Davis Report, which concluded that a statistically significant result was likely. (Davis Report at 23.)

Plaintiffs also assert that a 25% spontaneous remission rate in the Phase II trial indicated that there would be a similar result in the Phase III trial. (Amended Complaint P 33(a).) Again, this is not what the Davis Report concluded. In any event, the Prospectus disclosed the spontaneous remission rate in the Phase II trial, (Prospectus at 19), and thus Plaintiffs had sufficient facts to form their present conclusions when they read the Prospectus. *Freeman v. Decio*, 584 F.2d 186, 199-200 (7th Cir. 1988) (defendants not liable for failing to educate [*30] the public about potential impact on company of publicly known facts).

Similarly, Plaintiffs claim it would have made a difference for them to know that the Phase II trial included only patients with chronic active hepatitis B, while the Phase III trial included in addition patients with chronic persistent hepatitis B. (Amended Complaint P 33(b).) If so, these facts were fully disclosed in the Prospectus, (Prospectus at 19), and plaintiffs again have no claim under the securities laws. [HN8]"If the material containing the alleged omissions actually discloses the facts that plaintiffs claim are absent, there is obviously no omission." *In re Sun Microsystems, Inc. Sec. Lit.*, [1990 Tr. Binder]Fed. Sec. L. Rep. (CCH) P 95,504 at 97,636 (N.D. Cal. 1990).

Finally, Plaintiffs claim that the spontaneous remission rates from the alpha interferon trials were not indicative of the spontaneous remission rates which would be experienced in the Phase III trial of thymosin. (Amended Complaint P 33(c).) SciClone never claimed that the alpha interferon rates were indicative. Davis, however, based his estimate of the likely spontaneous remission rate on a multicenter interferon study. (Davis Report [*31] at 15.) Plaintiffs are apparently saying that they think that Davis was wrong to do so. Plaintiffs advance no facts as to why Davis should have concluded otherwise. As to this allegation, Plaintiffs have not alleged the required fraudulent misrepresentation or omission.

**3. *Thymosin Fraction 5***

Plaintiffs maintain that Defendants should have known that the Phase III trial would not demonstrate a

statistically significant treatment effect because it tested only thymosin whereas some patients in Phase II received another drug, thymosin fraction 5. (Amended Complaint P 34.)

Plaintiffs offer no factual support for their conclusion that, because the Phase II trial involved thymosin fraction 5, the Phase III trial would not be able to demonstrate a statistically significant treatment effect. Moreover, the Prospectus broke down the results of the Phase II trial in detail, and therefore Plaintiffs could calculate exactly: (1) the response rate for those who received only thymosin (4/5 or 80%); (2) the response rate for those who received thymosin fraction 5 before being switched to thymosin (3/4 or 75%); and (3) the response rate for those who received only thymosin fraction 5 (2/3 [*32] or 66%). (Prospectus at 19.) Thus, if Plaintiffs wished to disagree with the Davis Report on the basis of thymosin fraction 5's use in Phase II, the Prospectus gave them all the facts necessary to do so, and they therefore do not have a claim under the securities laws.

**4. *Thymosin More Effective Than Alpha Interferon: Reactivation Rate***

In paragraphs 2, 31 and 32 of the amended complaint, Plaintiffs claim that the Prospectus' contained *misrepresentations* that made it appear that thymosin was more effective than alpha interferon, whereas, in paragraph 35, Plaintiffs claim that the Prospectus contained an *omission* that thymosin was less effective than alpha interferon. Plaintiffs allege that the Prospectus did not disclose the material facts that "based upon the results from the Phase III trial of thymosin alpha 1 received as of the time of the" Prospectus (i.e., based upon the Davis Report), thymosin was less effective than alpha interferon (1) even if the same placebo remission rate achieved in the alpha interferon remission trials was achieved in Phase III, (Amended Complaint P 35(a)), and (2) because patients treated with thymosin had a higher reactivation rate [*33] than those treated with alpha interferon, (Amended Complaint P 35(b).) The Davis Report, however, does not make the conclusions that Plaintiffs allege it makes.

First, the Davis Report does not conclude that thymosin would be less effective even if it achieved the same placebo rate as in the alpha interferon remission trials. Specifically, the report recommends thymosin over interferon:

> Recombinant interferon alfa-2b is the only effective and approved medication for the treatment of patients with replicative chronic hepatitis B. Interferon is, like thymosin, parenterally self-administered but is expensive, only 40-50% effective, and associated with side effects, such as initial flu-like symptoms, fatigue and cytopenia, which require in dose reductions in 20% of cases. Interferon must be given on a daily or every-other-day basis. Like interferon, thymosin is parenterally administered, has a response rate of about 50%, and will be expensive. Thymosin has the advantages of twice weekly administration and the apparent absence of side effects. *If the comparability in response is confirmed and the cost is similar to interferon, I believe that most physicians and patients would* [*34] *opt for thymosin because of the lack of symptoms and immune-mediated adverse effects which have been observed with recombinant interferons.*

(Davis Report at 24.)

