

LEXSEE

Caution
As of: Mar 07, 2008

**BERNARD SHUSTER, Plaintiff, v. SYMMETRICOM, INC., et al., Defendants.**

**NO. C 94-20024 RMW(PVT)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1997 U.S. Dist. LEXIS 14007**

**February 25, 1997, Decided**
**February 25, 1997, Filed**

**DISPOSITION:** [*1] Defendants' motion to dismiss the first amended complaint with leave to amend in accordance with Federal Rules of Civil Procedure 9(b) and 8(a) granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, company, its division director, and accounting firm, filed a motion to dismiss plaintiff investors' complaint alleging accounting fraud and violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 promulgated thereunder by the Securities Exchange Commission.

**OVERVIEW:** Investors filed a suit against a company, its division director, and accounting firm, alleging securities fraud, under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 promulgated by the Securities Exchange Commission, and accounting fraud when the company artificially inflated the price of its stock by misrepresenting facts about a new product and manipulated financial statements to appear financially stronger than it was. The company, its division director, and accounting firm, filed a motion to dismiss the suit for failure to state a claim. The court granted the motion, holding that the investors' allegations did not clearly show why the quoted representations were false when made. The court held (1) that the investors failed to point to particular contemporaneous, inconsistent statements, (2) failed to plead specific transactions and how each violated accepted accounting standards, (3) failed to plead specific facts showing that the company so entangled itself with an analyst's statements so as to have endorsed and adopted them as its own, and (4) failed to describe how the company's product was "fundamentally flawed."

**OUTCOME:** The court granted the company, its division director, and accounting firm's motion to dismiss the investors' complaint alleging securities and accounting fraud.

**CORE TERMS:** analyst, accounting, misleading, warning, financial statements, false and misleading, particularity, leave to amend, insider, stock, specific information, contemporaneous, disclosure, fraudulent, conclusory, customers, fiscal, matter of law, annual report, failed to disclose, forecasts, binding, securities laws, earlier statements, inconsistent statements, necessary elements, risks associated, materiality, competitive, timing

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

[HN1]A trial court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for either lack of a cognizable legal theory, or the pleading of insufficient facts under a cognizable legal theory. In ruling on a motion to dismiss the trial court must assume that plaintiff's allegations are true, must construe the complaint in the light most favorable to the plaintiff and must resolve any doubt in plaintiff's favor.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN2]Fed. R. Civ. P. 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Rule 9(b) applies to securities actions brought under § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Securities Fraud > Elements*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN3]In securities fraud cases, motions to dismiss are subject to strict standards because whether or not a statement or omission is misleading to potential investors requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact. Only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN4]A plaintiff bringing suit under § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 must prove that the defendant made misstatements of material fact with scienter in connection with the purchase or sale of securities upon which plaintiffs relied, and that plaintiffs' reliance was the proximate cause of their injury. Simply because statements are different or conflict does not mean fraud exists. The fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false. In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*

[HN5]To allege falsity, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5, the plaintiffs should point to contemporaneous, inconsistent statements by defendants or show that information available to defendants showed different results than defendants were predicting. However, these pleading requirements do not negate the mandate of Fed. R. Civ. P. 9(a) which calls for a short and plain statement of the claim.

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Issuer Recordkeeping & Reporting > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN6]There can be no liability under the securities laws, as a matter of law, where meaningful and specific cautionary disclosures are made regarding the subject matter of the alleged misrepresentation.

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Issuer Recordkeeping & Reporting > General Overview*

Page 2

[HN7]Companies are not obligated to disclose every potential problem a product may have.

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Issuer Recordkeeping & Reporting > General Overview*

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN8]In securities fraud actions, defendants sometimes can be liable for statements made by analysts. To show adoption of an analyst's statements, a plaintiff must plead specific reports and the name of the insider who adopted them, specific interactions between the insider and the analyst, and dates on which the interactions occurred. A plaintiff must also plead that the analyst relied on information provided by an insider in preparing his report.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Issuer Recordkeeping & Reporting > General Overview*

[HN9]To state a claim for accounting fraud a plaintiff must plead facts supporting a conclusion that a defendant has prepared fraudulent financial statements, and that the alleged financial fraud was material. In order to plead materiality, a plaintiff need not specify the exact dollar amount of each transaction but some level of specificity is required. Additionally, plaintiff must plead what accounting principles were violated.

