1   COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   DENNIS J. HERMAN (220163)
    SHIRLEY H. HUANG (206854)
3   DANIEL J. PFEFFERBAUM (248631)
    100 Pine Street, Suite 2600
4   San Francisco, CA 94111
    Telephone: 415/288-4545
5   415/288-4534 (fax)
    dherman@csgrr.com
6   shuang@csgrr.com
    dpfefferbaum@csgrr.com
7        – and –
    ELLEN GUSIKOFF STEWART (144892)
8   655 West Broadway, Suite 1900
    San Diego, CA 92101
9   Telephone: 619/231-1058
    619/231-7423 (fax)
10  elleng@csgrr.com

11  Lead Counsel for Plaintiffs

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  OAKLAND DIVISION

15  JERRY TWINDE, On Behalf of Himself and   )   No. 4:07-cv-04972-CW
    All Others Similarly Situated,           )
16                                           )   CLASS ACTION
                           Plaintiff,        )   _____
17                                           )
         vs.                                 )   DECLARATION OF ELLEN GUSIKOFF
18                                           )   STEWART IN SUPPORT OF PLAINTIFFS'
    THRESHOLD PHARMACEUTICALS, INC.,         )   MOTION FOR FINAL APPROVAL OF
19  et al.,                                  )   CLASS ACTION SETTLEMENT AND
                                             )   PLAN OF ALLOCATION OF
20                         Defendants.       )   SETTLEMENT PROCEEDS, AND AN
                                             )   AWARD OF ATTORNEYS' FEES AND
21  _____ )   EXPENSES
22  [Caption continued on following page.]       DATE:      April 15, 2010
                                                 TIME:      2:00 p.m.
23                                               COURTROOM:   The Honorable
                                                              Claudia Wilken
24

25

26

27

28

| | |
|---|---|
| 1 | RAYNOLD L. GILBERT, On Behalf of Himself and All Others Similarly Situated, |
| 2 | |
| 3 | Plaintiff, |
| 4 | vs. |
| 5 | THRESHOLD PHARMACEUTICALS, INC., et al., |
| 6 | Defendants. |
| 7 | |

No. 4:07-cv-04971-CW

<u>CLASS ACTION</u>

1    I, ELLEN GUSIKOFF STEWART, declare as follows:

2        1.    I am a member of the firm of Coughlin Stoia Geller Rudman & Robbins LLP. I am

3    submitting this Declaration in support of final approval of settlement and for an award of attorneys'

4    fees and expenses.

5        2.    Attached hereto is a true and correct copy of the following:

6    Exhibit 1:    Stephanie Plancich, Ph.D., Svetlana Starykh, *2008 Trends in Securities Class*
                  *Actions* (NERA Dec. 2008)

7
     I declare under penalty of perjury under the laws of the State of California that the foregoing

8    is true and correct. Executed this 11th day of March, 2010, at San Diego, California.

9

10                                          *s/ Ellen Gusikoff Stewart*
                                      _____
                                          ELLEN GUSIKOFF STEWART
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# EXHIBIT 1

NERA
Economic Consulting



# 2008 Trends in Securities Class Actions

**Annual Filings Are at the Highest Level in Six Years, Driven by the Credit Crisis, While Median Settlement Values Stay Steady**

Stephanie Plancich, PhD
Svetlana Starykh

December 2008

How Markets Work℠

# Annual Filings Are at the Highest Level in Six Years, Driven by the Credit Crisis, While Median Settlement Values Stay Steady




Stephanie Plancich, PhD, and Svetlana Starykh[1]

**December 2008**

## Introduction

As the securities markets continued to exhibit extraordinary volatility and the economy suffered through a recession in 2008, securities class action litigation intensified. For the year 2008 (through December 14, 2008), 255 securities class actions were filed, up from a 12-year low of only 131 filings in 2006 and 195 in 2007.

The credit crisis drove the surge in filings: 110 cases filed in 2008 had some tie to the credit crisis, up from 40 in 2007. Of the 110 cases related to the credit crisis, 20 were cases related to failures in the auction-rate securities market, and most of these cases were filed in the first half of the year. In addition, almost 50% of the 2008 cases were filed against defendants in the financial sector, up from about 16% of cases in the 2005-2006 period.