Second, the Davis Report does not conclude that thymosin was less effective than alpha interferon because of a much higher reactivation rate. In his report, David stated that reactivation had occurred in 7 patients, the reactivation occurs in up to 30% of patients who spontaneously lose HBV-DNA, that it is unusual (2%) in patients treated with interferon, and that this observation would warrant close examination when the trial was unblinded. (Davis Report at 24.) Until the trial was unblinded, it is obvious that Davis could not know how many of the 7 patients who experienced reactivation had received placebo, and that is why Davis did not draw a conclusion (not even the one asserted by Plaintiffs) from that observation.

Davis is aware of his own report, and, contrary to Plaintiffs' assertions, when he compared thymosin to alpha interferon, he recommended thymosin over alpha interferon. Because the Davis Report does not conclude as Plaintiffs allege, paragraph 35 fails to state a securities fraud claim. [3]

3 Moreover, for the reasons discussed previously in this order, the bespeaks caution doctrine protects defendants from liability under paragraph 35.

[*35] **5. *Compliance Issues***

Plaintiffs also complain that the Prospectus failed to disclose "that the Phase III clinical trial was seriously flawed and the trial compromised due to the failure to adhere to protocol provisions." (Amended Complaint P 36.) The significance of this allegation is obscure. SciClone did not plan, conduct or have anything to do with the Phase III trial, and the Prospectus stated nothing about the trial's design or adherence to protocol.

Plaintiffs appear to have distorted the information contained in the Davis Report. Davis did find some failure to adhere to protocol at one of the three centers and one instance where a patient peeled off a label, found he was getting placebo and dropped out of the trial. (Davis Report at 9, 13.) Davis did not conclude, however, that the trial was flawed or compromised. Instead, he reports:

> As designed, the protocol is of high quality . . . . Based on the protocol, this study would be considered to be of high quality as assessed by statistical quality scoring systems. . . .
>
> * * *
>
> Protocol compliance has been excellent at two of the centers, but there have been entry violations for at least 9/28 (32%) patients [*36] at the third center. Compliance during the treatment phase of the study has been excellent.

(Davis Report at 21, 23.) Given Plaintiffs' distortion of the Davis Report, Plaintiffs fail to state a securities fraud claim as to this portion of their amended complaint.

**6. *Profit Projection***

Plaintiffs aver that defendants "made it appear that thymosin would be a hugely profitable, blockbuster drug." (Amended Complaint P 37.) In support of this averment, Plaintiffs put together actual statements in the Prospectus regarding the worldwide number of hepatitis B carriers and the average sales price for a course of treatment of alpha interferon with a non-existent representation that thymosin was more effective than alpha interferon. (*Id.*) As discussed above, no facts support Plaintiffs' allegations that Defendants represented that thymosin was more effective than alpha interferon. To the contrary, the Prospectus states that there could be no assurances that thymosin would be shown to be effective at all, (Prospectus at 5), thereby protecting Defendants under the bespeaks caution doctrine. Defendants also warned that SciClone would be adversely affected if thymosin was [*37] not found to be effective. (*Id.*) As this warning directly relates to Plaintiffs' allegations regarding profitability, Defendants are once again protected by the bespeaks caution doctrine.

Leaving aside the non-existent misrepresentation, Plaintiffs do not allege that the actual statements were not true. [HN9]True statements about the number of people afflicted with a disease and average sales of alpha interferon do not constitute implied predictions of revenues or profitability. *Kaplan v. Rose*, [Current Tr. Binder]Fed. Sec. L. Rep. (CCH) P 98,422 at 90,876 (9th Cir. 1994) (statement regarding market was not prediction of company's market share); *Chang v. Moon*, [1992-1993 Tr. Binder]Fed. Sec. L. Rep. (CCH) P 97,209 at 94,867 & n.8 (D. Or. 1992) (company's statement that its product addressed the needs of market was not an implication that company would capture all or any portion of that market).

Plaintiffs again fail to state a claim for securities fraud.