**COUNSEL:** William S. LeRach, Andrew W. Hutton, Milberg Weiss Bershad Hynes & LeRach, San Diego, CA, for Plaintiff.

Richard S. Schiffrin, Schiffrin & Craig, Bala Cynwyd, PA, for Plaintiff.

Mark C. Rifkin, John W. Zarian, Greenfield & Rifkin, Ardmore, PA, for Plaintiff.

David S. Steuer, Rebecca L. Epstein, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Defendants.

**JUDGES:** RONALD M. WHYTE, United States District Judge.

**OPINION BY:** RONALD M. WHYTE

**OPINION**

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) was heard on October 4, 1996. The court has read the moving and responding papers and heard the oral argument of counsel. For the reasons set forth below, the court grants defendants' motion to dismiss with twenty (20) days leave to amend in accordance with Rules 9(b) and 8(a). [1]

[1] The court recognizes that progress in this case has been delayed by several reassignments which occurred through no fault of the parties. Therefore, the court has some reservations about granting this motion to dismiss, as it does appear that plaintiff will probably be able to state a claim. However, an amended complaint that specifies plaintiff's claims more concisely and with particularity will assist in expediting further proceedings.

[*2] **I. BACKGROUND**

Plaintiff filed his class action complaint alleging violation of the federal securities laws in January 1994. Defendants answered the original complaint and produced documents related to the action pursuant to an agreement among the parties. Following production of the documents, plaintiff decided he needed additional documents and served a subpoena on Symmetricom, Inc.'s ("Symmetricom") outside accountant, Deloitte & Touche, LLP ("Deloitte") requesting documents related to Deloitte's annual audits of Symmetricom. The parties disputed the relevancy of the requested documents. Symmetricom claimed that such documents did not have to be produced because there were no allegations of accounting fraud contained in the complaint. The court determined that additional allegations would have to be included in the complaint for plaintiff to be entitled to the requested documents. Accordingly, on November 9, 1995, plaintiff filed his first amended class action complaint for violation of the federal securities laws ("Complaint"). The claims arise under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Securities and [*3] Exchange Commission. Complaint P 11. The Complaint

Page 3

contains allegations of accounting fraud.

Specifically, the Complaint alleges that during the class period, April 6, 1993 through November 10, 1993, defendants artificially inflated the price of Symmetricom's common stock by misrepresenting the facts about Symmetricom's new product, the integrated digital services terminal ("IDST"). The Complaint further alleges that defendants manipulated Symmetricom's financial statements so that the company would appear stronger financially than it actually was.

Plaintiff alleges that on November 10, 1993, Symmetricom "suddenly" revealed that it expected lower sales of IDST's throughout the balance of fiscal year 1994 and that revenues for fiscal 1994 would be lower than expected. Complaint P 9. As a result of this announcement, Symmetricom's stock price fell $ 4 1/4 per share to $ 9 3/4. *Id.* Thus, plaintiff claims that he and others who purchased stock during the class period were damaged. *Id.* Plaintiff purchased 1000 shares of Symmetricom stock during the class period for $ 14.75 per share. Complaint P 14. Plaintiff also alleges that Robert Austin ("Austin"), the head of the Telecom [*4] Solutions Division of Symmetricom (maker of IDST's), sold 42,700 shares of Symmetricom stock early in the class period and made over $ 620,000. Complaint P 9, 86. No other insider sales are alleged. Symmetricom is a publicly held company whose stock is traded on the NASDAQ.

In a November 10, 1993 press release, Symmetricom did announce that it anticipated lower than expected orders of IDST's because of unforeseen changes in the capital spending plans of several customers, including AT&T. Declaration of Rebecca L. Epstein in Support of Defendants' Motion to Dismiss ("Epstein Decl."), Ex. A. 2 Thus, plaintiff claims that earlier statements regarding orders for the IDST were misleading. Complaint PP 66-69. Plaintiff further claims that defendants misrepresented that the IDST was a fully developed product when in fact it had "numerous unresolved operating problems" and was "largely in the development stages" during the relevant time period. Complaint P 72. Plaintiff also asserts that defendants omitted certain material facts such as the fact that the IDST was not compatible with "the most widely used long distance system architecture," among others. Complaint P 76.