While filings have steadily increased from 2006 through 2008, a similar pattern has not been observed in median settlement values. Median settlements have remained relatively stable, staying below $10 million. In 2008, the median settlement resolved for $7.5 million, slightly below the 2007 median of $9.4 million, and above the 2006 median settlement of $7.0 million. As always, a small number of large settlements causes average settlements to exceed median settlements; the 2008 average settlement of $38 million is substantially higher than the median.

Given the surge in credit crisis-related filings, are average and median settlement sizes also likely to grow in the future as these cases begin to resolve? Two opposing factors may come into play with regard to these credit crisis case resolutions. On one hand, the investor losses associated with credit crisis cases filed in 2008 are very large—the median investor loss for such a case is almost $3.5 billion, compared to a median loss of only $387 million for a non-credit crisis case filed this year. Historically, investor losses have been positively correlated with settlement size, so big losses may be an indicator of big settlements to come. On the other hand, defendants with "deep pockets" are the ones who can afford big settlements, and the credit crisis has dramatically shrunk the size of many defendants' pockets.

---
[1] This edition of NERA's research on recent trends in shareholder class action litigation expands on previous work by our colleagues Lucy Allen, Elaine Buckberg, Frederick C. Dunbar, Todd Foster, Vinita M. Juneja, Denise Neumann Martin, Ronald I. Miller, and David I. Tabak. We gratefully acknowledge their contribution to previous editions as well as this current version. The authors also thank Jake George, John Montgomery, and David I. Tabak for helpful comments on earlier drafts of the paper. In addition, we thank Nicole Roman, Carlos Soto, Nii Nookwei Tackie, Maria Tarasyuk, Steven D. Towler, and many other NERA researchers for further assistance. These individuals receive credit only for improving this paper; all errors and omissions are ours.

## Securities Class Action Filings

Through December 14, 255 federal securities class actions had been filed in 2008, continuing last year's substantial rebound from the recent low of 131 cases in 2006.[2] In fact, if we exclude the unusual cases—those that are related to the IPO securities litigation, analyst cases, and mutual fund market timing cases (i.e., the "Other Cases" in Figure 1)—filings in 2008 are at a 10-year high. If filings continue to come in over the last two weeks of 2008 at the same pace, the total number of cases would reach 267.

Credit crisis-related cases made up approximately one-fifth of all filings in 2007, but make up almost half of the 2008 filings. Options backdating cases peaked in 2006, but still continue to appear, with five brought in 2008.

The first cases related to the subprime meltdown were filed in February 2007. By the second half of 2007, subprime cases were being filed at an increasing pace, and, as the economy moved into a full-blown credit crisis in 2008, other credit-related cases were filed as well (Figure 2). For example, within the broader category of cases related to the crisis, auction-rate securities-related cases peaked in the first half of 2008, with seven filed in the first quarter and nine in the second quarter of the year following the massive failure of auctions in late February.[3] Although the pace of auction-rate securities-related filings has slowed since then, these cases have not disappeared, with four filed in the second half of 2008. While the first surge of these cases was filed against the banks and broker-dealers involved in the creation of

Figure 1. **Federal Filings**
January 1, 1996 – December 14, 2008



Note: Other Cases include IPO laddering, mutual fund market timing, and analyst cases.

2    Data on filings come from multiple sources, including RiskMetrics Group/Securities Class Action Services (SCAS), Factiva, Bloomberg, FactSet, SEC filings, and the public press. In compiling our data, we seek information on all unique class actions alleging damages with regard to the purchase, ownership, or sale of securities. Most of our summary statistics below are based on data for cases filed in US Federal Courts. Until cases are consolidated, we report multiple filings that potentially are related to the same alleged fraud if complaints are filed in different Circuits. Similarly, until cases are consolidated, we report multiple filings if different cases are filed on behalf of investors in common stock and other securities. If cases are ultimately consolidated, the data are adjusted.



Note: Other cases include IPO laddering, mutual fund market timing, and analyst cases.

markets for auction-rate securities, at least one "indirect" case has subsequently been filed against a non-bank company, NextWave Wireless Inc., which held these securities in its portfolio. This indirect channel may be a source of additional filings in the weeks to come.

**Filings by Circuit**

In this year, as in prior years, cases have been concentrated in the Second and the Ninth Circuits (Figure 3).