**7. *Other Diseases***

Plaintiffs claim that the Prospectus made it appear that there would be additional markets for thymosin for treatment of other diseases such as hepatitis C and non-small lung cancer. Plaintiffs [*38] state that the Prospectus was misleading because it reported the results of trials that had shown some promise with respect to these diseases but did not report the results of other trials that had not shown thymosin to be effective against these diseases. (Complaint PP 38, 39.) Here again, the primary problem with Plaintiffs' claim is that there is nothing in the Prospectus that stated there would be other markets for thymosin. To the contrary, the Prospectus warned that thymosin might not be shown to be safe or efficacious for any purpose and that SciClone might not be able to sell

the drug in any market for any purpose. (Prospectus at 5, 8.) Against these explicit and direct warnings, Plaintiffs' claims of implied efficacy and implied additional markets must fall.

**8. *Moore's Representations***

Plaintiffs also allege that Moore stated in March 1994 that "everything we've seen is positive." (Complaint P 61.)

[HN10]Projections and general expressions of optimism can be actionable under Rule 10b-5. *Apple Computer*, 886 F.2d at 1113. The projection or expression is actionable to the extent that one of the following three implied factual assertions is inaccurate: "(1) that the [*39] statement is genuinely believed; (2) that there is a reasonable basis for that belief; and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." *Id.* Soft or "puffing" statements, however, are insufficient to give rise to liability. *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993); *In re Syntex Corp. Sec. Lit.*, 855 F. Supp. 1086, 1094 (N.D. Cal. 1994).

This Court has found that none of Plaintiffs' previously-discussed allegations are supportable. Also, Plaintiffs have presented no facts that Moore did not genuinely believe this statement, that no reasonable basis existed to support the belief, or that Moore was aware of any undisclosed facts tending to undermine the accuracy of his statement. Thus, this allegation does not support a claim under the securities laws. Further, the Court finds that Moore's alleged statement was nothing more than a puffing statement that is not actionable under section 10(b). Plaintiffs again fail to state a claim.

**9. *Conclusion***

The Court finds that Plaintiffs have failed to allege a fraudulent misrepresentation or omission that would result in the [*40] imposition of liability against Defendants under the securities fraud laws. From Plaintiffs' amended complaint, it appears that Plaintiffs are attempting to allege fraud by hindsight, discussed by the Ninth Circuit in *GlenFed* as follows:

> [HN11]What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false. Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). . . . When such an event has occurred, it is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood.

42 F.3d at 1548-49 (footnote omitted). In the instant action, the catastrophic event was disappointing results of the Phase III trial. Nothing in the amended complaint indicates [*41] that the sobering revelations about these trial results showed the Prospectus' earlier statements regarding the Phase II trial or Phase III trial to be false or misleading. Plaintiffs' attempt to seek recompense for the drop in stock price through this lawsuit fails under the securities laws. For this reason and the reasons discussed below, the Court dismisses the amended complaint without leave to amend.

**C. *LEAVE TO AMEND***

[HN12]The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant or deny a request for leave to amend is a matter of the district court's discretion. *International Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). In exercising its discretion, however, the Ninth Circuit requires that district courts grant leave to amend with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The party opposing a motion for leave to amend bears the burden to convincingly demonstrate that a "substantial reason exists to deny leave to amend." *Shipner v.* [*42] *Eastern Air Lines*, 868 F.2d 401, 407 (11th Cir. 1989). Thus, in assessing whether to grant

leave to amend, the Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and *futility of the proposed amendment.*" *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (emphasis added).

In the case at bar, Plaintiffs have already amended their complaint once, but nevertheless have failed to state a claim for securities fraud. Based on Plaintiffs' previous failure to cure, the Court finds granting leave to amend is not warranted. Moreover, this Court's review of the Prospectus and the Davis Report reveals Plaintiffs' allegations to be completely unsupported. Given this and the extreme factual poverty of the amended complaint, the Court finds granting leave to amend would be futile, and therefore further declines to grant leave. The Court DISMISSES the amended complaint WITH PREJUDICE.

***CONCLUSION***

For the foregoing reasons, the Court GRANTS SciClone's Motion to Dismiss, GRANTS Plaintiffs' cross-motion to strike, [*43] DENIES Defendants' request for taking judicial notice, and DENIES as moot Plaintiffs' Rule 56(f) request. Further, the Court declines to grant Plaintiffs leave to amend, and therefore DISMISSES the amended complaint WITH PREJUDICE.

IT IS SO ORDERED.

DATED: March 9, 1995

SAUNDRA BROWN ARMSTRONG

United States District Judge

**JUDGMENT**

In accordance with this Court's Order Granting SciClone's Motion to Dismiss and Dismissing Amended Complaint With Prejudice, IT IS HEREBY ORDERED THAT final judgment be entered in favor of defendants.

IT IS SO ORDERED.

DATED: March 9, 1995

SAUNDRA BROWN ARMSTRONG

United States District Judge