2 Documents referenced in the Complaint but not attached to the Complaint may be properly considered by the court when deciding a motion to dismiss pursuant to Rule 12(b)(6). *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

[*5] In making his allegations, plaintiff relies heavily on statements made by securities analyst, Allen Strand ("Strand"), who worked at Crowell Weedon & Co ("Crowell"). Plaintiff claims that defendants made false statements regarding IDST sales to Strand which Strand then published in reports made available to the investing public. Complaint P 23. Plaintiff also claims that Symmetricom adopted the republished statements of Strand, which were false and misleading, and therefore that Symmetricom should be liable for the statements. Complaint PP 23-26.

Finally, plaintiff claims that Symmetricom's financial statements were false and misleading and that defendants engaged in improper accounting practices, including causing Symmetricom to recognize revenues in violation of Generally Accepted Accounting Principles ("GAAP"). Complaint PP 80-85. Plaintiff claims that defendants manipulated Symmetricom's financial statements, including annual statements and quarterly reports, to reflect higher sales of IDST's than were actually made for the reporting period at issue. Complaint PP 63, 81-83. Plaintiff alleges that defendants accomplished this by "pulling in" to a given reporting period sales that [*6] were not actually final and, in fact, would not occur until the next reporting period, if they occurred at all. Complaint P 83.

Defendants have moved to dismiss the Complaint alleging that it does not plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (en banc). Thus, defendants assert that the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## II. LEGAL STANDARD

[HN1]A court may dismiss a complaint pursuant to Rule 12(b)(6) for either (1) lack of a cognizable legal theory, or (2) the pleading of insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). In ruling on a motion to dismiss must assume that plaintiff's allegations are true, must construe the complaint in the light most favorable to the plaintiff and must resolve any doubt in plaintiff's favor. *United States v. City of*

Page 4

*Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

[HN2]Rule 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [*7] Rule 9(b) applies to securities actions brought under section 10(b) and Rule 10b-5. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987).

[HN3]In securities fraud cases, motions to dismiss are subject to strict standards because whether or not a statement or omission is misleading to potential investors "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significances of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Eecht v. Price Co.,* 70 F.3d 1078, 1080 (9th Cir. 1995). Thus, "only if the adequacy of the disclosure or the materiality of the statement is 'so obvious that reasonable minds [could] not differ' are these issues 'appropriately resolved as a matter of law.'" *Id.* at 1081 (quoting *Durning v. First Boston Corp.,* 815 F.2d 1265, 1268 (9th Cir. 1987)).

## III. ANALYSIS

[HN4]A plaintiff bringing suit under section 10(b) and Rule 10b-5 "must prove that the defendant (1) made misstatements of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' [*8] reliance was the proximate cause of their injury." *Kline v. First Western Government Securities, Inc.,* 24 F.3d 480, 487 (3rd Cir. 1994). Furthermore, to state a claim for securities fraud, a plaintiff must plead *with particularity* the circumstances of the fraud, including statements made and an explanation as to why or how such statements are false or misleading. Fed. R. Civ. Proc. 9(b); *GlenFed,* 42 F.3d at 1548. Moreover, simply because statements are different or conflict does not mean fraud exists.

The fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false. . . . In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

*GlenFed,* 42 F.3d at 1549. [HN5]To allege falsity, plaintiffs should point to contemporaneous, inconsistent statements by defendants or show that information available to defendants showed different results than defendants [*9] were predicting. *See id.* However, these pleading requirements do not negate the mandate of Rule 9(a) which calls for "a short and plain statement of the claim."