The particular spike in the Second Circuit cases in 2008 stems directly from the credit crisis: both auction-rate securities cases and other credit crisis-related cases have been clustered in this Circuit, which includes New York, Connecticut, and Vermont.

> Credit crisis-related cases made up approximately one-fifth of all filings in 2007, but make up almost half of the 2008 filings.

---

[3]  See NERA working paper, "Auction-Rate Securities: Bidder's Remorse?" by Stephanie Lee. This NERA study can be found at: http://www.nera.com/image/PUB_Auction_Rate_Securities_0708.pdf

Figure 3. **Federal Filings by Circuit, Year, and Type of Case**
January 1, 2006 – December 14, 2008



Figure 4. **Cases Related to Credit Crisis by Circuit**
January 1, 2007 – December 14, 2008



While in 2007 only eight Circuits had been affected by the subprime meltdown, in 2008 all Circuits have had at least one credit crisis-related case (Figure 4).

## Filings by Sector

In 2005 and 2006, securities class action filings were spread widely across a number of industrial sectors. As the subprime lending markets experienced a meltdown and a full-blown credit crisis began to emerge in 2007, an increasing fraction of all filings were made against firms in the financial sector.

This year, a huge spike in filings occurred against companies in the finance sector, as the credit crisis continued and a number of firms in the finance industry collapsed. Over 120 filings in 2008—almost 50% of all filings—named a company in the finance sector as the primary defendant.

Although the most dramatic trend in filings has been in the finance sector, other sectors also saw continued filing activity. For example, even though the health technology sector has lost ground to the finance sector as a percentage of all filings, the *level* of filings in this sector has slightly increased over the past few years: there were only 19 filings against health technology firms in 2006 and 29 filings in 2008.



For the electronic technology and technology services sectors combined, on the other hand, both the number of filings and the percentage of all filings in that sector are lower in 2008 than in the prior three years.

For some cases, the primary defendant may not be in the financial sector, but a co-defendant in that sector may also be named. Thus, the financial services sector is likely to be even more embroiled in securities class action litigation in 2008 than indicated by the pattern in Figure 5.

Figure 5. **Percent of Filings by Sector**
January 1, 2005 – December 14, 2008



# Nearly 50% of all filings in 2008 named a company in the finance sector as the primary defendant.

Specifically, 65 cases filed in 2008 so far have had some financial institution co-defendant named in the complaint. This is a substantial increase from the number of cases with a financial sector co-defendant from the prior year: 9% in 2007 had a financial institution co-defendant, while 25% of cases filed in 2008 name a financial institution as a co-defendant.

## Types of Allegations[4]

Approximately 25% of the allegations in cases filed in 2008 are related to accounting, which has been a fairly steady proportion of allegations over the past few years (Figure 6). On the other hand, over 40% of the allegations in 2008 involve product and operational defects, an increase from prior years. Again, this shift is driven by the credit crisis, because a number of these cases relate to alleged failures of financial products to perform as promised.

## Trends in Resolutions

While filings have increased over the last two years due to the credit crisis, there has been no clear increasing or decreasing trend in the pattern of resolutions. In fact, most credit crisis-related cases have not yet reached any final resolution, since it can take months or even years for cases to be dismissed, tried, or settled.

Figure 6. **Allegations in Federal Filings**
January 1, 2008 – December 14, 2008



Figure 7. **Status of 235 Federal Shareholder Class Actions Filed in 2000**



---

[4] Most securities class action complaints have multiple allegations. All allegations are included in this analysis, such that the total number of allegations exceeds the total number of filings.

Of the 1,121 cases filed between December 14, 2001 and December 14, 2006, 729 have resolved. Almost 45% of these resolved cases ended with a dismissal, and 55% reached a settlement. However, 392 of the filings from this time period remain pending, so these statistics may differ from the ultimate mix of resolutions for all cases.

Because it may take several years for cases to reach a resolution, we have tracked a single cohort of filings over time to see how they ultimately are resolved (Figure 7). Of the cases filed in 2000, 59% have reached final settlement, 1% have reached a partial settlement, and 33% have been dismissed. Note that 7% of these 2000 filings either remain pending or have been abandoned by the plaintiffs, so even after eight years it is impossible to tell the final mix of resolutions for these cases.