The Complaint as it now stands is a rambling set of allegations which is almost impossible to effectively review. Although it is shorter than some securities fraud complaints the court has seen, it is still far longer than necessary and it is confusingly arranged. Plaintiff sets forth lengthy quotes from various releases by defendants' officers and a securities analyst but does not make clear what portion of each quote constitutes a false representation. Plaintiff then proceeds to make further conclusionary statements about what defendants represented followed by allegations, some general and some specific, in an attempt to show why the representations were false. These allegations do not clearly show why the quoted representations were false when made. Plaintiff has failed to point to particular contemporaneous, inconsistent statements by defendants or show that specific information available to defendants revealed something different than what defendants were stating.

A. *Statements Regarding Orders for IDST's*

[*10] 1. *Whether statements were false*

Plaintiff alleges that defendants misrepresented the number of confirmed orders and binding contracts Symmetricom had for IDST's. Specifically, plaintiff attacks representations regarding three customers, AT&T, Pacific Bell and BellSouth. *See* Complaint PP 43-49, 66-68. Plaintiff alleges that defendants represented that each of these companies had binding contracts to purchase various quantities of IDST's when, in fact, they did not. Plaintiff relies on a July 22, 1993 press release, a report to shareholders for the third quarter of fiscal 1993, Symmetricom's fiscal 1993 annual report and various reports issued by Crowell. Complaint PP 43-52; Epstein Decl. Exs. B-E, G, M-N. Plaintiff also asserts that defendants represented that sales of IDST's were going well which would result in high revenues and that these customers not only had contracts but were negotiating

further with Symmetricom. Plaintiff then alleges that sales of IDST's were not taking place and that any contracts Symmetricom did have were not being renewed because of problems with the IDST. Complaint PP 69-73.

A review of the documents plaintiff relies on, and references in the [\*11] Complaint, for these assertions shows that defendants were not making representations that final, binding contracts existed in all cases. Defendants were, in fact, stating only that they were optimistic about future contracts and sales of IDST's. The April 6, 1996 press release states that Symmetricom received "a contract for Telecom Solutions' Integrated Digital Services Terminal (IDST) from BellSouth." Complaint P 42; Epstein Decl., Ex. M. Plaintiff never alleges that statement was false but only later asserts that after making the statement defendants knew they had lost the bid to become BellSouth's IDST supplier "*for certain LSO applications*." Complaint P 71 (emphasis added). However, the later allegation does not render the earlier statement false or misleading.

Similarly, plaintiff quotes at length from both the 1993 third quarter report and the 1993 annual report (Complaint PP 43, 51-53) but nowhere alleges that any *specific statement* made in either of those reports was false or misleading. Finally, plaintiff relies heavily on statements made in various reports issued by Crowell, but does not allege that any *specific statement* is false. Again, plaintiff only pleads [\*12] the conclusion that defendants falsely stated the progress and status of certain contracts, particularly those with AT&T and Pacific Bell.

A review of the analyst's reports shows that, contrary to plaintiff's assertions, Strand was not stating that contracts with AT&T or Pacific Bell existed. The Crowell Morning Wire Report dated April 6, 1993 stated that "the high end of this range assumes an order from AT&T . . . for the IDST; the low end does not." Epstein Decl., Ex. B. Similarly, the Crowell Morning Wire Report dated May 26, 1993 stated that "the successful performance of the IDST in an operating environment would cause the Street to anticipate (*even before an actual contract*) a large piece of business for [Symmetricom] from AT&T." Epstein Decl., Ex. D (emphasis added). Finally, the Crowell Morning Wire Report dated June 18, 1993 stated that Symmetricom anticipated success of IDST testing at AT&T "which would then be followed by actual contract negotiations." Epstein Decl., Ex. E. Crowell also stated that it understood Pacific Bell approved the IDST for a certain application which "could lead to meaningful business." Epstein Decl., Ex. D. Nowhere is it stated in any Crowell [\*13] Report that Pacific Bell had a binding contract.