## Verdicts

While the vast majority of securities class action cases result in dismissal or settlement, a tiny fraction of cases ultimately go to trial. For example, only four of the cases filed in 2000 have gone to trial, and all settled with at least one defendant during the trial. A full list of securities class actions that went to trial following the PSLRA is included in Table 1. A brief summary of outcomes for these cases is illustrated in Figure 8.

Once cases go to trial, they do not always reach an unambiguous plaintiff or defense verdict. Instead, one or more of the defendants might settle during the trial, or a verdict may be reached for one party but later overturned.

For example, in January 2008 the case against Apollo Group resulted in a jury verdict for the plaintiffs of approximately $280 million. In August of this year, however, this verdict was overturned by US District Court Judge Teilborg, who ruled that the plaintiffs had "failed to prove that the company's actions caused any harm."[5]

Figure 8. **Twenty-One Shareholder Class Actions That Went to Trial After PSLRA**



The vast majority of securities class action cases result in dismissal or settlement; a tiny fraction ultimately go to trial.



[5] "Apollo Group Wins Reversal of $280M Verdict," by Christine Caulfield, *Law 360*, Portfolio Media, Inc., August 5, 2008.

Table 1. **Twenty-One Shareholder Class Actions That Went to Trial after PSLRA**

| Case | Federal Circuit | File Year | Trial Year[1] |
|---|---|---|---|
| **I. Verdict for Defendants** | | | |
| 1 Apollo Group, Inc.[2] | 9 | 2004 | 2007 |
| 2 Biogen Inc. | 1 | 1994 | 1998 |
| 3 Everex Systems Inc.[3] | 9 | 1992 | 2002 |
| 4 Health Management, Inc. | 2 | 1996 | 1999 |
| 5 JDS Uniphase Corp. | 9 | 2002 | 2007 |
| 6 Thane International, Inc.[4] | 9 | 2003 | 2005 |
| 7 Tricord Systems, Inc. | 8 | 1994 | 1997 |
| **II. Verdict for Plaintiffs** | | | |
| 1 Claghorn / Scorpion Technologies, Inc. | 9 | 1998 | 2002 |
| 2 Computer Associates International, Inc. | 2 | 1991 | 2000 |
| 3 Helionetics, Inc. | 9 | 1994 | 2000 |
| 4 Real Estate Associates, LP | 9 | 1998 | 2002 |
| 5 US Banknote Corp.[5] | 2 | 1994 | 1997 |
| **III. Mixed Verdict** | | | |
| 1 Clarent Corp.[6] | 9 | 2001 | 2005 |
| 2 ICN Pharmaceuticals, Inc.[7] | 2 | 1987 | 1996 |
| **IV. Settled During Trial[8]** | | | |
| 1 AT&T | 3 | 2000 | 2004 |
| 2 First Union National Bank / First Union Securities / Cyprus Funds | 11 | 2000 | 2003 |
| 3 Globalstar Telecommunications, Ltd. | 2 | 2001 | 2005 |
| 4 Heartland High-Yield / Short Duration High-Yield Municipal Bond Funds | 7 | 2000 | 2005 |
| 5 WorldCom | 2 | 2002 | 2005 |
| 6 Safety-Kleen Corp. (Bondholders Litigation)[9] | 4 | 2000 | 2005 |
| **V. Default Judgment** | | | |
| 1 Equisure Inc.[10] | 8 | 1997 | 1998 |

**Notes:**
Until otherwise noted, all these cases went to a jury trial. Data are from case dockets.
[1] Trial year represents a year in which a jury trial began.
[2] On 8/4/2008 judge overturned a 1/16/2008 jury verdict for plaintiffs. On 8/29/2008 plaintiffs filed an appeal.
[3] 1998 verdict for defendants was reversed and remanded by the Ninth Circuit Court of Appeals; retrial again yielded a verdict for defendants.
[4] Bench trial verdict was reversed and remanded by the Ninth Circuit Court of Appeals; has not yet been retired.
[5] Judge subsequently vacated the jury verdict and approved a settlement.
[6] Chairman of Clarent liable, Ernst & Young not liable.
[7] Hung jury.
[8] At least one defendant settled after the trial began, but prior to judgment.
[9] Some director-defendants settled during the trial; default judgment against CEO and CFO who failed to show up for trial.
[10] Default judgment against Equisure Inc. who failed to show up for trial.