Plaintiff's allegations regarding sales and orders of IDST's fail as a matter of law to plead fraud with particularity as required under Rule 9(b) and *GlenFed*. Plaintiff quotes from financial reports and analyst's reports and then, in conclusory fashion, alleges that statements contained in those reports are false and misleading without alleging how any particular statement was misleading. Such conclusory pleading is insufficient to state a claim. *GlenFed*, 42 F.3d at 1548-49. Furthermore, plaintiff has failed to allege why any statement was false at the time it was made which is also necessary to state a claim. *Id.* Plaintiff relies on *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995), for the proposition that by pointing to inconsistent, contemporaneous statements he has shown the misleading character of the statements plead in the Complaint. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion ("Pls. Opp'n"), p. 14. However, plaintiff fails to allege any inconsistent, contemporaneous statements. Plaintiff merely quotes at length from various documents, then states the conclusion [\*14] that the statements made were false and defendants knew they were false.

2. *Warnings issued by Symmetricom*

Defendants assert that, in addition to not having made any false or misleading statements regarding the orders for IDST's, they adequately warned of the risks associated with orders and sales of IDST's. [HN6]There can be no liability under the securities laws, as a matter of law, where meaningful and specific cautionary disclosures are made regarding the subject matter of the alleged misrepresentation. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994). In Symmetricom's 1993 annual report it cautioned that "sales can be very long and order timing is hard to predict" and that "*no one can guarantee that orders will actually be received*." Epstein Decl., Ex. G (emphasis added); *see also* Exs. H (1994 10-Q Report) and I (1993 10-K Report). Crowell echoed the warnings as well: "The potential for large, near term IDST orders is clearly present, although the timing of the same is impossible to predict." Epstein Decl. Ex. C (Crowell Report, p. 5).

Plaintiff alleges that defendants' warnings were

1997 U.S. Dist. LEXIS 14007, *14

"boilerplate" and did not communicate to the market "specific [*15] adverse facts affecting Symmetricom's business . . . which were known only to the defendants." Complaint PP 77-78. Plaintiff further claims that defendants' warnings were "overly general" and provided no notice of the adverse information possessed by defendants. Pls. Opp'n at p. 20. Plaintiff alleges that a warning regarding unpredictable order timing does not warn that sales were not good, which defendants allegedly knew. However, plaintiff fails to set forth any specific information that defendants possessed and failed to disclose in Symmetricom's warnings to potential investors. *See* Complaint PP 77-79. Plaintiff merely states the conclusion that defendants had "access to non-public corporate information" which they should have disclosed without revealing what this information was and how it might have affected the market.

Furthermore, Symmetricom's warnings specifically advised the market on the risks associated with sales of the IDST that the company was concerned about, i.e. that orders might not occur. Plaintiff does not point to any specific information in defendants' possession which mandated additional disclosures, or that even shows there were other risks associated [*16] with the IDST. In order to show the inadequacy of defendants' warnings, plaintiff must allege specific facts, of which defendants were aware, that show that defendants' public disclosures were false or misleading. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996).

B. *Statements Regarding Deficiencies of IDST's*

The law is clear that [HN7]companies are not obligated to disclose every potential problem a product may have. *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1480 (N.D. Cal. 1992), *aff'd* 11 F.3d 865 (9th Cir. 1993). Plaintiff asserts that defendants represented that the IDST was a "successful, fully developed product which many customers were interested in purchasing" when in fact "the IDST had numerous unresolved operating problems and was in fact still largely in the development stages." Complaint PP 64, 72. Plaintiff also asserts that defendants failed to disclose that tests being performed by AT&T revealed "numerous and significant operating problems and bugs.'" Complaint P 72(b). Plaintiff further alleges that defendants falsely represented that there were no competitive products which performed the same functions as the IDST. Complaint P 75. However, [*17] the only representation concerning the lack of competitive products appears to be one by Crowell on September 20, 1993 which only states that there are "presently no directly competitive products for [the SS7 application]." It is not clear that plaintiff claims this statement was false when made.

Several reports issued by Crowell and Symmetricom state that the IDST was still being tested and that Symmetricom was devoting substantial amounts of research and development costs to improving the product. Epstein Decl. Exs. C and I, pp. 4, 8. Similarly, reports notified potential customers of competition by more established companies with greater financial resources. *Id.* Plaintiff, while apparently acknowledging that defendants were not obligated to disclose "every problem" with the IDST, claims that defendants failed to disclose that the IDST was "fundamentally flawed." Pls. Opp'n at p. 15. However, plaintiff fails to describe how the product was "fundamentally flawed" in his opposition, let alone plead the existence of these fundamental flaws in his Complaint. Plaintiff has pleaded only conclusory statements that IDST's were not functioning as well as defendants were representing [*18] them to function. Complaint P 64.