## Settlements

While filings have been increasing sharply over the past two years, median settlements have been relatively steady (Figure 9). Looking over the longer history starting in 1996, median settlements have increased from around $4 million up to $8 million in 2008.[6]

Over the 2005-2008 year period, median settlements ranged from $7.0 million to $9.4 million. While median values increased between 2006 and 2007, they dropped between 2007 and 2008, so, at this time, there is no evidence of an increasing trend in median settlements.

While filings have been increasing sharply over the past two years, median settlements have been relatively steady. ... at this time, there is no evidence of an increasing trend in median settlements.

Figure 9. **Median Settlement Value ($MM)**
January 1, 1996 – December 31, 2008



---

[6] Unless otherwise noted, tentative settlements and cases in which not all non-dismissed defendants have settled are not included in settlement statistics. We define settlement year as the year in which the first court hearing related to the fairness of the settlement occurred. For cases with multiple partial settlements, a settlement year is determined by a court fairness hearing date of the last partial settlement that concludes the case.

There has been substantially more variation in average settlements. The annual average has ranged from $21 million to $82 million during 2003-2008.

Although median settlements have been relatively stable in recent years, there has been substantially more variation in average settlements (Figure 10). The average settlement over the years from 2003 to 2008—the post-Sarbanes-Oxley-Act period—has been $45 million, notably higher than the pre-Sarbanes-Oxley average of $17 million and also above the 2008 average of $38 million. The annual average has ranged from $21 million to $82 million over this six-year period.

Figure 10. **Average Settlement Value ($MM), All Cases**
January 1, 1996 – December 31, 2008





These average values can be extremely sensitive to the inclusion of large outlier settlements. Removing all settlements of over $1 billion, the 2003-2008 average settlement drops to $26 million, and the range of settlement averages across years becomes much tighter (Figure 11).

The 2008 final settlement of $1.04 billion for McKesson HBOC, Inc. is an example of such an outlier. Removing this settlement from the calculation drops the 2008 average from $38 million down to $29 million, below the 2007 average of $31 million.

Figure 11. **Average Settlement Value ($MM), Excluding Settlements Over $1 Billion**
January 1, 1996 – December 31, 2008



Note: Average settlement shown without final settlements over $1 billion: the 2000 Cendant, 2005 WorldCom, 2006 Royal Ahold, AOL Time Warner, two Nortel Networks, and 2008 McKesson HBOC Inc. settlements.



More generally, the distribution of settlement values has a fairly consistent shape over the past few years (Figure 12). Over 50% of cases have settlements for less than $10 million, and 10% or less have settled for more than $100 million. In 2008, only 6% of cases settled for more than $100 million.

## Investor Losses and Settlements

NERA has examined the relationship between settlement size and various case attributes for cases filed since the passage of the PSLRA. We find that investor losses, which can be calculated using publicly available data, historically have been the single most powerful determinant of settlements, explaining approximately 50% of their variation, controlling for other characteristics of the case.[7]

While investor losses are strongly correlated with settlement amounts, the two do not move together at a one-to-one ratio. Instead, as investor losses increase, settlements increase at a much lower rate: a 1.0% increase in investor losses results in an approximately 0.4% increase in the size of the expected settlement, other factors being held constant (Figure 13).[8]

Figure 12. **Distribution of Settlement Values ($MM)**
January 1, 2006 − December 31, 2008                    2006    ■ 2007    2008



[7]    Investor losses are measured by comparing a company's return to the return on the S&P 500 over the class period, and by using the proportional decay trading model to estimate the number of affected shares of common stock. We use investor losses as a crude proxy for plaintiff-style damages. The relationship between settlement values and investor losses is estimated in logs.

[8]    This relationship between investor losses and settlements is based on NERA's settlement prediction model, controlling for other case characteristics and overall price inflation. This model explains almost 64% of the variation in settlements, across almost 800 cases filed after January 1, 1996 and settled through June 30, 2008.

Another way to look at the relationship between investor losses and settlement values is to compare the ratio of these two numbers for cases with losses of different amounts. Holding all other case characteristics constant, at their respective means, a case with investor losses of $100 million is expected to have a settlement that is around $5.1 million, or 5.1% of investor losses. A case with $1 billion in investor losses is expected to settle for $12 million, only 1.2% of losses (Figure 14).