Furthermore, plaintiff's assertion that defendants should be liable for omitting information in Symmetricom's statements related to the IDST's fundamental flaws cannot be reconciled with the numerous disclosures defendants made regarding the IDST. Defendants disclosed that the IDST was still being developed and that research was still being done to enhance the product. Epstein Decl. Exs. G (1993 Annual Report, p. 23) and I (June 30, 1993 Form 10-K, p. 4).

C. *Analyst's Statements*

[HN8]In securities fraud actions, defendants sometimes can be liable for statements made by analysts. *Warshaw*, 74 F.3d at 959 (where defendant intentionally uses analyst to disseminate false information defendant cannot escape liability simply because it carries out fraud through a third party). However, in order for defendants to be liable for any statement made by Crowell, plaintiff must plead specific facts showing that Symmetricom so entangled itself in the analyst's statement so as to endorse it and adopt it as its own. *In re Software Publishing Sec. Litig.*, 1994 WL 261365, p. 9 (N.D. Cal. 1994) ("A company is liable *only if* it engages in conduct from which [*19] it could reasonably be inferred that the company expressly or impliedly placed its imprimatur on

Page 7

the reports.")(emphasis added); *In re Caere Corp. Sec. Litig., 837 F. Supp. 1054, 1059 (N.D. Cal. 1993).* [3] To show adoption of the analyst's statements, plaintiff must plead: "(1) specific reports and the name of the insider who adopted them; (2) specific interactions between the insider and the analyst; and (3) dates on which the interactions occurred." *In re Ross Systems Sec. Litig.*, 1994 WL 583114, p. 8 (N.D. Cal. 1994). A plaintiff must also plead that the analyst relied on information provided by an insider in preparing his report. *Stack v. Lobo*, 1995 WL 241448, p. 7 (N.D. Cal. 1995).

3   Furthermore, plaintiff fails to plead that Crowell's reports or forecasts were unreasonable when made. For liability to attach to statements made by analysts in reports or forecasts, a plaintiff must plead that the reports or forecasts were unreasonable at the time made and that company insiders knew they were unreasonable and failed to disclose that fact. *Stack v. Lobo*, 1995 WL 241448, pp. 7-8 (N.D. Cal. 1995); *In re Verifone Sec. Litig., 784 F. Supp. 1471, 1486-87 (N.D. Cal. 1992).*

[*20] Defendants contend that plaintiff fails to plead the necessary elements to render them liable for the analyst's statements. In fact, plaintiff pleads only that various employees communicated with Strand without setting forth what statements were made and why they were false or misleading. *See* Complaint P 23. In paragraph 23 of the Complaint, plaintiff pleads "defendants continuously disseminated false and misleading information concerning the Company and the IDST to the securities market by communicating with Allen Strand" and that certain employees "spoke with Strand on the following occasions." Paragraph 23 then references paragraphs 44 through 47, 49, 54 through 56 and 58 which merely quote from the reports. Nowhere does plaintiff plead what facts were disseminated to Strand and by whom. [4]

4   While plaintiff lists the names of the employees who allegedly spoke with Strand, he fails to allege that any specific statements were made by specific employees and why such statements were false or misleading. Plaintiff merely groups together those employees who spoke with Strand and concludes that the information they passed on to Strand (without citing specific information) must have been false.

[*21] Moreover, plaintiff fails to plead that Strand relied on any particular statements made to him in preparing the reports or forecasts and how Symmetricom insiders adopted or approved the reports. Such allegations are necessary to state a claim of liability based on third party statements. Plaintiff does no more than plead the conclusion that quoted statements were false and misleading. "To allow such conclusory allegations to state a claim against a corporation would subject corporations to continuous litigation arising from the statements of countless others who provide analyse's (sic) in the financial world." *In re Ross*, 1994 WL 583114 at p. 9.