Figure 13. **As Investor Losses Rise, Expected Settlements as a Percent of Those Losses Decline**



Figure 14. **Expected Settlement Rises More Slowly Than Investor Losses**





Over a longer horizon, there has been a gradual increase in the investor losses of settled cases. A decade ago, the median investor loss estimate for a settled case was around $120 million. This year, the median investor loss estimate for a settled case has been almost $340 million (Figure 15).

A decade ago, the median investor loss estimate for a settled case was around $120 million. This year, the median investor loss estimate for a settled case has been almost $340 million.

Figure 15. **Median Investor Losses and Median Ratio of Settlement to Investor Loss**
January 1, 1996 – December 31, 2008



Focusing on very recent trends, we do not see any increase in the median investor loss for cases resolved in 2008 compared to the 2005-2007 period. Like median settlement amounts, median investor losses have been relatively stable over the past few years. Thus, the ratio of median settlements to investor losses, which had been as high as 7% back in 1996, has also stayed relatively steady in the 2-3% range over the past few years.

## Top 10 Settlements

While the majority of settlements over the past decade have been less than $10 million, a small number of "mega-settlements" have dominated the news and had a significant impact on annual average settlement values. The top 10 securities class action settlements of all time are listed in

Table 2. All but one of these settlements exceeded $1 billion.

Three of the settlements on the top 10 list are shown with 2008 as a settlement year, but only one of these—McKesson HBOC, Inc.—was finalized in 2008. The other two 2008 settlements have not yet been finalized: although many parties have reached partial settlements in the Enron case, not all defendants have finalized settlements at this time, and the $925 million UnitedHealth Group settlement is still a tentative settlement.

In total, these top 10 settlements add up to more than $28 billion. Note that over $13 billion, or 47%, of this aggregate settlement amount was paid by the "deep pockets" of financial institution co-defendants.



Table 2. **Top 10 Shareholder Class Action Settlements**

| Ranking | Company | Settlement Year | Total Settlement Value ($MM) | Settlement with Financial Institution Co-Defendant(s)[1] Value ($MM) | Percent |
|---|---|---|---|---|---|
| 1 | Enron Corp.[2] | 2008 | $7,242 | $6,903 | 95% |
| 2 | WorldCom, Inc.[3] | 2005 | 6,158 | 6,004 | 98% |
| 3 | Cendant Corp.[4] | 2000 | 3,561 | 342 | 10% |
| 4 | Tyco International, Ltd.[5] | 2007 | 3,200 | n.a. | n.a. |
| 5 | AOL Time Warner Inc. | 2006 | 2,650 | n.a. | n.a. |
| 6 | Nortel Networks (I) | 2006 | 1,143 | n.a. | n.a. |
| 7 | Royal Ahold, NV | 2006 | 1,100 | n.a. | n.a. |
| 8 | Nortel Networks (II) | 2006 | 1,074 | n.a. | n.a. |
| 9 | McKesson HBOC Inc. | 2008 | 1,043 | 10 | 1% |
| 10 | UnitedHealth Group[6] | 2008 | 925 | n.a. | n.a. |
| | Total | | $28,096 | $13,259 | 47% |

Note that for this summary table only, tentative and partial settlements are included for comparison, and "Settlement Year" in this table represents the year in which the last settlement—whether partial or final—had the first fairness hearing. For partial tentative settlements "Settlement Year" is the year in which this settlement was announced.

[1] If "n.a.," either the case did not have an underwriting co-defendant, or none of the settlement value in column (4) was paid by an underwriting co-defendant.
[2] This settlement includes seven partial settlements and one tentative partial settlement.
[3] The settlement value incorporates a $1.6 million settlement in the MCI WorldCom TARGETS case.
[4] The settlement value incorporates a $374 million settlement in the Cendant PRIDES cases.
    Settlement in the Cendant PRIDES I case was a non-cash settlement valued at $341.5 million.
[5] This settlement is a partial settlement.
[6] This settlement includes two partial tentative settlements.

## Looking Forward

While filings over the last 18 months have been dominated by credit crisis-related cases, it is too soon for many of these cases to have reached resolution. When these cases do start to resolve, what are the settlements likely to be?

Figure 16. **Median Investor Losses ($MM) for Cases Related to the Credit Crisis and Other Cases Filed in 2008**



Note: Cases related to the credit crisis include one auction-rate securities case. Other cases include standard and options backdating cases.