Plaintiff, however, contends that defendants liability is based on the fact that the statements made to the analyst were false and misleading, not based on whether defendants adopted such statements after the analyst made them. Pls. Opp'n at p. 23. However, plaintiff fails to plead specific statements made by specific individuals that were false or misleading. *See supra* fn. 4. Without such allegations plaintiff's claim fails under Rule 9(b) and *GlenFed*.

D. *Allegations of Accounting Fraud*

[HN9]To state a claim for accounting fraud [*22] "a plaintiff must plead facts supporting a conclusion that a defendant has prepared fraudulent financial statements, and that the alleged financial fraud was material." *In re Ross*, 1994 WL 583114 at p. 7. In order to plead materiality, a plaintiff need not specify the exact dollar amount of each transaction but "some level of specificity is required." *Id.* Additionally, plaintiff must plead what accounting principles were violated. *GlenFed, 42 F.3d at 1553.*

Plaintiff alleges that the "Company's results in the quarters ended March 31, 1993, June 30, 1993 and September 30, 1993 had been artificially and improperly inflated due to the inclusion of revenues from 'sales' which had not been completed causing the financial statements to be presented in violation of GAAP." Complaint P 82. Plaintiff also alleges violation of Financial Accounting Standards Board ("FASB") Statement of Concept No. 5 because defendants "pulled in booking that under proper procedures should have been recognized in later quarters." Complaint P 83. Finally, plaintiff alleges that "in the first quarter of fiscal 1994 . . . the Company recognized revenue on the last day of the quarter for shipments totaling [*23] more than $

Page 8

1997 U.S. Dist. LEXIS 14007, *23

600,000 to Pacific Bell" but that the sales were not final. Complaint P 83. This is the only allegation that contains a monetary amount of a specific transaction. [5]

[5] In his opposition to defendants' motion, plaintiff attempts to quantify other alleged fraudulent transactions. *See* Pls. Opp'n at pp. 17-18. However, it appears plaintiff is referring to the same transaction at paragraph 83 of the Complaint but instead of using the net amount of $ 600,000 simply restates that defendants recognized $ 1.9 million of revenue when, in fact, they were only entitled to recognize $ 1.3 million. *See also* Complaint P 63.

Plaintiff's allegations fail to state a claim of accounting fraud. Plaintiff fails to plead specific transactions with appropriate particularity. Plaintiff only generally pleads that defendants' practice of "pulling in" revenue violates GAAP and he only references one specific false transaction amounting to $ 600,000. Furthermore, while plaintiff alleges that the fraudulent transactions [*24] he pleads (Complaint P 84) he only pleads the monetary amount of one transaction which is not material as a matter of law ($ 600,000 represented only 2% of Symmetricom's September 1993 quarter revenue). *See In re Convergent Technologies Second Half 1984 Sec. Litig.*, No. 85-20130 SW, slip op. at pp. 22-23. In order to state a claim for accounting fraud, plaintiff must plead specific transactions and how each violated accepting accounting standards and how they were material to the company. Plaintiff's conclusory allegations that the practice of "pulling in" revenues violates GAAP and therefore that Symmetricom's financial statements were false and misleading are inadequate to state a claim for accounting fraud. Plaintiff is given leave to amend to allege with particularity specific fraudulent transactions and their materiality to Symmetricom's financial statements.

## IV. ORDER

Based on the foregoing, the court grants defendants' motion to dismiss the first amended complaint with leave to amend in accordance with Federal Rules of Civil Procedure 9(b) and 8(a). Plaintiff is given twenty (20) days from the date of this order to amend his Complaint to allege specific statements [*25] or omissions that were false or misleading related to the sale and deficiencies of IDST's. Plaintiff is also given leave to amend his Complaint to allege the necessary elements for claiming that defendants are liable for statements made by Strand and Crowell. Finally, plaintiff is given leave to amend his Complaint to plead the necessary elements of accounting fraud. The court requests that plaintiff follow each misrepresentation allegation with an allegation setting forth the particular contemporaneous, inconsistent statements by defendants or the specific information available to defendants at the time which revealed something different than what defendants were representing.

DATED: 2/25/97

RONALD M. WHYTE

United States District Judge