Two forces may pull these future settlements in opposite directions. First, the investor losses associated with credit crisis cases are high. As mentioned above, investor losses historically have been the single most important predictor of settlement size. For the median credit crisis case filed in 2008, the investor losses are almost $3.5 billion, compared to a median of $387 million for other, non-credit crisis cases filed this year (Figure 16).

For context, median investor losses for cases *settled* in the past four years have been in the $300 to $400 million range—corresponding to median settlements of less than $10 million—similar to the range of median investor losses on all cases *filed* in 2005 and 2006. Overall median investor losses for filed cases have grown in the last two years. Median investor losses for cases filed in 2007 were over $400 million, and the median investor losses for all cases filed in 2008 are $490 million (Figure 17).

The second force, which may reduce future settlements, is the extent of the "deep pockets" of defendant companies. Historically, indicators of the financial wherewithal of the defendant have been positively and significantly correlated with settlement values: controlling for a number of other factors (although not the merits of a particular case), defendants with higher market capitalization have higher settlements, and companies that are bankrupt or have share prices of less than $1 have significantly lower settlements. As noted above, a substantial fraction of the top 10 settlement payouts have been made from the deep pockets of financial institution co-defendants.



Figure 17. **Federal Filings**
**Median Investor Losses ($MM) by Settlement and Filing Year**



**Conclusion**

The credit crisis and turmoil in the financial sector have been correlated with a notable increase in securities class action filings, beginning in 2007 and continuing throughout 2008. Year to date, filings are at a six-year high, with 110 cases related to the credit crisis. But few of these credit crisis cases have yet to move very far through the resolution process, so it is too early to tell what impact these filings may have on settlement values and dismissal rates.

For now, median settlements remain relatively stable and below $10 million. Only time will tell if the huge investor losses for credit crisis filings may put upward pressure on median settlements in the future, or if the financial distress faced by defendant companies may pull median settlement values down.

In the wake of this current credit crisis, many of the named defendants and co-defendants, particularly in the finance sector, may be bankrupt or have much smaller pockets at the time of settlement. This factor may put downward pressure on settlement values. As an early hint about this type of settlement pressure, rumors of a $700 million settlement for the IPO litigation against investment banks have circulated, down substantially from the $3 or $4 billion settlement allegedly on the table—and rejected by plaintiffs—in 2006.[9]

9   Specifically, "The investors' case was led by a six-attorney executive committee, headed by [Mel] Weiss. One committee member, Howard Sirota, said in an interview today that he pressed Weiss to accept a possible settlement of $3 billion or $4 billion, which, Sirota said, the banks appeared willing to pay. Weiss refused to consider anything less than $12.5 billion, Sirota said." David Glovin, "Financial Firms Near $700 Million IPO Suit Settlement", *Bloomberg.com*, October 28, 2008 (http://www.bloomberg.com/apps/ news?pid=20601103&sid=a_k3emz_zIYI&refer=news). See also "Will $700 Million Finally Settle Decade-Old IPO Suit?" by Zach Lowe, *The AMLaw Daily*, October 29, 2008 (http://amlawdaily.typepad.com/amlawdaily/2008/10/will-700-millio.html).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at: http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 11, 2010.

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail:elleng@csgrr.com

508445_1

# Mailing Information for a Case 4:07-cv-04972-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mary K. Blasy**
  mblasy@scott-scott.com,efile@scott-scott.com

- **Kevin Anthony Burke**
  kburke@hewm.com

- **Michael L. Charlson**
  mlcharlson@hhlaw.com,dmsalvi@hhlaw.com,lasoboleva@hhlaw.com,mdewers@hhlaw.com,mjclouse@hhlaw.com,kwong@

- **Marc S. Henzel**
  mhenzel182@aol.com

- **Dennis J. Herman**
  dennish@csgrr.com,jdecena@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Shirley H. Huang**
  shirleyh@csgrr.com

- **J. Christopher Mitchell**
  jcmitchell@hhlaw.com,lasoboleva@hhlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@csgrr.com,e_file_sf@csgrr.com,gfreemon@csgrr.com,e_file_sd@csgrr.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Samuel H. Rudman**
  srudman@csgrr.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Ellen Anne Stewart Gusikoff**
  elleng@csgrr.com

- **Laurence Andrew Weiss**
  laweiss@hhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

D. Seamus Kaskela
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
280 Kind of Prussia Road
Radnor, PA  19087